# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Climate United Fund, | |
| Plaintiff, | |
| v. | **CIVIL ACTION** <br> **1:25-cv-00698-TSC** |
| Citibank, N.A., United States Environmental Protection Agency, and Lee Zeldin, in his official capacity as Administrator, United States Environmental Protection Agency, | |
| Defendants. | |

## DEFENDANT CITIBANK, N.A.'S OPPOSITION TO PLAINTIFF CLIMATE UNITED FUND'S MOTION FOR TEMPORARY RESTRAINING ORDER

**TABLE OF CONTENTS**

Page

**INTRODUCTION** ........................................................................................................................... 1

**BACKGROUND** ............................................................................................................................ 3

    A.     The Greenhouse Gas Reduction Fund ................................................................... 3

    B.     Citibank's Financial Agency Agreement ............................................................... 3

    C.     Citibank and Climate United's Account Control Agreement ................................ 5

    D.     Citibank's Compliance With Instructions From The United States Government ............................................................................................................ 6

    E.     EPA's Termination of Climate United's Grant ...................................................... 8

    F.     Procedural History .................................................................................................. 8

**ARGUMENT** .................................................................................................................................. 9

**I.**     **Plaintiff is Not Likely to Succeed on the Merits Against Citibank** ............................ 10

**II.**    **Equitable Factors Do Not Favor Emergency Relief Against Citibank.** ..................... 12

**CONCLUSION** ............................................................................................................................ 13

## INTRODUCTION

Citibank N.A. ("Citibank") respectfully submits this opposition to plaintiff Climate United Fund ("Climate United")'s motion for a temporary restraining order. Citibank has a narrow and limited role in connection with the Greenhouse Gas Reduction Fund ("GGRF"). Citibank does not select grant recipients, determine compliance with grant agreements, or otherwise determine whether funds should or should not be dispersed. Rather, pursuant to a Financial Agency Agreement ("FAA") with the Department of the Treasury, Citibank has been designated as a Financial Agent of the United States to provide commercial banking and finance services. Ex. 1. The FAA is the umbrella agreement for Citibank with regard to the GGRF, and it establishes an agent-principal relationship between the bank and the government.

In its role as an agent for the United States, Citibank "owes a fiduciary duty of loyalty and fair dealing to the United States," and is required to "act at all times in the best interests of the United States." *Id.* § 5.A. Citibank also must "comply with all lawful instructions or directions received from Treasury," *id.* § 5.B(iv), and it must implement account controls as instructed by the Environmental Protection Agency, *id.* at Ex. A § I.B. As required by the FAA, Citibank established accounts for, and entered into account control agreements with, the grant recipients (including Climate United). But Citibank's obligations in the account control agreements are subject to and governed by Citibank's ongoing obligations to the United States, as set forth in the FAA with Treasury.

Citibank has been instructed by EPA and the Department of Treasury to pause all further disbursements from GGRF accounts, including those held by Climate United, until further notice. Most recently, EPA directed Citi to "pause the processing of payment instructions for the GGRF accounts until further notice," and stated that it was "critical that the Bank not resume processing payment instructions for the GGRF accounts." Ex. 2 (3/10/2025 EPA Email). The

Department of Treasury similarly issued a directive "instructing Citibank, in its capacity as fiduciary, to comply with EPA's instructions." Ex. 3 (3/10/2025 Treasury Email). These directives followed similar instructions and correspondence from the federal government in preceding weeks, wherein (i) the government informed Citibank that the GGRF program was subject to an ongoing criminal investigation; (ii) the FBI recommended placing a 30-day administrative freeze on the accounts in light of "credible information" of possible criminal violations; (iii) the EPA Administrator called for the FAA to be terminated and the grant funds to immediately be returned; and (iv) the EPA Inspector General opened an investigation. Additionally, on the evening of March 11, 2025, Citibank learned that EPA was terminating Climate United's grant agreement. *See* ECF 13.

