UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CLIMATE UNITED FUND**<br>7550 Wisconsin Avenue 8th Floor<br>Bethesda, Maryland 20814<br><br>             Plaintiff,<br><br>    v.<br><br>**CITIBANK, N.A.,**<br>5800 South Corporate Place<br>Sioux Falls, South Dakota 57108,<br><br>    and<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**<br>1200 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20460,<br><br>    and<br><br>**LEE ZELDIN, in his official capacity as ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**<br>1200 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20460<br><br>             Defendants. | ECF CASE<br><br>No. 1:25-cv-00698 |

**RESPONSE TO EPA'S NOTICE OF GRANT TERMINATION**

At 7:06 PM yesterday evening, EPA filed a purported "Notice of Grant Termination." This notice has no effect on Climate United Fund's ("Climate United") entitlement to a TRO directing Citibank to comply with the ACA. At today's hearing, Climate United will request that the Court issue such a TRO against Citibank as soon as possible.

1

With respect to EPA, the Court should issue a TRO as soon as possible that freezes the status quo ante. Specifically, the Court should temporarily restrain EPA from giving effect to its purported "Notice of Grant Termination" and restrain EPA from issuing a Notice of Exclusive Control to Citibank. This request is consistent with the relief Climate United originally requested in its motion for TRO—an order stating that EPA and Administrator Zeldin are "enjoined from unlawfully suspending or terminating Climate United's grant award except as is permitted in accordance with the Account Control Agreement, the grant award, and applicable law." *See* Dkt. 2-12 at 2. Such an order would be appropriate because the purported "Notice of Grant Termination" is unlawful. It satisfies none of the criteria for terminating the grant: It does not identify any violation of any applicable regulation or any of the grant's Terms, any misrepresentation by Climate United, or any "Waste, Fraud, or Abuse" as defined in the Terms. Moreover, as relevant to the balance of the equities, it appears to reflect a regrettable effort to take advantage of an extension of time to which Climate United consented as a matter of professional courtesy.

**Relief against Citibank**

The "Notice of Grant Termination" has no effect on Climate United's entitlement to a TRO directing Citibank to comply with the ACA. As recounted in Climate United's motion for a TRO, Climate United, Citibank, and EPA are parties to the Account Control Agreement (ACA) under which Climate United may withdraw grant funds from a Citibank account. Since February 18, Citibank has failed to comply with Climate United's disbursement requests and instructions. Citibank's actions violate the ACA. The ACA states that the Bank "shall comply with all instructions, notifications, and entitlement orders the Bank receives directing the disposition of funds and financial assets in the Accounts … until the time that that Bank receives a [Notice of

Exclusive Control] from the Secured Party [*i.e.*, EPA] that the Secured Party is exercising its right to exclusive control over an Account." Dkt. 2-10 at 2. Even following last night's purported "Notice of Grant Termination," there is no evidence that EPA has ever sent a "Notice of Exclusive Control." Hence, Climate United continues to be entitled to a TRO requiring compliance with the ACA with respect to all requests preceding such a Notice, including all pending requests.[1] Given the imminent irreparable harm to Climate United, Climate United respectfully requests that the Court enter such a TRO at the conclusion of today's hearing or as soon as possible thereafter.

**Relief against EPA**

The Court should enter a TRO against EPA that freezes the status quo. Specifically, it should restrain EPA from giving effect to its purported "Notice of Grant Termination," and should restrain EPA from serving a Notice of Exclusive Control on Citibank. This relief would be consistent with Climate United's original request for an order stating that EPA and Administrator Zeldin are "enjoined from unlawfully suspending or terminating Climate United's grant award except as is permitted in accordance with the Account Control Agreement, the grant award, and applicable law." *See* Dkt. 2-12 at 2.

The "Notice of Grant Termination" is illegal. The "Notice" states that EPA is acting pursuant to "2 C.F.R. § 200.339-40, the General Terms and Conditions of EPA assistance award agreements, the terms and conditions of the Grant Agreement, and the Agency's inherent authority

---

[1] Even if EPA issues a Notice of Exclusive Control, the ACA further provides that "after the delivery of a Notice of Exclusive Control, Bank shall continue to disburse funds and financial assets associated with financial obligations 'properly incurred' by the Pledgor prior to the issuance of, but not in anticipation of, a delivery of a Notice of Exclusive Control, in Pledgor's 'Reserve' Account pursuant to Account Directions. originated by Pledgor except for any specific funds or financial assets, identified by Secured Party in the applicable Notice of Exclusive Control as not being 'properly incurred' by the Pledgor in accordance with 2 CFR 200.343." Dkt. 2-11.

to reconsider prior determinations in light of new information." Walking through each of those authorities one by one, none supports terminating Climate United's grant:

- **2 C.F.R. § 200.339** applies only when "the recipient . . . fails to comply with the U.S. Constitution, Federal statutes, regulations, or terms and conditions of the Federal award." EPA's "Notice" contains no allegation that Climate United violated any constitutional provision, statute, regulation, term, or condition of the grant. Indeed, the letter says literally nothing about Climate United.

