**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CLIMATE UNITED FUND,<br>*Plaintiff*,<br>-against-<br>CITIBANK, N.A., *et al.*,<br>*Defendants*. | Case No. 25-cv-00698-TSC |
| COALITION FOR GREEN CAPITAL,<br>*Plaintiff*,<br>-against-<br>CITIBANK, N.A., *et al.*,<br>*Defendants*. | Case No. 25-cv-00735-TSC |
| POWER FORWARD COMMUNITIES, INC.,<br>*Plaintiff*,<br>-against-<br>CITIBANK, N.A., *et al.*,<br>*Defendants*. | Case No. 25-cv-00762-TSC |

**DECLARATION OF STEPHEN BROWN IN SUPPORT OF COALITION FOR GREEN CAPITAL'S MOTION FOR A PRELIMINARY INJUNCTION**

I, Stephen Brown, declare under penalty of perjury as follows:

1. I am an adult citizen of the United States and am competent to testify as to the matters set forth in this declaration. I submit this declaration in support of the application for a preliminary injunction filed by the Coalition for Green Capital ("CGC") in the above-captioned suit.

2. I am the Chief Network Officer at CGC. I have over twenty years of experience in government relations, public affairs, and project finance. In my current role, I am responsible for connecting CGC to members of the American Green Bank Consortium ("AGBC"), described below, developing new Consortium members, and establishing relationships with community groups. The information set forth herein is true, to the best of my knowledge and belief.

## I. The American Green Bank Consortium and the Network Loan Program

3. I work along one of CGC's principal lines of business: the American Green Bank Consortium and the Network Loan Program.

4. Using funds awarded by the EPA, CGC has developed the Network Loan Program as a catalytic loan program, in order to provide emerging green banks with up to $10 million each in initial capitalization to support capacity building, green power projects, job creation, and the mobilization of private capital in their respective regions. As of January 2025, CGC had committed $135 million in funding to 14 emerging green banks and community lenders across 14 states.[1]

5. The participants in the Network Loan Program are part of CGC's wider American Green Bank Consortium, a network of partners composed of green banks, community development financial institutions, capital providers, developers, community benefit organizations, and other clean energy supporters. Through the AGBC program, CGC provides toolkits, expertise, and technical assistance to its dues-paying members, alongside the financial assistance given in the Network Loan Program.

[1] These states are Arizona, Georgia, Hawaii, Indiana, Iowa, Louisiana, Nebraska, Nevada, New Mexico, North Carolina, Pennsylvania, Texas, Utah, and Vermont.

## II. CGC Is Suffering Irreparable Harm from Disruption to its Network Activities

### A. CGC's Efforts to Build and Consolidate a Network of Green Banks Have Been Frustrated by the Defendants

6. The EPA's and Citi's actions have already harmed CGC's efforts to partner with nascent green banks under the Network Loan Program. CGC's program goals will ultimately fail if the Defendants' actions continue, because Defendants have left CGC unable to disburse funds to new members or provide assistance and financial support to existing members. Additionally, the banks receiving funding under the Network Loan Program have elected to pause implementation of the Program with CGC given the funding freeze and legal uncertainty that the Defendants' actions are causing.

7. Certain participating organizations in the Network Loan Program, which had already received funding from CGC, have delayed deploying *any* funds under the catalytic loans from CGC based on EPA's actions. Multiple of these organizations indicated that this decision was based on their board members' concerns with the EPA's funding freeze and the EPA's baseless allegations. CGC had also planned program support grants of up to $250,000 for organizations participating in the Network Loan Program, to fund staffing, due diligence, and other costs associated with their use of the seed funding CGC had provided them. Because the EPA's and Citi's conduct have made disbursement of these program support grants impossible, these organizations cannot effectively deploy their funds, which is frustrating an important mission of CGC: bringing the NCIF grant funds into circulation in the economy.

8. Other CGC transactions are in jeopardy because of the Defendants' actions. For example, after eight weeks of negotiations with CGC, an Alaska-based community development financial institution agreed to a committed catalytic loan from CGC of up to $10 million. The organization intended to use these funds to facilitate local clean energy projects, such as

transitioning from high-emission diesel generators and oil heating to energy-efficient, zero-emission electric heat pumps in Tribal communities in Alaska. CGC had already committed its loan, and the organization intended to close the transaction this month, with only final board approval needed. Instead, following the Defendants' actions, it has been impossible for CGC to close on this transaction and follow through on its committed funding obligations.

9. As another example, CGC had completed all negotiations to provide funding to a local green bank in the Midwest, including agreement on all negotiated documents and closing deliverables (*e.g.*, a legal opinion from the bank's counsel, a deposit account control agreement, and closing certificates), with only board approval remaining before closing. Following a board meeting which took place the day after Administrator Zeldin's video was posted to X,[2] a representative of this bank contacted CGC's counsel and informed CGC that the board had voted against accepting the loan, specifically citing Administrator Zeldin's threats and his commitment to ending the NCIF program.

10. Similarly, CGC had been at various stages of negotiation with three additional financial institutions located across the United States. It was expected that these loans would make meaningful progress toward CGC's goal of supporting banks in all 50 States. Instead, given the uncertainty, these organizations have been forced to slow their negotiations with CGC, with the leadership of at least one of the organizations specifically stating to CGC that the EPA's attempts to end the NCIF program had complicated its political situation and made a future agreement uncertain. Based on conversations that I have had, I understand that this organization has no other clear source of funding and will be forced to discontinue or downsize its operations without the capital injection it anticipated receiving from CGC.

---

[2] *See* https://x.com/epaleezeldin/status/1889840040622321778.

### B. CGC Is Suffering Reputational Harm as a Result

11. Left unable to disburse committed grants and loans to its network partners, the success of CGC's programs has been jeopardized. Because CGC aims to build a network of self-sustaining operations, its effort to support and develop nascent green banks is critical to its future success, because CGC expects the institutions it has incubated through the Network Loan Program to become future partners and co-investors. Making this a reality requires maintaining and bolstering CGC's excellent reputation, but the Defendants' actions deprive CGC of the reputational benefits that will accrue from success in the Network Loan Program and from a future generation of green banks that would partner with CGC on clean energy projects going forward.

12. And as a result of the freeze and purported "termination" of its grant, CGC has been unable to carry out its activities providing members and coalition partners with technical and market-building assistance. This is undermining CGC's value proposition, impacting its reputation among its existing and prospective members. This harm will only get worse as CGC remains unable to carry out the work it envisioned doing under the NCIF program.

13. Moreover, CGC's members and partners have other organizations they can turn to which offer similar services and have not been affected by similar action by the EPA. If CGC's funds remain frozen, it will be unable to deliver the services and assistance its members expect, and risks losing to competitors the partners and network members that CGC relies on for funding and for sourcing and executing on investment opportunities.

* * *

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 21st day of March, 2025.

*/s/ Stephen Brown*
STEPHEN BROWN
Coalition for Green Capital