UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CLIMATE UNITED FUND,**<br><br>      Plaintiff,<br><br>v.<br><br>**CITIBANK, N.A.,** *et al.,*<br><br>      Defendants. | Civil Action No. 1:25-cv-00698-TSC |
| **COALITION FOR GREEN CAPITAL,**<br><br>      Plaintiff,<br><br>v.<br><br>**CITIBANK, N.A.,** *et al.,*<br><br>      Defendants. | Civil Action No. 1:25-cv-00735-TSC |
| **POWER FORWARD COMMUNITIES, INC.,**<br><br>      Plaintiff,<br><br>v.<br><br>**CITIBANK, N.A.,** *et al.,*<br><br>      Defendants. | Civil Action No. 1:25-cv-00762-TSC |

**DECLARATION OF ARI MATUSIAK**

I, Ari Matusiak, declare as follows:

      1.      I am the President and Chief Executive Officer of Rewiring Community Investment Fund, Inc. ("RCIF"). I submit this declaration in support of Plaintiff Power Forward Communities, Inc.'s motion for a preliminary injunction in this matter. The statements made in

1

this declaration are based on my personal knowledge, materials I have reviewed, and information made available to me pursuant to my duties at RCIF.

2. As a founder of RCIF, I have been with the organization since it was established in 2023. Prior to my current position, I held leadership positions at both for-profit and nonprofit organizations. I have a bachelor's degree in political science from Brown University and a juris doctorate from Georgetown University Law Center.

3. RCIF is a nonprofit organization dedicated to delivering lower household energy bills, local jobs that cannot be automated or offshored, and greater wealth for American communities via the low-cost installation of better and more efficient electric machines in American homes. The RCIF entity was created for the sole purpose of applying to the Greenhouse Gas Reduction Fund ("GGRF"). As such, RCIF relies exclusively on federal funding to carry out its mission and operations.

4. RCIF's sole corporate member is Rewiring America, Inc. ("Rewiring America"). Rewiring America was founded in the summer of 2020 with the aim of making electrification affordable, desirable and better for all American households. The organization develops accessible, actionable data and tools, and works to build coalitions and partnerships to make going electric easier for households and communities. Every opportunity to replace a car, water heater, furnace, dryer, cooktop, or to install rooftop solar and storage, is an opportunity for American families to get better, more efficient electric machines. Rewiring America aims to lower energy bills and housing costs for American households, reducing emissions and improving air quality along the way.

5. RCIF is a wholly controlled entity of Rewiring America that serves as a subrecipient of prime recipient Power Forward Communities, Inc. ("PFC") to implement the

NCIF program. RCIF shares the same goals and objectives of Rewiring America. No employees or employment structures are housed within RCIF. All employees and employee structures related to the NCIF program are part of Rewiring America, and these resources are shared with RCIF to implement the goals of the NCIF award.

6. Rewiring America is one of the coalition members comprising PFC. In April 2024, after a robust and months-long competitive process, PFC received a $2 billion award from the Environmental Protection Agency ("EPA") under the National Clean Investment Fund ("NCIF").

7. PFC's award is governed by the terms of an Award Agreement between EPA and PFC. Among other terms, the Award Agreement authorizes PFC to issue subawards to designated subrecipients to carry out parts of its NCIF workplan.

8. RCIF is a designated subrecipient of approximately $490 million of the grant funds awarded to PFC. RCIF is expected to utilize this subaward over the next seven years (2024-2031) to advance single-family housing electrification. Approximately $200 million will be used for financial assistance, structured to enable mainstream lenders to offer credit to low- and moderate-income homeowners at significantly reduced interest rates. The assistance will thus lower the upfront cost to Americans of purchasing weatherization measures, heat pumps, rooftop solar and battery backup systems that will lower energy bills by hundreds to thousands of dollars per year. Approximately $261 million will be used to: (1) directly negotiate upfront discounts entirely passed through to households on these upgrades from manufacturers; (2) build digital tools that make it easier for households to scope and price the project that is best for them; (3) connect households to available federal, state, local and utility incentives; (4) match households with trained, high quality, local contractors to do the job; and (5) establish local

partnerships that help households learn about these low cost upgrade opportunities from community officials , civic associations and other trusted messengers. These activities are categorized as market building and predevelopment activities, as those terms are defined and described in PFC's Award Agreement with EPA and RCIF's Subaward Agreement with PFC. Together with the financial assistance dollars, these market building and predevelopment activities are projected to lower the cost of these upgrades by over 50 percent for households, significantly benefiting those households that elect to participate and efficiently deploying taxpayer dollars. Lastly, approximately $29 million will be used for administrative costs.

9. RCIF was identified as a Subrecipient in the proposal submitted by PFC in 2023 as well as in the August 2024 Award Agreement. The terms and conditions of RCIF's subaward are set forth in a Subaward Agreement it executed with PFC on December 23, 2024. Pursuant to its Subaward Agreement, RCIF's funds are to be maintained in accounts held in RCIF's name at Citibank, the Financial Agent selected by the U.S. Department of the Treasury for the NCIF award. The Subaward Agreement requires that RCIF comply with the applicable Financial Agent terms and conditions in PFC's NCIF award.

10. RCIF also entered into an Account Control Agreement ("ACA") with PFC and Citibank. That Account Control Agreement obligates Citibank to "comply with all instructions, notifications, and entitlement orders the Bank receives from RCIF directing the disposition of funds and financial assets in the Accounts."

