**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Climate United Fund, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| v. | ) | **1:25-cv-00698-TSC** |
| | ) | |
| Citibank, N.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

|  |  |  |
|---|---|---|
| Coalition for Green Capital, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| v. | ) | **1:25-cv-00735-TSC** |
| | ) | |
| Citibank, N.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

|  |  |  |
|---|---|---|
| Power Forward Communities, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| v. | ) | **1:25-cv-00762-TSC** |
| | ) | |
| Citibank, N.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT CITIBANK, N.A.'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

    A.    The Greenhouse Gas Reduction Fund ................................................... 2

    B.    Citibank and Treasury's Financial Agency Agreement ........................ 3

    C.    The Account Control Agreements ......................................................... 6

    D.    Citibank's Compliance With Instructions From The United States Government ............................................................................................ 7

    E.    EPA's Termination of Plaintiffs' Grants ............................................... 8

    F.    Procedural History ................................................................................ 9

    G.    Plaintiffs' Motion for a Preliminary Injunction .................................. 11

ARGUMENT ............................................................................................................... 12

I.    Plaintiffs Are Not Likely To Succeed On The Merits Against Citibank, Because Citibank Has Complied With Its Contractual Obligations.......................... 12

    A.    The FAA and Account Control Agreements Must Be Read Consistently With One Another ................................................................................ 13

    B.    Citibank Complied With Its Contractual Obligations ........................... 15

II.    If The Court Determines That It Lacks Jurisdiction Over Claims Against The Government, Then Claims Against Citibank Should Be Dismissed Or Stayed ......... 17

CONCLUSION ............................................................................................................ 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*American Civil Liberties Union Foundation v. WMATA*,
303 F. Supp. 3d 11 (D.D.C. 2018) ........................................................................12

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) ...........................................................................................18

*Cemex Inc. v. Dep't of the Interior*,
560 F. Supp. 3d 268 (D.D.C. 2021) ......................................................................14

*\*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ..............................................................................12

*Church v. Biden*,
573 F. Supp. 3d 118 (D.D.C. 2021) ......................................................................12

*Climate United Fund v. Citibank, N.A., et al.*,
No. 1:25-cv-698 (D.D.C.) ........................................................................................2

*Coalition for Green Capital v. Citibank, N.A., et al.*,
No. 1:25-cv-735 (D.D.C.) ........................................................................................2

*Coalition for Green Capital v. Citibank, N.A.*,
No. 1:25-cv-1964 (S.D.N.Y.) ...................................................................................9

*Coggeshall Dev. Corp. v. Diamond*,
884 F.2d 1 (1st Cir. 1989) ......................................................................................17

*Crye Precision LLC v. Bennettsville Printing*,
2019 WL 6388636 (E.D.N.Y. Aug. 13, 2019) .......................................................14

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
888 F.3d 640 (4th Cir. 2018) .................................................................................18

*Entines v. United States*,
495 F. Supp. 2d 84 (D.D.C. 2007) .........................................................................19

*Feng Wang v. Pompeo*,
354 F. Supp. 3d 13 (D.D.C. 2018) .........................................................................12

*Goodrich v. Bank of America, N.A.*,
2024 WL 341064 (D.D.C. Jan. 30, 2024) ..............................................................17

*Hanson v. District of Columbia*,
120 F.4th 223 (D.C. Cir. 2024) ..............................................................................12

*Hulley Enters. Ltd. v. Russian Federation,*
  211 F. Supp. 3d 269 (D.D.C. 2016) ...................................................19

*Kelso Enters. v. A.P. Moller–Maersk A/S,*
  375 Fed. App'x. 48 (2d Cir. 2010) .....................................................14

*Long Beach Sec. Corp. v. Nat'l Credit Union Admin. Bd.,*
  315 F. Supp. 3d 129 (D.D.C. 2018) ...................................................14

*Long Side Ventures LLC v. Adarna Energy Corp.,*
  2014 WL 4746026 (S.D.N.Y. Sept. 24, 2014) .....................................14

*\*Matek Inc. v. Int'l Bus. Machines Corp.,*
  2024 WL 663340 (D.D.C. Feb. 16, 2024) ......................................2, 14

*In re O.P.M. Data Sec. Breach Litig.,*
  928 F.3d 42 (D.C. Cir. 2019) ...........................................................18

*Power Forward Communities, Inc. v. Citibank, N.A., et al.,*
  No. 1:25-cv-762 (D.D.C.) ...................................................................2

*Power Forward Communities, Inc. v. Citibank, N.A.,*
  No. 1:25-cv-2021 (S.D.N.Y.) ..............................................................9

*Ritch v. N.Y. Eye & Ear Infirmary,*
  2023 WL 6393970 (S.D.N.Y. Sept. 29, 2023) ...............................1, 13

*Sepehry-Fard v. United States,*
  2022 WL 17335931 (Fed. Cl. Nov. 30, 2022) .....................................19

*United States v. Sherwood,*
  312 U.S. 584 (1941) .........................................................................19

*Wis. Voters All. v. Pence,*
  514 F. Supp. 3d 117 (D.D.C. 2021) ...................................................12

