**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CLIMATE UNITED FUND,<br><br>    Plaintiff,<br><br>  v.<br><br>CITIBANK, N.A., *et al.*,<br><br>    Defendants. | Case No. 1:25-cv-00698 (TSC) |
| COALITION FOR GREEN CAPITAL,<br><br>    Plaintiff,<br><br>  v.<br><br>CITIBANK, N.A., *et al.*,<br><br>    Defendants. | Case No. 1:25-cv-00735 (TSC) |
| POWER FORWARD COMMUNITIES, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>CITIBANK, N.A., *et al.*,<br><br>    Defendants. | Case No. 1:25-cv-00762 (TSC) |

**<u>DECLARATION OF GREGG TREML</u>**

I, Gregg Treml, hereby declare as follows:

  1.  I am the Acting Chief Financial Officer of the United States Environmental Protection Agency (EPA). I have held this position since January 20, 2025. In this

position, I am responsible for overseeing the EPA's annual budget, annual performance plans, financial operations, financial information systems, and directing strategic planning and financial policy development efforts. Prior to this role, my permanent role is Deputy Chief Financial Officer, which I held since June 2023. Before joining the EPA, I served as Assistant Inspector General and Deputy CFO of the Department of Health and Human Services Office of Inspector General and held a series of budget, financial, and human-resources leadership roles at the Federal Emergency Management Agency, General Services Administration, and Department of Homeland Security dating back to 2008.

2.     The responsibilities of my current and permanent role within the EPA's OCFO include advising the Agency with respect to financial and oversight risks with potential implications for the Agency's financial, budget, and performance. As part of this work, I am familiar with the EPA's typical financial arrangements and grants and assistance awards, including the oversight practices used to address financial, budget, and audit risk.

3.     In these roles as the EPA's CFO, as well as prior leadership and oversight roles at other government agencies, I have also encountered standard grant and assistance award practices at a number of other federal agencies and best practices that federal agencies are encouraged to use in grant and assistance programs.

4.     In the Inflation Reduction Act of 2022, Congress appropriated $27 billion to the EPA to make grants under the Greenhouse Gas Reduction Fund (GGRF) program. Congress appropriated $30 million to the EPA to administer the GGRF program through September 30, 2031, including the costs of establishing the program, selecting grantees, and conducting grant oversight for the life of the program.

5.      In 2024, the EPA chose to administer the GGRF's National Clean Investment Fund (NCIF) and Clean Communities Investment Accelerator (CCIA) grants by entering into a memorandum of understanding with the Department of the Treasury (Treasury).  Under the terms of the memorandum of understanding, EPA and Treasury agreed that Treasury would use its authority to select a financial agent to act as a fiduciary of the U.S. Government to receive the entire amount of the awarded grant funds and establish accounts for the grant recipients to withdraw funds.

6.      To my knowledge, the EPA had never used a financial agent in connection with a grant program prior to 2024.

7.      To my knowledge, the EPA's use of a financial agent in connection with the GGRF program was the first use of a financial agent for a nonexchange grant program administered by the federal government.

I HEREBY DECLARE TO THE BEST OF MY KNOWLEDGE AND BELIEF, UNDER PENALTY OF PERJURY under the laws of the United States of America, that the foregoing is true and correct.

EXECUTED this 26th day of March, 2025 at Washington, DC.

_____

Gregg Treml