As the Financial Agent of the United States, Citibank is required to comply with the directives issued by the EPA and Treasury and pause the processing of payment instructions for the GGRF accounts until further notice. Because it owes fiduciary duties to the United States, Citibank also was and is required to cooperate with the United States as it investigates the concerns described above. Citibank desires nothing more than to fulfill its contractual obligations. Citibank will continue those efforts and, of course, will follow any court order.

Those orders should not, however, include the "extraordinary remedy" of a temporary restraining order against Citibank. *State v. Musk*, --- F. Supp. 3d ---, 2025 WL 520583, at *2 (D.D.C. Feb. 18, 2025) (Chutkan, J.). Climate United is unlikely to succeed on the merits of its claim against Citibank, given that Citibank complied with all contractual obligations by following lawful instructions from its principal, the United States. And while the Court need not address other equitable factors given Climate United's failure to show a likelihood of success,

those factors also favor denying emergency relief, where Citibank has not breached any contract and the public interest favors allowing Citibank to continue fulfilling its contractual obligations.

## BACKGROUND

### A. The Greenhouse Gas Reduction Fund

This case arises in part out of the Inflation Reduction Act, a statute passed in 2022 that provided "$27 billion to invest in clean energy in communities across the country." ECF 1 § 22. Congress did not appropriate these funds in favor of any specific private recipient. Congress instead provided that the Administrator of the EPA would select "eligible recipients for the purposes of providing grants, loans, or other forms of financial assistance, as well as technical assistance, to enable" various communities "to deploy or benefit from zero-emission technologies," including "distributed technologies on residential rooftops, and to carry out other greenhouse gas emission reduction activities, as determined appropriate by the Administrator." 42 U.S.C. § 7434(a)(1). Additional provisions provided that grantees should use the funds to "provide financial assistance to qualified projects at the national, regional, state, and local levels," and should "prioritize investment in qualified projects that would otherwise lack access to financing." *Id.* § 7434(b).

The statute does not provide Citibank with any policymaking role with respect to the GGRF. Citibank plays no role in deciding who receives GGRF funds, the amount of funds those entities should receive, or whether grant recipients are in compliance with their grant agreements. Citibank also has no oversight responsibilities in connection with the GGRF, as those responsibilities are exclusively handled by EPA.

### B. Citibank's Financial Agency Agreement

Citibank is instead a financial agent of the United States, and so owes the United States fiduciary duties, including a fiduciary duty of loyalty. On September 18, 2024, Citibank and the

Department of the Treasury entered into a Financial Agency Agreement ("FAA"), pursuant to which Citibank would "provide services related to programs under the Inflation Reduction Act of 2022 . . . including grant programs." Ex. 1 (Recitals). The FAA provides that Citibank "acknowledges and agrees that it owes a fiduciary duty of loyalty and fair dealing to the United States when acting as a financial agent of the United States." *Id.* § 5.A. The FAA further provides that as a financial agent, Citibank will "act at all times in the best interests of the United States when carrying out its responsibilities under this FAA and in all matters connected with this agency relationship." *Id.*

These fiduciary obligations include duties to "construe the terms of this FAA and any related instructions from Treasury in a reasonable manner to serve the purposes and interests of the United States," *id.* § 5.B.ii, as well as "to act only within the scope of its actual authority and to comply with all lawful instructions or directions received from Treasury," *id.* § 5.B.iv. All of Citibank's activities under the FAA are also subject to an additional provision providing that, "[n]otwithstanding any other provision of this FAA, when Treasury in its sole discretion determines that such actions are necessary to protect the interests of the United States, Treasury may reduce the authorized scope of work under this FAA, terminate this FAA, or revoke the Financial Agent's status as a financial agent of the United States." *Id.* § 23. The FAA also provides that "Treasury may periodically issue instructions through bulletins, letters, or other communications, consistent with this FAA," to "further . . . clarify the scope of the duties and services of the Financial Agent under this FAA." *Id.* § 3.D.