- **2 C.F.R. § 200.340,** which is the only termination authority mentioned in the EPA's General Terms and Conditions for grants, permits termination "[b]y the Federal agency . . . if the recipient . . . fails to comply with the terms and conditions of the Federal award" or "[b]y the Federal agency . . . pursuant to the terms and conditions of the Federal award. . . ." 2 C.F.R. § 200.340(a)(1) and (4); *see* Dkt. 2-1 at 10, 30. EPA's "Notice" does not contend that Climate United has failed to comply with any Terms and Conditions of its grant.

- **"The General Terms and Conditions of EPA assistance award agreements."** The sole relevant provision is 2 C.F.R. § 200.340, discussed above, which again requires misconduct by Climate United. But, again, EPA's "Notice" does not allege misconduct by Climate United.

- **"The terms and conditions of the Grant Agreement."** The Grant Agreement specifies that termination may occur only in three situations:
    - Noncompliance with the grant's Terms and Conditions, by Climate United. Dkt. 2-5 at 41. This is not alleged in EPA's "Notice."

4

- o  "[T]here is adequate evidence of Waste, Fraud, or Abuse" by the recipient, Climate United.  "Waste, Fraud, and Abuse is a defined term: it means "credible evidence of the commission of a violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 of the United States Code or a violation of the civil False Claims Act 31 U.S.C. 3729-3733."  Dkt. 2-5 at 13; *see* Dkt. 2-1 at 31 & n.22.  Although EPA's "Notice" contains a vague reference to "waste, fraud, and abuse," it does not contend, let alone provide "credible evidence," that Climate United violated federal criminal law or the False Claims Act.  Again, the "Notice" contains no reference to Climate United at all.

- o  "[M]aterial misrepresentation of eligibility status."  Dkt. 2-5 at 41.  EPA's "Notice" does not contend there was any material misrepresentation of eligibility status by Climate United.

- **"The Agency's inherent authority to reconsider prior determinations in light of new information."**  EPA's "Notice" neither identifies the source of such inherent authority nor identifies any new information to support any change in position.

EPA's "Notice" also alleges "the absence of adequate oversight and account controls," "allocation of funds inconsistent with EPA's oversight and fiscal responsibilities," and the "circumvention of key oversight mechanism."  EPA lacks authority to terminate the grant based on these assertions.  Further, EPA does not substantiate them.  As explained in Climate United's motion, Climate United adheres to rigorous reporting requirements to facilitate oversight and transparency.  *See, e.g.*, Dkt. 2-1 at 9, 12-13, 33-34.

EPA's "Notice" also includes a reference to the "Appointments Clause and private nondelegation doctrine." Neither the Appointments Clause nor the private nondelegation doctrine is implicated by this grant agreement. No one at Citibank or Climate United is an officer of the United States, which is a necessary prerequisite for the Appointments Clause to apply. Nor does Citibank or Climate United exercise delegated regulatory authority. *Alpine Securities Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024), which involved FINRA's ability to expel a private party from the securities industry, *id.* at 1325, is not pertinent.

In summary, EPA's purported "Notice of Grant Termination" does not identify any legal basis to terminate Climate United's grant. The Court should enter an order freezing the pre- "Notice of Grant Termination" status quo.

**Effect of extension of time**.

Granting a TRO and freezing the status quo would be an appropriate exercise of discretion for an additional reason: the government has attempted to effectuate a pre-hearing change to the status quo during the extension of time to which Climate United consented as a matter of professional courtesy.

Here is the timeline of events preceding last night's "Notice":

- Tuesday, March 4, 2025: Climate United sent a lengthy letter to EPA with a detailed description of its legal arguments. *See* Bafford Decl., Dkt. 2-2 at ¶ 37; Bafford Decl. Ex. 7, Dkt. 2-9.