11. Prior to February 12, 2025, Citibank satisfied that contractual obligation by complying with disbursement instructions submitted by RCIF within 24 hours.

12. On March 9, 2025 at 9:17 p.m., RCIF directed Citibank to disburse a total of $1,327,632.26 as reimbursement for costs incurred in accordance with the Subrecipient Agreement as of that date.

13. As of the date of this declaration, Citibank has not disbursed funds in accordance with those directions. RCIF understands that Citibank has not done so because Citibank has "frozen" RCIF's accounts.

14. RCIF understands that, on March 11, 2025, at 5:24 PM, EPA informed PFC that it had terminated the Award Agreement, effectively immediately.

15. RCIF has been and will continue to be harmed by Citibank's failure to disburse funds in violation of its obligations under the ACA, and EPA's unlawful termination of the Award Agreement.

16. RCIF's inability to access its NCIF grant award has left RCIF without expected funding and facing severe budget uncertainty. Further, the costs of workplan compliance are largely fixed, comprised of personnel and systems infrastructure that must be built and maintained.

17. If RCIF cannot access its funds, RCIF will be required to adjust or forfeit current contracts and other project operations. RCIF also faces the prospect of losing critical contractors and project partners with hard-to-replace expertise, relationships, and skillsets necessary to its program operations. That is true because of both RCIF's inability to pay these individuals and partners, and because of the severe reputational harm RCIF has endured due to its inability to comply with its commitments.

18. The budget uncertainty has also affected RCIF's ability to execute on its project milestones. RCIF cannot engage in contractual and other commitments necessary to advance its projects, because the lack of funding access renders RCIF unable to honor its commitments.

19. For instance, Citibank's freeze of RCIF's accounts prevents RCIF from fulfilling its "loan loss reserve" obligations that are essential to providing households in low-income areas with access to affordable heating and cooling systems for their homes. The EPA workplan contemplates that RCIF will establish a loan loss reserve to encourage lenders to provide loans with significantly discounted interest rates to households across the United States. This arrangement allows RCIF to leverage private capital, making taxpayer dollars go further and allowing NCIF dollars to support more American households. These low-interest loans, in turn, will enable recipients to afford the purchase of energy-efficient, clean heating and cooling systems. Many of these households do not currently have adequate heating or cooling systems of any kind, despite living in areas susceptible to extreme temperatures.

20. Due to the unavailability of NCIF funding, RCIF is unable to provide the promised loan loss reserve to private lenders. As a result, the private lenders cannot offer the favorable-interest rate loans that are necessary to facilitate the purchase of energy-efficient heating and cooling systems. Further, the "on again, off again" nature of the conversations with lenders on account of EPA's and Citibank's actions has lessened those lenders' confidence in the reliability of these dollars. Because of this uncertainty, RCIF is at risk of losing these partnerships altogether, or having the underlying agreements transact on less favorable terms. The result will be that thousands of Americans will either pay a higher cost for or be outright deprived of access to those systems, meaning that some of the otherwise eligible individuals will be forced to endure another summer or winter without relief in their own home.

21. As another example, the EPA workplan calls for RCIF to negotiate and finalize contracts with local community navigators in cities like Pittsburgh, Pennsylvania to conduct outreach and enrollment for homeowners in their community. As the workplan details, "these local community navigators serve as an additional technical and programmatic resource, and inspire the confidence needed for households and property owners to move forward with qualified projects. From retired engineers and building electrification experts to local educators and religious leaders, these navigators will have a range of experience and expertise." Without access to its NCIF funding, RCIF has been unable to enter into the vast majority of the contractual arrangements contemplated by the work plan. The result is an increased risk that eligible households will not be able to avail themselves of a low-cost option to improve their home and save money on their energy bills. It also takes away an efficient mechanism for creating awareness, resulting in a higher cost to taxpayers in order to achieve the results anticipated by Congress.

22. RCIF likewise cannot finalize the contractual agreements it has negotiated with original equipment manufacturers ("OEMs"). These contracts are intended to (1) secure lower standardized pricing for homeowners on electric household equipment and (2) develop career pathways that include on-the-job training and upskilling for OEM network contractors. If RCIF cannot get these contracts in place before tariffs are imposed on parts and equipment for clean and efficient appliances, then households will lose the opportunity to lock in pre-tariff rates, thus further undermining the intent of the GGRF to lower costs for US households.

23. Moreover, RCIF's inability to access its NCIF funds has prevented it from fulfilling its obligation to provide workforce development. The EPA workplan tasks grantees to "develop new and untapped talent" to meet the imperatives of the EPA's Greenhouse Gas

Reduction Fund. But because RCIF cannot access its funding, it is unable to provide any assurances to its network of contractors that there will, in fact, be jobs in the pipeline for those contractors to work on.

24. The termination of the Award Agreement exacerbates all the harms detailed above. Indeed, if the Award Agreement terminates and RCIF loses access to the NCIF award by virtue of its Subaward Agreement with PFC (RCIF's sole source of funding), RCIF will be forced to close its doors. More importantly, RCIF would be unable to carry out the important work for which its NCIF award was made—and for which Congress appropriated the funds allotted to the NCIF program and obligated to RCIF via PFC: to deploy "low- and zero-emission products, technologies, and services," 42 U.S.C. § 7434(c)(1), to lower Americans' utility bills, improve community health and safety, and help address the climate crisis.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge. Executed this 21st day of March, 2025.

_____
Ari Matusiak