**Statutes**

42 U.S.C. § 7434(a)(1) ..........................................................................3

## INTRODUCTION

Citibank N.A. ("Citibank") respectfully submits this response to plaintiffs' consolidated motion for a preliminary injunction. Citibank has a narrow and limited role in connection with the Greenhouse Gas Reduction Fund ("GGRF") and the National Clean Investment Fund ("NCIF"), the programs through which plaintiffs received grants. Citibank does not select grant recipients, determine compliance with grant agreements, or otherwise determine whether funds should or should not be disbursed. Rather, pursuant to a Financial Agency Agreement ("FAA") with the Department of Treasury, Citibank has been designated as a Financial Agent of the United States to provide commercial banking and finance services. CUF ECF 15-1. The FAA serves as the umbrella agreement guiding Citibank's role with regard to the GGRF, and provides, among other things, that Citibank "owes a fiduciary duty of loyalty and fair dealing to the United States," must "act at all times in the best interests of the United States," and must "comply with all lawful instructions or directions received from Treasury." *Id.* §§ 5.A, 5.B.

Citibank submits this response to clarify Citibank's role and actions and to make clear that Citibank has not breached any contract. Citibank is, as the Court has acknowledged, "in the middle of all of this." 3/12/2025 Hr'g Tr. at 28:14-15. Citibank has at all times followed what it understands as its contractual obligations to account holders and contractual and fiduciary obligations to the government. Citibank will continue those efforts and, of course, will comply with any court order.

Plaintiffs' suggestion that Citibank has breached the account control agreements errs because it fails to read those agreements "in harmony" with the FAA, the umbrella agreement upon which the account control agreements are based. *Ritch v. N.Y. Eye & Ear Infirmary*, 2023 WL 6393970, at *7 (S.D.N.Y. Sept. 29, 2023). The FAA and the account control agreements "must be read together," as they are both designed to "effectuate the same purpose" of the GGRF

program. *Matek Inc. v. Int'l Bus. Machines Corp.*, 2024 WL 663340, at *2-3 n.3 (D.D.C. Feb. 16, 2024). And given that the FAA must inform any interpretation of the account control agreements, particularly as to Citibank's role, Citibank cannot have been in breach: the FAA requires Citibank to act at the government's direction, and follow the government's "directives" is all Plaintiffs assert Citibank has done here. CUF ECF 33-1 at 4.

Finally, Citibank addresses below the proper procedure that should govern if the Court were to determine that it lacks jurisdiction over plaintiffs' claims against the government. In the event the government has sovereign immunity against claims for specific performance of a contract and this case is sent to the Court of Federal Claims, then Citibank will be due "derivative sovereign immunity" as well. *See* Part II, *infra*. And there would also be little reason to continue litigation in this Court while the gravamen of the litigation—plaintiffs' claims against the government—proceed in a different forum. In the event claims against the government are dismissed, for lack of jurisdiction or otherwise, then claims against Citibank should be dismissed or stayed as well.

## BACKGROUND

### A.    The Greenhouse Gas Reduction Fund

This case arises in part out of the Inflation Reduction Act, a statute passed in 2022 that provided "$27 billion to invest in clean energy in communities across the count[r]y." CUF ECF 1 § 22.[1] Congress did not appropriate these funds in favor of any specific private recipient. Congress instead provided that the Administrator of the EPA would select "eligible recipients for the purposes of providing grants, loans, or other forms of financial assistance, as well as technical

---

[1] "CUF ECF" refers to the docket in *Climate United Fund v. Citibank, N.A., et al.*, No. 1:25-cv-698 (D.D.C.); "PFC ECF" refers to the docket in *Power Forward Communities, Inc. v. Citibank, N.A., et al.*, No. 1:25-cv-762 (D.D.C.); and "CGC ECF" refers to the docket in *Coalition for Green Capital v. Citibank, N.A., et al.*, No. 1:25-cv-735 (D.D.C.).

assistance, to enable" various communities "to deploy or benefit from zero-emission technologies," including "distributed technologies on residential rooftops, and to carry out other greenhouse gas emission reduction activities, as determined appropriate by the Administrator." 42 U.S.C. § 7434(a)(1). The Greenhouse Gas Reduction Fund includes the "National Clean Investment Fund," which is established pursuant to 42 U.S.C. § 7434(a)(2). *See* CUF ECF 15-1 at Ex. A § I (describing the program). The plaintiffs in this litigation are grantees receiving funds under the NCIF program.

The statue does not mention Citibank, let alone provide Citibank with policymaking authority with respect to the GGRF. Citibank plays no role in deciding who receives GGRF funds, the amount of funds those entities should receive, or whether grant recipients are in compliance with their grant agreements. Citibank also has no oversight responsibilities in connection with the GGRF. Those responsibilities are exclusively handled by EPA.