The FAA describes the work Citibank must perform in Exhibit A to the agreement. *See id.* § 3.A. That Exhibit provides that Citibank "shall provide commercial banking and finance services" in support of EPA's grant awards. *Id.* at Ex. A § I. These services include

"establish[ing] controlled accounts in the names of the . . . Prime Recipients" of GGRF grants, as well as "establish[ing] controlled accounts in the names of" certain "subrecipients" of GGRF grants. *Id.* at Ex. A §§ I.A.1.i, ii. The FAA specifies that "EPA will be party to account control agreements with each of the Prime Recipients and will be the secured party." *Id.* at Ex. A § I.A.1.i. "The Financial Agent" must also "implement account controls, including as instructed by EPA." *Id.* at Ex. A § I.B. The FAA emphasizes EPA's role in overseeing the accounts. It provides that "[t]he Financial Agent shall freeze accounts, and transfer funds in frozen accounts, at the direction of the relevant secured party [the EPA, with respect to Prime Recipients], in accordance with the account control agreements," *id.* at Ex. A § I.B.4, that EPA shall be notified in advance of withdrawals above certain limits, *see id.* at Ex. A § I.B.1, and that EPA must be permitted "full account visibility" into each account via a secure online platform, *id.* at Ex. A § I.D.1. Other provisions provide that Citibank will perform additional banking services, such as "invest[ing] . . . liquidity . . . in [money market funds] backed entirely by U.S. Treasury securities," and permitting "daily . . . investor redemptions and draws" from these accounts. *Id.* at Ex. A § I.C.1.

      **C.**    **Citibank and Climate United's Account Control Agreement**

The FAA contemplates that Citibank will also be party to "account control agreements" with recipients of GGRF grants. *Id.* at Ex. A § I.A.1.i. As relevant here, Citibank entered into an account control agreement with Climate United on November 1, 2024. *See* Ex. 4. The account control agreement recognizes and incorporates the FAA, specifying that "the Bank has been designated and authorized to act as a financial agent of the United States." *Id.* at 1. The account control agreement provides that "[t]he Bank shall comply with all instructions, notifications, and entitlement orders the Bank receives directing the disposition of funds and financial assets in the Accounts . . . originated by [Climate United]," unless Citibank "receives a

5

notice . . . from the Secured Party that the Secured Party is exercising its right to exclusive control over an Account." *Id.* § 2 (discussing a "Notice of Exclusive Control").

The account control agreement, however, also contains additional provisions relevant to this case. The agreement provides that Citibank shall not have any duties "fiduciary in nature" with respect to Climate United. *Id*. § 6.a. Citibank is required to take only "administrative or ministerial" actions with respect to the account. *Id.* The agreement contemplates that the "Secured Party" (EPA, as relevant here) may also "submit instructions to the Bank." *Id.* § 13.b. Citibank also shall not be liable for "indirect, incidental, consequential, punitive or special losses . . . whether or not any such losses or damages were foreseeable or contemplated." *Id.* § 6.b. And the account control agreement also states that Citibank may not be held liable for following the instructions of the United States government, specifying that "[t]he Bank shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control," "including, without limitation, any provision of any present or future law or regulation or any act of any governmental authority." *Id.*

### D. Citibank's Compliance With Instructions From The United States Government.

Climate United's lawsuit arises out of Citibank's compliance with instructions from agencies of the United States, including EPA and the Department of Treasury. On February 17, 2025, Citibank received written correspondence from the Federal Bureau of Investigation, requesting that Citibank "[p]lease accept this letter as a recommendation to place an administrative freeze on the account(s) associated with" certain account control agreements, "for 30 days." Ex. 5 (2/17/2025 FBI Ltrs.) at 1. Climate United's account was listed as one of the impacted accounts. *See id.* at 2. FBI requested this action on account of "credible information received by the Federal Bureau of Investigation that the above account(s) ha[d] been involved in

possible criminal violations, including 18 § U.S.C. 371 (Conspiracy to defraud the United States) and 18 § U.S.C. 1343 (Wire fraud)." *Id.* Citibank complied with the FBI's requests, while also conferring with the DOJ and EPA regarding the basis for their concerns.[1] As the Government's investigations developed, Citibank continued to confer with DOJ, EPA, and Treasury regarding the GGRF accounts.