- Saturday, March 8, 2025: After EPA failed to respond to Climate United's letter, Climate United filed this suit. In addition, Climate United emailed counsel for both Citibank and EPA stating that Climate United intended to file a motion for TRO at the opening of business on Monday, March 10, 2025. Climate United refrained

from filing its motion until Monday morning to avoid burdening the Court with an emergency weekend filing.

- Morning of March 10, 2025: Climate United filed its motion for TRO.
- Midday March 10, 2025: Your Honor's Chambers sent an email proposing an in-person hearing on Tuesday, March 11, 2025, at 4:00 PM.

After the parties received that email, the government's attorney emailed "ask[ing] for the courtesy of agreeing to ask the Court to push back these deadlines by 24 hours, proposing that our opp. would be due March 12 at noon, with argument at 4:00 p.m. that day." The government's attorney "recognize[d] from our papers that your client has been without access to the money for some time and that voluntarily agreeing to even a short extension from the proposed schedule is not what your client would prefer," but stated that "we'd appreciate the courtesy of an additional 24 hours."

At the time, Climate United viewed this extension as unnecessary. Climate United's March 4, 2025 letter put EPA on notice that litigation was forthcoming if it did not respond—which it did not. Furthermore, Climate United advised the government on Saturday of the forthcoming motion for TRO. Finally, an extension—even of 24 hours—would be harmful to Climate United, as the attorney's email rightly acknowledged.

Nevertheless, Climate United wishes to respect the litigation process. Moreover, as an officer of the Court, the undersigned believes in being courteous to opposing counsel and consenting to extensions whenever possible. As such, Climate United agreed to the 24-hour extension. In the undersigned's responsive email consenting to this extension, the undersigned made clear that the extension was "[a]s a courtesy to you."

At 6:22 PM last night (March 11), after the originally scheduled time for the TRO hearing, Climate United received the purported "Notice of Termination" that was later filed with the Court at 7:06 PM.

If the hearing had taken place on March 11 as scheduled, and the Court had granted Climate United's TRO following the hearing, the "Notice" would likely never have issued.  With respect to EPA, Climate United's motion for TRO seeks, among other things, an order stating that EPA and Administrator Zeldin are "enjoined from unlawfully suspending or terminating Climate United's grant award except as is permitted in accordance with the Account Control Agreement, the grant award, and applicable law." See Dkt. 2-12 at 2.  As explained above, EPA's purported "Notice of Grant Termination" is not "in accordance with the Account Control Agreement, the grant award, and applicable law."  Thus, this Notice would have implicated EPA's compliance with the TRO, had it been granted.  But after Climate United agreed to extend the time of the hearing as a professional courtesy, EPA was able to use the additional 24 hours to issue the "Notice of Grant Termination" prior to the TRO hearing.

In view of this series of events, and as Climate United will elaborate further at today's hearing, the Court should exercise its discretion to issue a TRO leaving the status quo in place.

## CONCLUSION

Climate United's motion for a temporary restraining order should be granted.  Specifically, the Court should enter the following relief:

- Citibank should be restrained from refusing to comply with Climate United's disbursement requests under the ACA. This restraining order should apply both to already-submitted requests and to future requests while the restraining order is in force, so long as those requests comply with the ACA.

- EPA should be restrained from giving effect to its purported March 11, 2025 "Notice of Grant Termination," including by serving a Notice of Exclusive Control on Citibank.

Dated: March 12, 2025                           Respectfully submitted:

                                                /s/  Adam G. Unikowsky

Gabriel K. Gillett (admitted *pro hac vice*)    Adam G. Unikowsky (989053)
JENNER & BLOCK LLP                              Kathryn L. Wynbrandt* (1602446)
353 N. Clark Street                             David B. Robbins (493976)
Chicago, IL 60654                               Tanner J. Lockhead* (90011928)
Tel.: (312) 222-9350                            JENNER & BLOCK LLP
                                                1099 New York Avenue
                                                Suite 900
                                                Washington, D.C. 20001
                                                Tel.: (202) 639-6000
                                                Fax: (202) 639-6066
                                                aunikowsky@jenner.com

                                                * Application to Court pending.

                                                Allison N. Douglis (admitted *pro hac vice*)
                                                JENNER & BLOCK LLP
                                                1155 Avenue of the Americas
                                                New York, N.Y. 10036
                                                Tel.: (212) 891-1600
                                                Fax: (212) 891-1699
                                                adouglis@jenner.com

                                                *Attorneys for Plaintiff Climate United Fund*