### B.    Citibank and Treasury's Financial Agency Agreement

Citibank is a "Financial Agent" of the United States in connection with the NCIF program, and so owes the United States fiduciary duties, including a fiduciary duty of loyalty. On September 18, 2024, Citibank and the Department of Treasury entered into a Financial Agency Agreement ("FAA"), pursuant to which Citibank would "provide services related to programs under the Inflation Reduction Act of 2022 . . . including the grant programs." CUF ECF 15-1 (Recitals). The FAA provides that Citibank "acknowledges and agrees that it owes a fiduciary duty of loyalty and fair dealing to the United States when acting as a financial agent of the United States." *Id.* § 5.A. The FAA further provides that as a financial agent, Citibank will "act at all times in the best interests of the United States when carrying out its responsibilities under this FAA and in all matters connected with this agency relationship." *Id.*

These fiduciary obligations include duties to "construe the terms of this FAA and any related instructions from Treasury in a reasonable manner to serve the purposes and interests of the United States," *id.* § 5.B.ii, as well as "to act only within the scope of its actual authority and to comply with all lawful instructions or directions received from Treasury," *id.* § 5.B.iv. Citibank's activities under the FAA are also subject to an additional provision providing that, "[n]otwithstanding any other provision of this FAA, when Treasury in its sole discretion determines that such actions are necessary to protect the interests of the United States, Treasury may reduce the authorized scope of work under this FAA, terminate this FAA, or revoke the Financial Agent's status as a financial agent of the United States." *Id.* § 23. The FAA also provides that "Treasury may periodically issue instructions through bulletins, letters, or other communications, consistent with this FAA," to "further . . . clarify the scope of the duties and services of the Financial Agent under this FAA." *Id.* § 3.D.

Although plaintiffs focus on different contracts—the "account control agreements" or "ACAs" governing their respective accounts—those agreements are also established pursuant to the FAA. The FAA describes the work Citibank must perform in Exhibit A. The Exhibit provides that Citibank "shall establish controlled accounts in the names of the [National Clean Investment Fund] … grant recipients," who are defined as "Prime Recipients," and shall "be party to account control agreements with each of the[se] Prime Recipients." *Id.* at Ex. A § I.A.1.i. The Exhibit also provides that the FAA—and not just the account control agreements—governs Citibank's conduct with respect to grantees: "Each Prime Recipient and Subrecipient account holder will have the ability to access and use funds in their respective accounts in accordance with, and subject to, the terms and conditions of each Prime Recipient's or Subrecipient's Grant Program grant agreement and the conditions and restrictions detailed in this Exhibit A [to the FAA]." *Id.* at Ex.

A § I.A.1.iv.  And the account control agreements themselves similarly reflect that they are not independent of the FAA.  Each account control agreement contains "Whereas" clauses, which recognize that the FAA is the premise for Citibank's role in the grant program and that Citibank is an agent of the United States government.  Specifically, the account control agreements each recognize that "[Citibank] has been designated and authorized to act as a financial agent of the United States pursuant to the authority of the U.S. Department of Treasury under 12 U.S.C. §§ 90 and 265."  *See* CUF ECF 14-4 at 1.

The FAA also contains additional provisions emphasizing EPA and the government's role in overseeing grantees' accounts.  The FAA specifies that "EPA will be party to account control agreements with each of the Prime Recipients and will be the secured party."  CUF ECF 15-1 at Ex. A § I.A.1.i. "The Financial Agent" must also "implement account controls, including as instructed by EPA."  *Id.* at Ex. A § I.B. The FAA emphasizes EPA's role in overseeing the accounts.  It provides that "[t]he Financial Agent shall freeze accounts, and transfer funds in frozen accounts, at the direction of the relevant secured party [the EPA, with respect to Prime Recipients], in accordance with the account control agreements," *id.* at Ex. A § I.B.4, that EPA shall be notified in advance of withdrawals above certain limits, *see id.* at Ex. A § I.B.1, and that EPA must be permitted "full account visibility" into each account via a secure online platform, *id.* at Ex. A § I.D.1.

The FAA also provides that the government may even remove Citibank as a financial agent if necessary to protect the government's interests:  "Notwithstanding any other provision of this FAA, when Treasury in its sole discretion determines that such actions are necessary to protect the interests of the United States, Treasury may reduce the authorized scope of work under this FAA,

terminate this FAA, or revoke the Financial Agent's status as a financial agent of the United States." *Id.* § 23.

### C.    The Account Control Agreements

As required by the FAA, Citibank has entered into the required account control agreements with plaintiffs. Each plaintiff is a Prime Recipient of the GGRF, and each of their account control agreements incorporates similar terms. The account control agreements each reference the FAA, specifying (as noted above) that "the Bank has been designated and authorized to act as a financial agent of the United States." CUF ECF 14-4 at 1. The agreements also provide that "[t]he Bank shall comply with all instructions, notifications, and entitlement orders the Bank receives directing the disposition of funds and financial assets in the Accounts . . . originated by [CGC]," unless Citibank "receives a notice . . . from the Secured Party [the EPA] that the Secured Party is exercising its right to exclusive control over an Account." *Id.* § 2 (discussing a "Notice of Exclusive Control").