On March 4, 2025, the Department of Treasury directed Citibank not to disburse funds from any of the GGRF accounts for a specified period. Specifically, the Department of Treasury stated that it had been informed of EPA's "concerns regarding potential fraud and/or conflicts of interest related to the Greenhouse Gas Reduction Fund," and that "EPA anticipates developing additional account controls." Ex. 7 (3/4/2025 Treasury Email). The email further provided:

> Treasury is instructing Citibank, in its capacity as fiduciary, to work directly with the EPA to establish and implement reasonable account controls to serve the purposes and interests of the United States, in accordance with Section 5 of the FAA. Further, in order to provide the EPA with the necessary time to develop reasonable account controls, ***we are further instructing Citibank not to disburse funds*** from any of the GGRF accounts ***prior to the end of the day Sunday, March 9, 2025***.

*Id.* (emphasis added).

Early in the morning of March 10, 2025, EPA and the Department of Treasury directed Citibank to continue to refrain from processing payments. EPA stated that "To prevent the misuse of funds . . . EPA instructs the Bank, pursuant to this Treasury directive, the grant

---

[1] Citibank also learned that EPA's Inspector General had begun an investigation into the GGRF program. Specifically, on March 2, 2025, EPA provided Citibank with a written letter from EPA's Acting Deputy Administrator to EPA's Office of Inspector General. The letter stated that the Acting Deputy Administrator was "referring to your office urgent and deeply concerning matters of financial mismanagement, conflicts of interest, and oversight failures within the Greenhouse Gas Reduction Fund (GGRF)." Ex. 6 (3/2/2025 Inspector General Ltr.) at 2. The letter stated that "[g]iven the severity of the alleged misconduct, waste, conflicts of interest, and potential fraud within the GGRF Program, the Administrator is conducting a comprehensive review," and requested the Inspector General's "assistance with a comprehensive review of this arrangement and the issues involved." *Id.*

agreements, and Section I.B of Exhibit A to the Financial Agency Agreement (FAA) between the Bank and Treasury dated September 19, 2024, *to pause the processing of payment instructions for the GGRF accounts* until further notice." Ex. 2 (emphasis added). The Department of Treasury similarly stated that, "[i]n accordance with Treasury's authorities under the FAA, Treasury is instructing Citibank, in its capacity as fiduciary, *to comply with EPA's instructions* to Citibank pursuant to the FAA." Ex. 3 (emphasis added).

### E. EPA's Termination of Climate United's Grant

On the evening of March 11, 2025, Citibank learned that the EPA had terminated Climate United's GRRF grant. *See* ECF 13. The Notice and its attached exhibit (a letter from EPA to Climate United) explained that "[f]ollowing a comprehensive review and consistent with multiple ongoing independent federal investigations into programmatic fraud, waste, abuse, and conflicts of interest . . . EPA has determined that these deficiencies pose an unacceptable risk to the efficient and lawful execution of this grant," and that EPA "is terminating Grant Agreement No. 84094001 . . . effective immediately." ECF 13-1 at 1.

### F. Procedural History

Climate United filed this suit on Saturday, March 8, naming not only EPA and the EPA Administrator but also Citibank as defendants. *See* ECF 1. On March 9, 2025, Climate United filed an emergency motion seeking a temporary restraining order, asking that Citibank "be restrained from refusing to comply with Climate United's disbursement requests under the [account control agreement]," including with respect to both "already-submitted requests" and "future requests." ECF 2-1 at 35. Climate United brings three claims against Citibank (breach of contract, replevin, and conversion), *see* ECF 1 ¶¶ 73–98, but does not rely on the replevin or conversion claim in support of its motion for a TRO, *see* ECF 2-1 at 22 & n.20 (disclaiming

relying on these claims). For purposes of this motion, Climate United instead relies only on its breach of contract claim, alleging a breach of its account control agreement with Citibank. *Id.*