The account control agreements also, however, contain additional provisions limiting Citibank's duties and making clear that Citibank is also required to follow directions from the government. The agreements contemplates that the "Secured Party" (EPA, as relevant here) may also "submit instructions to the Bank." *Id.* § 13.b. Citibank also shall not be liable for "indirect, incidental, consequential, punitive or special losses . . . whether or not any such losses or damages were foreseeable or contemplated." *Id.* § 6.b. And the account control agreements also state that Citibank may not be held liable for following the instructions of the United States government, specifying that "[t]he Bank shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control," "including, without limitation, any provision of any present or future law or regulation or any act of any governmental authority." *Id.*

### D.    Citibank's Compliance With Instructions From The United States Government

Plaintiffs' lawsuits arise out of Citibank's attempts to fulfill its fiduciary duties and comply with instructions from agencies of the United States government, including EPA and the Department of Treasury.  On February 17, 2025, Citibank received written correspondence from the Federal Bureau of Investigation, requesting that Citibank "[p]lease accept this letter as a recommendation to place an administrative freeze on the account(s) associated with" certain ACAs, "for 30 days."  CUF ECF 14-5 at 1 (2/17/2025 FBI Ltrs.).  Plaintiffs' accounts were listed as three of the impacted accounts.  *See id.* at 2.  FBI requested this action on account of "credible information received by the Federal Bureau of Investigation that the[se] . . . account(s) ha[d] been involved in possible criminal violations, including 18 § U.S.C. 371 (Conspiracy to defraud the United States) and 18 § U.S.C. 1343 (Wire fraud)."  *Id.*  Pursuant to its fiduciary duties to the United States, Citibank complied with the FBI's requests, while also conferring with the DOJ and EPA regarding the basis for their concerns.[2]  As the Government's investigations developed, Citibank continued to confer with DOJ, EPA, and Treasury regarding the GGRF accounts.

On March 4, 2025, the Department of Treasury directed Citibank not to disburse funds from any of the GGRF accounts for five additional days.  Specifically, the Department of Treasury stated that it had been informed of EPA's "concerns regarding potential fraud and/or conflicts of

---

[2]  Citibank also learned that EPA's Inspector General had begun an investigation into the GGRF program.  Specifically, on March 2, 2025, EPA provided Citibank with a written letter from EPA's Acting Deputy Administrator to EPA's Office of Inspector General.  The letter stated that the Acting Deputy Administrator was "referring to your office urgent and deeply concerning matters of financial mismanagement, conflicts of interest, and oversight failures within the Greenhouse Gas Reduction Fund (GGRF)."  CUF ECF 14-6 at 2 (3/2/2025 Inspector General Ltr.).  The letter stated that "[g]iven the severity of the alleged misconduct, waste, conflicts of interest, and potential fraud within the GGRF Program, the Administrator is conducting a comprehensive review," and requested the Inspector General's "assistance with a comprehensive review of this arrangement and the issues involved."  *Id.* at 2, 5.

interest related to the Greenhouse Gas Reduction Fund," and that "EPA anticipates developing additional account controls." CUF ECF 14-7 (3/4/2025 Treasury Email). The email cited Citibank's fiduciary obligations and was explicit in instructing Citibank to not disburse funds:

> Treasury is instructing Citibank, ***in its capacity as fiduciary***, to work directly with the EPA to establish and implement reasonable account controls to serve the purposes and interests of the United States, in accordance with Section 5 of the FAA. Further, in order to provide the EPA with the necessary time to develop reasonable account controls, ***we are further instructing Citibank not to disburse funds*** from any of the GGRF accounts ***prior to the end of the day Sunday, March 9, 2025***.

*Id.* (emphasis added).

Early in the morning of March 10, 2025, EPA and the Department of Treasury each directed Citibank to continue to refrain from processing disbursement requests, again invoking Citibank's fiduciary duties. EPA wrote: "To prevent the misuse of funds . . . EPA instructs the Bank, pursuant to this Treasury directive, the grant agreements, and Section I.B of Exhibit A to the Financial Agency Agreement (FAA) between the Bank and Treasury … ***to pause the processing of payment instructions for the GGRF accounts*** until further notice." CUF ECF 14-2 (emphasis added). The Department of Treasury similarly stated that, "[i]n accordance with Treasury's authorities under the FAA, Treasury is instructing Citibank, ***in its capacity as fiduciary, to comply with EPA's instructions*** to Citibank pursuant to the FAA." CUF ECF 14-3 (emphasis added).

### E.    EPA's Termination of Plaintiffs' Grants

On the evening of March 11, 2025, Citibank learned that the EPA had terminated plaintiffs' GGRF grants. *See* CUF ECF 13. The Notice and its attached exhibit (a letter from EPA to Climate United, one of the consolidated plaintiffs here) explained that "[f]ollowing a comprehensive review and consistent with multiple ongoing independent federal investigations into programmatic fraud, waste, abuse, and conflicts of interest . . . EPA has determined that these deficiencies pose

an unacceptable risk to the efficient and lawful execution of this grant," and that EPA "is terminating Grant Agreement No. 84094001 . . . effective immediately."  CUF ECF 13-1 at 1.