As to the EPA defendants, Climate United brings claims for purported "Violation of the Administrative Procedure Act," as well as "Violation of the Due Process Clause." ECF 1 ¶¶ 99–113. Climate United seeks a temporary restraining order "restrain[ing] [EPA] from impeding Citibank from complying with its obligations under this TRO, and from unlawfully suspending or terminating Climate United's grant." ECF 2-1 at 35.

## ARGUMENT

"A temporary restraining order is an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion." *Musk*, 2025 WL 520583, at *2 (quotations omitted); *D.A.M. v. Barr*, 486 F. Supp. 3d 404, 411 (D.D.C. 2020) (temporary restraining orders are "extraordinary . . . and should be granted sparingly"). The "standard for issuance . . . is very high," *C.G.B. v. Wolf*, 464 F.Supp.3d 174, 197 (D.D.C. 2020), and requires that the moving party "establish '(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest,'" *Musk*, 2025 WL 520583, at *2 (quoting *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014)).

Climate United does not meet the high standard required to merit a temporary restraining order against Citibank. Climate United is not likely to succeed on the merits against Citibank, because Citibank has lawfully followed instructions received from the United States Government under its Financial Agency Agreement and therefore has fully complied with its contractual obligations to Treasury, EPA, and Climate United. Nor do equitable factors favor an injunction, where there has been no contractual breach.

9

I.   **PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS AGAINST CITIBANK.**

"In order to receive a TRO or a preliminary injunction, the moving party must show . . . a substantial likelihood of success on the merits," *Church v. Biden*, 573 F. Supp. 3d 118, 133 (D.D.C. 2021) (quotations omitted), with the result that "failure to show a likelihood of success on the merits alone is sufficient to defeat a motion for a TRO," *Petty v. Am. Fed. Of Gov't Employees*, 2021 WL 5991734, at *8 (D.D.C. Dec. 17, 2021). Climate United has not shown a likelihood of success on its breach-of-contract claim: Because Citibank faithfully followed instructions from Treasury and EPA, as it was required to do under binding contracts, Climate United's breach-of-contract claim necessarily will fail.

Climate United focuses its motion on only its account control agreement with Citibank, *see* ECF 2-1 at 21–22, but ignores the terms of Citibank's FAA with Treasury, which is referenced in that account control agreement and which governs Citibank's duties as an agent of the United States. *See* Ex. 2 at 1. Indeed, the entire premise of the account control agreement is Citibank's role as a "financial agent of the United States" "[p]ursuant to the authority of the Secretary of the Treasury under 12 U.S.C. §§ 90 and 265." Ex. 1 at 1. Those statutes require that Citibank "perform all such reasonable duties, as depositaries of public money and financial agents of the Government as may be required of [Citibank]." 12 U.S.C. § 265. And the FAA in turn requires that Citibank comply with EPA's and the Department of the Treasury's directives, including directives to pause distributions from GGRF accounts. Citibank is required, among other things, to "comply with all lawful instructions or directions received from Treasury." Ex. 1 § 5.B.iv. Citibank is also required to "implement account controls, including as instructed by EPA," *id.* at Ex. A § I.B, which, as relevant here, include EPA's instructions to implement interim controls pausing GGRF distributions. More broadly, Citibank also owes fiduciary duties

to the United States, including duties to "act at all times in the best interests of the United States" and "in a reasonable manner to serve the purposes and interests of the United States." *Id.* §§ 5.A, 5.B.ii.  And Treasury retains the right "in its sole discretion" to "reduce [Citibank's] authorized scope of work" when doing so is "necessary to protect the interests of the United States." *Id.* § 23.