### F.    Procedural History

On March 8, 2025, plaintiff Climate United filed suit in this District, naming not only EPA and the EPA Administrator but also Citibank as Defendants.  On March 10, plaintiff Coalition for Green Capital, another Prime recipient, sued only Citibank in the U.S. District Court for the Southern District of New York.  *See Coalition for Green Capital v. Citibank, N.A.*, No. 1:25-cv-1964 (S.D.N.Y.), ECF No. 1.  On March 12, Coalition for Green Capital filed a Notice of Voluntary Dismissal in the New York action, *id.* ECF No. 9, and refiled in this Court, this time adding EPA, the EPA Administrator, and the Acting Deputy EPA Administrator as defendants along with Citibank, *see* CGC ECF 1.  On March 14, a third Prime recipient, plaintiff Power Forward Communities, Inc. ("Power Forward"), filed a complaint in this Court against Citibank and the Government Defendants.  *See* PFC ECF 1.[3]

Climate United, the first (and at the time only) plaintiff, moved for a temporary restraining order on March 9, 2025.  Climate United requested that Citibank "be restrained from refusing to comply with Climate United's disbursement requests under the ACA," including with respect to both "already-submitted requests" and "future requests."  CUF ECF 2-1 at 35.  During a March 12, 2025 hearing, the Court acknowledged that "Citibank . . . is in the middle of all this," noting that "you see the position this puts Citibank in, which has the money, but has been told by EPA not -- that it would be impermissible to distribute the funds."  3/12/2025 Hr'g Tr. at 7:12-15, 28:14-

---

[3] PFC previously had sued just Citibank in the Southern District of New York.  *See Power Forward Communities, Inc. v. Citibank, N.A.*, No. 1:25-cv-2021 (S.D.N.Y.), ECF No 1.  But, like CGC, PFC voluntarily dismissed that suit several days later.  *Id.* ECF No. 7.

15.   The Court directed Climate United and the government defendants to make additional submissions on Monday, March 17, 2025.

On the evening of Friday, March 14, plaintiff Coalition for Green Capital filed its own motion for a temporary restraining order against Citibank and the government defendants.  *See* CGC ECF 9-1.  Coalition for Green Capital asked for an order enjoining Citibank from disbursing funds from its Citibank accounts to anyone besides Coalition for Green Capital.  *See id.* at 3. Coalition for Green Capital did not, however, ask that Citibank be required to begin releasing grant funds during the pendency of litigation.  A few hours later, plaintiff Power Forward also sought a temporary restraining order.   Unlike Coalition for Green Capital, Power Forward asked that Citibank be required to affirmatively "disburse funds" in accordance with Power Forward's past and future transfer instructions.  PFC ECF 4 at 2-3; PFC ECF 4-1 at 6, 31.

This Court held a second hearing to address the various TRO motions on March 17, 2015. *See* CUF ECF 27.  Later that afternoon, Climate United filed an Amended Complaint against Citibank, the EPA, and the EPA Administrator.  *See* CUF ECF 24.  The complaint asserted new claims against the Government Defendants challenging the government's Notice of Termination as violative of the APA, federal regulations, the Inflation Reduction Act, and the Appropriations Clause, *see id.* ¶¶ 118-59, but did not bring new claims against Citibank.

On March 18, 2025, this Court granted in part and denied in part Plaintiffs' TRO motions. *See* CUF ECF 29 (Order); CUF ECF 28 (Memorandum Opinion).  The Court enjoined Citibank "from moving or transferring Plaintiffs' grant funds to any party other than the accountholders" and enjoined the Government Defendants from implementing or giving effect to the Notices of Termination they had issued to the Plaintiffs.  CUF ECF 29.  The order, however, was "more limited in scope than Plaintiffs' proposed orders."  CUF ECF 28 at 3.  Although Climate United

and Power Forward had each sought to require Citibank to disburse funds during the litigation, *see* CUF ECF 2; PFC ECF 4, the Court denied their TRO motions in part, and instead "merely order[ed] the parties to preserve the status quo—that is, for Citibank to maintain the grant funds in Plaintiffs' respective accounts."  CUF ECF 28 at 22.

On March 20, Citibank filed a status report confirming that it "is complying with this Court's directives in its March 18 [TRO] Order," and explaining that Citibank "understands those directives to require it to maintain the grant funds in Plaintiffs' respective accounts and to not transfer the funds to the Government or process Plaintiffs' pending or future payment instructions."  CUF ECF 31.

### G.    Plaintiffs' Motion for a Preliminary Injunction

Plaintiffs filed a consolidated motion for a preliminary injunction on March 21, 2025.  The motion seeks an order "enjoining Defendant Citibank from (1) violating its obligations under each plaintiff's ACA, including by failing to process, disburse, and release funds in accounts established in connection with each plaintiff's grant, including funds in accounts established by Plaintiffs' subgrantees, in accordance with the applicable ACA, both with respect to requests already submitted and future requests," as well as "(2) transferring or otherwise moving funds out of accounts established in connection with Plaintiffs' grants, including funds in accounts established by Plaintiffs' subgrantees, except at the direction of Plaintiffs or Plaintiffs' subgrantees."  CUF ECF 33 at 2.

Plaintiffs' memorandum in support of their motion for a preliminary injunction focuses on their claims against the government, not their claims against Citibank.  Plaintiffs confine their argument regarding Citibank to four of sixty pages, *see* CUF ECF 33-1 at 56-60, and address only what they assert is Citibank's purported breach of Citibank's account control agreements with plaintiffs (plaintiffs do not address any of their other replevin, conversion, or tort claims for

purposes of this motion).  Because Citibank has *not* breached its contractual obligations, Citibank's response now follows.