These duties and rights, together with EPA and the Department of Treasury's express instructions, have obligated Citibank to cooperate with these and other federal agencies in their investigations of the GGRF program, and have likewise required that Citibank comply with all lawful pause orders issued by EPA and the Department of Treasury.

Climate United errs to the extent it reads provisions in the account control agreement in isolation, without considering the account control agreement's reference to Citibank's role as a financial agent of the United States under the FAA.  Climate United argues that the account control agreement requires Citibank to disburse funds "unless EPA has given notice that it intends to exercise exclusive control over the account."  ECF 2-1 at 22.  But Section 2 of the account control agreement (which references the Notice of Exclusive Control) does not address whether Citibank should disburse funds on an immediate basis even where, as here, the government has required an interim pause in distributions in light of ongoing investigations and the establishment of reasonable account controls.  Indeed, implementing such a pause is fully consistent with Citibank's obligation to comply with Treasury's directives, implement account controls requested by the EPA, and otherwise act "in the best interests of the United States."  Ex. 1 § 5.A.  And in any event, the account control agreement makes clear in Section 6 that Citibank cannot be held liable for following the instructions of the government: "[t]he Bank shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of

11

any occurrence beyond its control (including, without limitation . . . any governmental authority[)]." Ex. 4 § 6.b.  These provisions weigh heavily against whatever likelihood of success Climate United could otherwise show against Citibank, particularly where nothing in the account control agreement otherwise contractually obligates Citibank to ignore its fiduciary duties to the United States under the FAA.

Climate United's assertion that the account control agreement "does not provide Citibank with . . . discretion" also does not support a TRO.  ECF 2-1 at 22.  True, the account control agreement characterizes Citibank's role as "ministerial" and "administrative."  Ex. 4 § 6.a.  But that only underscores why liability against Citibank is unlikely:  the account control agreement does not envision thrusting Citibank into a discretionary or decision-making role with respect to what level of fraud is necessary to pause disbursements from GGRF accounts.  Citibank is not vested with discretion to second-guess the government's concerns regarding the "misconduct, waste, conflicts of interest, and potential fraud" that the government has stated is occurring.  Ex. 6 at 4.

## II.　EQUITABLE FACTORS DO NOT FAVOR EMERGENCY RELIEF AGAINST CITIBANK.

Equitable concerns also disfavor emergency relief against Citibank.  The court "need not linger" on the "the balance of the equities and public interest" where parties do not demonstrate a likelihood of success.  *George v. George Washington Univ.*, 2022 WL 1719002, at *8 (D.D.C. May 27, 2022); *Petty*, 2021 WL 5991734, at *9.  There is also "a well-recognized public interest in enforcing contracts and upholding the rule of law," with the result that temporary injunctions should be denied where they would not "hold[] the parties to their contractual obligations." *Wickapogue 1 LLC v. Blue Castle (Cayman) Ltd.*, 657 F.Supp.3d 234, 243 (E.D.N.Y. 2023).

Equitable factors and the public interest do not favor emergency relief against Citibank here, where Citibank is upholding its contractual obligations under the FAA and has not breached the account control agreement. Citibank has, instead, only done its best to serve its customers while following instructions from the government of the United States, to whom Citibank owes a duty of loyalty and at whose direction Citibank is contractually obligated to act.

## CONCLUSION

The Court should deny Climate United's motion for a temporary restraining order.

Dated:  March 12, 2025                                   Respectfully submitted,

                                            By:   /s/ K. Winn Allen
                                                  K. Winn Allen, P.C.
                                                  Saunders McElroy
                                                  KIRKLAND & ELLIS LLP
                                                  1301 Pennsylvania Ave., N.W.
                                                  Washington, D.C. 20004
                                                  Tel: (202) 389-5078
                                                  winn.allen@kirkland.com
                                                  saunders.mcelroy@kirkland.com

                                                  **Counsel for Defendant Citibank, N.A.**

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 12, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing via e-mail to all counsel of record.

                                                              */s/ K. Winn Allen*
                                                              K. Winn Allen