## ARGUMENT

Although Citibank defers to the government and otherwise takes no position with respect to most factors relating to a preliminary injunction, Citibank notes that preliminary injunctive relief is nevertheless "an 'extraordinary and drastic remedy' that is 'never awarded as of right.'" *Feng Wang v. Pompeo*, 354 F. Supp. 3d 13, 19 (D.D.C. 2018) (Chutkan, J.).  "A preliminary injunction 'should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Id.* at 20.  "To warrant preliminary injunctive relief, the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  Courts must also be "wary" when addressing requests for preliminary injunctive relief that (like demands to require Citibank to disburse funds here) would "disrupt[], rather than preserve[] the status quo." *Hanson v. District of Columbia*, 120 F.4th 223, 247 (D.C. Cir. 2024); *see also American Civil Liberties Union Found. v. WMATA*, 303 F. Supp. 3d 11, 17 (D.D.C. 2018) (Chutkan, J.) ("[T]he standard for obtaining an injunction is significantly heightened when a plaintiff requests affirmative injunctive relief.").

## I.    PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS AGAINST CITIBANK, BECAUSE CITIBANK HAS COMPLIED WITH ITS CONTRACTUAL OBLIGATIONS.

"In order to receive a . . . preliminary injunction, the moving party must show . . . a substantial likelihood of success on the merits," *Church v. Biden*, 573 F. Supp. 3d 118, 133 (D.D.C. 2021) (quotations omitted), with the result that "failure to show a likelihood of success on the merits alone is sufficient to defeat the motion," *Wis. Voters All. v. Pence*, 514 F. Supp. 3d 117, 120

(D.D.C. 2021).  Plaintiffs do not show a likelihood of success on the merits with respect to their breach-of-contract claims against Citibank here.  Citibank has carefully complied with its contractual obligations at every turn.  Citibank has provided all required services under its agreements, and has refrained from transferring funds to plaintiffs only at the direction of the United States government, which is Citibank's fiduciary principal and whose direction Citibank is contractually obligated to follow.

## A.    The FAA and Account Control Agreements Must Be Read Consistently With One Another.

Plaintiffs' assertion that Citibank has nevertheless "breached [the account control agreements] by failing to perform" fails to read those agreements in light of the FAA.  CUF ECF 33-1 at 56.  The account control agreements acknowledge that Citibank's role is to "act as a financial agent of the United States."  CUF ECF 14-4 at 1.  The FAA is the basis for those account control agreements: the FAA directs Citibank to "establish controlled accounts" for and enter "account control agreements with each of the Prime Recipients."  CUF ECF 15-1 at Ex. A § I.A.1.i. And the FAA also makes clear that Citibank must follow the FAA—and not just the account control agreements—when taking actions relating to grantees' accounts.  In a section titled "Relationship with Account Holder," the FAA provides that "Each Prime Recipient and Subrecipient account holder will have the ability to access and use funds in their respective accounts in accordance with, and *subject to*, the terms and conditions of each Prime Recipient's or Subrecipient's Grant Program grant agreement *and the conditions and restrictions detailed in this Exhibit A* [to the FAA]."  *Id.* at Ex. A I.A.1.vi.  (emphasis added).

Thus, the contracts must be read consistently:  they are "interrelated agreements" that must be "read together . . . 'in harmony.'"  *Ritch*, 2023 WL 6393970, at *7.  "Under New York . . . law documents must be read together, even though they were executed on different dates and were not

all between the same parties, if the documents formed part of a single transaction and were designed to effectuate the same purpose." *Matek*, 2024 WL 663340, at *3 n.3; *see Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 278 (D.D.C. 2021) (reading contract in "together with . . . record of decision and . . . mining plan"); *Long Beach Sec. Corp. v. Nat'l Credit Union Admin. Bd.*, 315 F. Supp. 3d 129, 134 (D.D.C. 2018) (contract provisions must be interpreted "not in isolation but in the light of the obligation as a whole" (quotations omitted)).[4]   In *Matek*, for example, each of "two related documents comprise[d] the relevant Agreement":  both a "Supplier Relationship Agreement" and a "Statement of Work" together "govern[ed] the circumstances under which the Agreement may be terminated." *Matek*, 2024 WL 663340, at *3.

So too here.  Plaintiffs' account control agreements must be read in harmony with the FAA upon which those agreements are based.[5]  Plaintiffs' assertion that "[t]he fact that Citibank acts as an agent of the Government is simply irrelevant," CUF ECF 33-1 at 58, is remarkably wrong:  that fact is instead critical to understanding Citibank's obligations under *both* the FAA and the account control agreements.  This Court should follow others "when interpreting a contract or multiple contracts in a transaction . . . [in] striv[ing] to give effect to all of the terms of the relevant documents." *Kelso Enters. v. A.P. Moller–Maersk A/S*, 375 Fed. App'x. 48, 49 (2d Cir. 2010).

---

[4] The account control agreements are governed by New York law.  CUF ECF 14-4 § 11.

[5] Plaintiffs' suggestion that the FAA could somehow be only "parol evidence" that is barred by a "merger clause" in the account control agreements is meritless.  CUF ECF 33-1 at 57.  Merger clauses do not bar consideration of related agreements that "coexist or work in tandem" with the contract containing the merger clause. *Long Side Ventures LLC v. Adarna Energy Corp.*, 2014 WL 4746026, at *6 (S.D.N.Y. Sept. 24, 2014); *see also Crye Precision LLC v. Bennettsville Printing*, 2019 WL 6388636, at *6 (E.D.N.Y. Aug. 13, 2019) ("I find it improvident to treat the merger clause as a blanket extinguishment of prior contractual provisions absent definitive language to the contrary.").

### B.    Citibank Complied With Its Contractual Obligations.

Citibank's conduct was fully in accord with its obligations under the FAA and the account control agreements, as those agreements must be understood under the FAA.  The FAA requires that Citibank "implement account controls . . . as instructed by EPA."  CUF ECF 15-1 at Ex. A § I.B.  The FAA also provides that Citibank must "comply with all lawful instructions or directions received from Treasury," *id.* § 5.B.iv, which may be issued "through bulletins, letters, or other communications," *id.* at § 3.D.  And the FAA also provides that Citibank "owes a fiduciary duty of loyalty . . . to the United States," and must "act at all times in the best interests of the United States."  *Id.* at § 5.A.

Citibank has complied with these obligations:  Citibank implemented account controls by pausing disbursements in compliance with the Department of Treasury's instructions on March 4, 2025 as well as the Department of Treasury's and EPA's instructions on March 10, 2025.  *See* Background at C, *supra*.  And, while plaintiffs fault Citibank for purportedly failing to disburse funds in "mid-February," CUF ECF 33-1 at 56-57, that argument also shows no inconsistency with Citibank's obligations, particularly where FBI had raised concerns regarding plaintiffs' accounts, and where Citibank (even where not under an express instruction from the Department of Treasury or EPA) owes a duty of loyalty to "act . . . in the best interests of the United States."  CUF ECF 15-1 § 5.A.

The theory that Citibank "decline[d] to act in response to [plaintiff's] instructions" errs by ignoring the instructions Citibank *has* followed.  CUF ECF 33-1 at 56.  Plaintiffs admit that Citibank has followed instructions from the government:  Citibank acted due to "efforts to freeze Plaintiff's funds," "Treasury['s] direct[ing] Citibank to continue to refrain from processing payments," and EPA and Treasury's "direct[ing] Citibank to freeze Plaintiff's assets."  *See id.* at 15, 19, 35.  Plaintiffs complain that these efforts "violated the APA and the Constitution."  *Id.* at

35.  But while Citibank takes no position on plaintiffs' APA and constitutional claims, the point

for present purposes is these assertions do not show any *contractual* breach by Citibank:  Citibank

cannot have breached its contracts with plaintiffs, when those contracts must be read consistently

with the FAA's mandate that Citibank "act at all times in the best interests of" the government,

and "comply with all lawful instructions or directions received from Treasury."  CUF ECF 15-1

§§ 5.A, 5.B.iv.

Nor is there merit to plaintiffs' theory that Citibank should have ignored Treasury and

EPA's instructions because those instructions were "no[t] . . . lawful."  CUF ECF 33-1 at 59.

Plaintiffs argue that "the ACAs do not provide Citibank with any discretion" and that Citibank's

"duties are exclusively 'administrative or ministerial.'"  *Id.* at 56.  But that only underscores why

liability against Citibank is unlikely: the account control agreements do not envision thrusting

Citibank into a discretionary or decision-making role with respect to what level of fraud is

necessary to pause disbursements from GGRF accounts.  Citibank is not vested with discretion to

second-guess whether EPA and the Department of Treasury's instructions are "lawful."  Citibank

is instead bound to "construe the terms of this FAA and any related instructions from Treasury in

a reasonable manner to serve the purposes and interests of the United States."  CUF ECF 15-1

§ 5.B.ii.

Citibank cannot be held liable for following instructions from the government—indeed,

plaintiffs have acknowledged as much in the very agreements they maintain were breached.  The

same account control agreements upon which plaintiffs rely provide that Citibank "shall be entitled

to rely upon any instruction, notice, or request . . . delivered to it without being required to

determine the authenticity or validity thereof," and "shall not incur any liability for not performing

any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control

(including, without limitation . . . any governmental authority[)]."  CUF ECF 14-4 § 6.b.  Thus, Citibank is *not* required to assess for itself the lawfulness or other validity of the instructions it receives from EPA or the Department of Treasury, and those instructions cannot be the basis of any valid breach-of-contract claims.  The agreements' plain language leaves no room for doubt; plaintiffs' breach of contract claims lack merit.  *See*, *e.g.*, *Goodrich v. Bank of America, N.A.*, 2024 WL 341064, at *7 (D.D.C. Jan. 30, 2024) ("[T]he language here sufficiently forecloses claims for liability—whether of a fiduciary nature or otherwise—if the Bank followed Goodrich's instructions.").

Citibank has complied with its contractual obligations at every turn.  Citibank will continue that compliance, and will, of course, follow any order of this Court.  But the Court should refrain from holding that plaintiffs have any likelihood of success on the merits against Citibank.  Citibank has fully complied with its contractual obligations, as understood by the FAA under which "Citibank's actions are governed."  CUF ECF 33-1 at 10.

## II.    IF THE COURT DETERMINES THAT IT LACKS JURISDICTION OVER CLAIMS AGAINST THE GOVERNMENT, THEN CLAIMS AGAINST CITIBANK SHOULD BE DISMISSED OR STAYED.

Separately, in the event the Court holds that it lacks jurisdiction over plaintiffs' claims against the government, that holding would provide an additional reason to hold that plaintiffs lack a likelihood of success on the merits against Citibank as well.  The government defendants have previously asserted that there is no "waiver of sovereign immunity by the United States as to specific performance for breach of contract."  *See* CUF ECF 16 at 19 (EPA TRO Opp.) (quoting *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989)).  The government defendants have thus asserted that claims against them must proceed only in "[t]he United States Court of Federal Claims."  *Id.* at 15.  Yet if the government has sovereign immunity against claims requiring

the government to perform a contract, then Citibank will be entitled to derivative sovereign immunity as well.

The doctrine of derivative sovereign immunity protects "agents of the sovereign . . . from liability for carrying out the sovereign's will." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 643 (4th Cir. 2018) (CMS contractor protected by derivative sovereign immunity). The doctrine "applies . . . when a contractor takes actions that are authorized and directed by the Government of the United States, and performed pursuant to the Act of Congress authorizing the agency's activity." *In re O.P.M. Data Sec. Breach Litig.*, 928 F.3d 42, 69, 442 (D.C. Cir. 2019) (quotations omitted). The critical inquiry is whether the contractor acted at the direction of the government: the doctrine of "derivative sovereign immunity ensures that 'there is no liability on the part of the contractor who simply performed as the Government directed.'" *Id.* (quoting *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016)). That, of course, is exactly the case here: even plaintiffs' own allegations and theory of liability is that Citibank has breached the account control agreements only at the "behest" and "direct[ion]" of the United States government. CUF ECF 33-1 at 2. Plaintiffs assert that Citibank acted pursuant to "illegal government directives." *Id.* at 4. Yet if that is true (and to be clear, Citibank does not believe any of its actions have been illegal), derivative sovereign immunity will apply to plaintiffs' contract claims.

Those claims will also require either dismissal or a stay to the extent the Court holds that jurisdiction over claims regarding the government defendants lies in the Court of Claims. Citibank cannot be sued in the Court of Claims. "[I]t has been uniformly held, upon a review of the statutes creating the court [of Claims] and defining its authority, that its jurisdiction is confined to . . . suits brought . . . against the United States . . . and if the relief sought is against others than the United States[,] the suit as to them must be ignored as beyond the jurisdiction of the court. . . . [T]he Court

of Claims . . . is without jurisdiction of any suit brought against private parties." *United States v. Sherwood*, 312 U.S. 584, 588 (1941); *see, e.g.*, *Sephry-Fard v. United States*, 2022 WL 17335931, at *1 (Fed. Cl. Nov. 30, 2022) ("[T]he only proper defendant in this Court is the United States . . . Plaintiff's claims against entities [which included a private bank] other than the United States must be dismissed for that reason alone.").

If plaintiffs' claims against the government are sent to the Court of Claims, then the litigation here should not continue against Citibank alone.  Citibank is not the focus of plaintiffs' claims.  *Compare* CUF ECF 33-1 at 22-55 (claims against the government), *with id.* at 56-60 (claims against Citibank); *see also* 3/12/2025 Hr'g Tr. at 28:14-15 ("Citibank, obviously, is in the middle of all of this.").  Dismissing parties like Citibank is appropriate where "[t]he Court of Federal Claims is actively wresting with the issues presented by this Plaintiff and others." *Entines v. United States*, 495 F. Supp. 2d 84, 86 (D.D.C. 2007).  At minimum, the Court should stay litigation against Citibank while claims against the government are decided.  Practical and judicial economy reasons "apply forcefully" when parties seek stays pending the results of parallel litigation, *see Hulley Enters. Ltd. v. Russian Federation*, 211 F. Supp. 3d 269, 287 (D.D.C. 2016) (granting stay), particularly where the parallel litigation here would be against the government, whose directives are the cause of the conduct on which plaintiffs' claims are based.

## CONCLUSION

The Court should refrain from holding that plaintiffs have a likelihood of success on the merits of their contract claims against Citibank—Citibank has, instead, complied with its contractual obligations at every turn.  In the event the Court determines that claims against the government must be heard in the Court of Claims, then the Court should dismiss or stay litigation against Citibank while those claims are resolved.

Dated:  March 26, 2025

Respectfully submitted,

By:   _/s/ K. Winn Allen_

K. Winn Allen, P.C.
Saunders McElroy
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 389-5078
winn.allen@kirkland.com
saunders.mcelroy@kirkland.com

**_Counsel for Defendant Citibank, N.A._**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 26, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing via e-mail to all counsel of record.


_/s/ K. Winn Allen_
K. Winn Allen