# Exhibit A

(to the Bailey Declaration)

CATHY McMORRIS RODGERS, WASHINGTON                                    FRANK PALLONE, JR., NEW JERSEY
                    CHAIR                                                              RANKING MEMBER

ONE HUNDRED EIGHTEENTH CONGRESS

# Congress of the United States

## House of Representatives

### COMMITTEE ON ENERGY AND COMMERCE

2125 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6115

Majority (202) 225-3641
Minority (202) 225-2927

October 18, 2023

The Honorable Michael S. Regan
Administrator
U.S. Environmental Protection Agency
Mail Code 1101A
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Dear Administrator Regan:

We write regarding the U.S. Environmental Protection Agency's (EPA) implementation of the Greenhouse Gas Reduction Fund (GGRF), established pursuant to the Inflation Reduction Act of 2022 (IRA). The IRA authorizes the EPA to disburse $27 billion, by September 30, 2024, in competitive grants to eligible non-profit organizations for clean energy investments, particularly those that impact low-income and disadvantaged communities.[1] With billions of dollars on the line, an unusually accelerated timeline for disbursement, and a new and complex funding structure, this program warrants close scrutiny and rigorous oversight.

Earlier this year, the EPA released its plan for implementing the GGRF.[2] In this announcement, the EPA announced three competitions through which it plans to administer $27 billion in grant funding. A $14 billion National Clean Investment Fund (NCIF) competition will fund two to three national non-profits that would partner with private capital providers to deliver financing to businesses, communities, community lenders, and others for clean energy projects.[3] A $6 billion Clean Communities Investment Accelerator (CCIA) competition will fund two to seven non-profits that will build financing capacity across specific networks of community lenders for clean technology projects.[4] Finally, a $7 billion Solar for All (SFA) competition aims to expand access to residential solar investment among low-income and disadvantaged communities.[5]

---

[1] Pub. L. No. 117-169 § 60103.
[2] Press Release, Envtl. Prot. Agency, EPA Releases Framework for the Implementation of the Greenhouse Gas Reduction Fund as Part of President Biden's Investing in America Agenda, Apr. 19, 2023, https://www.epa.gov/newsreleases/epa-releases-framework-implementation-greenhouse-gas-reduction-fund-part-president.
[3] *Id.*
[4] *Id.*
[5] *Id.*

Letter to Administrator Regan
Page 2

     This program is a completely new undertaking for the EPA.[6] The IRA's GGRF language includes provisions associated with entities often referred to as "green banks."[7] According to the EPA, the program will "leverage public investment with private capital" to finance clean energy projects.[8] The EPA has no experience administering such a funding vehicle, referring to it is as "a first-of-its-kind" program.[9]

     The GGRF implicates many oversight concerns. For example, the EPA's Inspector General recently testified before the Committee's Subcommittee on Oversight and Investigations that newly created programs providing funding to new recipients on short timelines possess an increased vulnerability to fraud and execution errors.[10]

     On January 3, 2023, the U.S. Environmental Financial Advisory Board (EFAB) submitted its guidance and considerations pertaining to the GGRF, including risks associated with various program structures.[11] In evaluating an approach in which the EPA funds four or five "lender intermediaries," which seems to reflect the approach the EPA ultimately adopted, the EFAB noted that existing intermediaries have not operated at the scale the GGRF would require.[12]

     Additionally, some have flagged that the EPA could use this program to subsidize favored special interest organizations.[13] Others have alleged that current EPA appointees have ties to potential recipients of these sizeable awards, raising ethical concerns.[14]

     As referenced above, we are also alarmed at the speed of implementation of the GGRF.[15] The SFA notice of funding opportunity (NOFO) was announced in June 2023, with an application deadline of October 12, 2023.[16] According to the NOFO, the EPA anticipates notifying selectees

---

[6] *See Follow the Money: Oversight of President Biden's Massive Spending Spree*: *Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 118th Cong. (2023) (statement of Sean O'Donnell, Inspector General, Environmental Protection Agency) (noting that this is a new funding vehicle).

[7] *See, e.g.*, RICHARD K. LATTANZIO, CONG. RESEARCH SERV., EPA'S GREENHOUSE GAS REDUCTION FUND (2023).

[8] *See* Press Release, Envtl. Prot. Agency, *supra* note 2.

[9] *See id.*

[10] *See Follow the Money: Oversight of President Biden's Massive Spending Spree*: *Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 118th Cong. (2023) (statement of Sean O'Donnell, Inspector General, Environmental Protection Agency)

[11] ENVTL. PROT. AGENCY, ENVTL. FIN. ADVISORY BD., *Environmental Financial Advisory Board Greenhouse Gas Reduction Fund Charge*, Jan. 3, 2023, *available at* https://www.epa.gov/system/files/documents/2023-01/efab-greenhouse-gas-reduction-fund.pdf.

[12] *Id.* at 57.

[13] *See* Benjamin Zycher, Response to Request for Information from the Environmental Protection Agency: Greenhouse Gas Reduction Fund 8, Am. Enterprise Inst., Dec. 5, 2022, *available at* https://www.aei.org/wp-content/uploads/2022/12/Zycher-EPA-GHG-Reduction-Fund-Info-Request-Dec-5-2022.pdf?x91208.

[14] *See* PROTECT THE PUBLIC'S TRUST, *Greendoggle? EPA Privately Discussed How to Spend $20B with a Few Favorite Environmental Groups*, Sept. 21, 2023, https://protectpublicstrust.org/press-releases/greendoggle-epa-privately-discussed-how-to-spend-20b-with-a-few-favorite-environmental-groups/.

[15] *See Follow the Money: Oversight of President Biden's Massive Spending Spree*: *Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 118th Cong. (2023) (statement of Sean O'Donnell, Inspector General, Environmental Protection Agency) (noting the rapid implementation timelines and narrow window of availability for the significant amount of funding).

[16] Envtl. Prot. Agency, Office of the Greenhouse Gas Reduction Fund, EPA-R-HQ-SFA-23-01, Request for Applications: Solar for All (Aug, 31, 2023) (revised) [hereinafter SFA NOFO]; ENVTL. PROT. AGENCY, *Solar for All*, https://www.epa.gov/greenhouse-gas-reduction-fund/solar-all (last visited Oct. 4, 2023).

Letter to Administrator Regan
Page 3

in March 2024 and making awards in July 2024.[17] The EPA released NOFOs for the $14 billion CCIA and the $6 billion NCIF on July 14, 2023, with applications closing on October 12, 2023.[18] For these competitions, the EPA anticipates notifying selectees in March 2024 and plans for them to start administering the funds by July 2024.[19] The EPA has a statutory deadline to obligate funds by September 2024.[20] Under this timeline, the EPA has just over a year to obligate $27 billion.[21]

Finally, we are also concerned about how this program will function, given the lack of domestic production for solar panels. The Department of Energy has noted that China's control of key materials in renewable energy extends "across the board."[22] Similarly, the *Wall Street Journal* reported on China's dominance of the U.S. solar market, noting that China controls almost half of the U.S. solar panel market share, making it incredibly difficult to supplant Chinese producers with domestic suppliers.[23] The EPA has stated that certain projects under all three competitions are subject to the Buy America domestic sourcing requirements of the Build America, Buy America (BABA) provisions of the Infrastructure Investment and Jobs Act (IIJA).[24] The EPA also claims it will provide future guidance on which projects are subject to the BABA requirements.[25] If there will be domestic sourcing requirements through BABA on the various GGRF programs— and we know that China has a significant stranglehold on the availability of solar panels, among other green energy technologies—we are unsure how the EPA and program participants will ensure that the GGRF programs are *not* supporting Chinese products.

In order to assist with our oversight of the EPA's implementation of the GGRF and to ensure responsible stewardship of taxpayer dollars, we request that you provide answers to the following questions and requested documents no later than November 1, 2023:

1.  In accordance with the IRA, all three NOFOs define an "eligible recipient" as a nonprofit organization that (a) is designed to provide capital, leverage private capital, and provide other forms of financial assistance for the rapid deployment of low- and zero- emission products, technologies, and services; (b) does not take deposits other than deposits from

---

[17] *Id.*

[18] Envtl. Prot. Agency, Office of the Greenhouse Gas Reduction Fund, EPA-R-HQ-CCIA-23, Request for Applications: Clean Communities Investment Accelerator, (Aug. 11, 2023) (revised) [hereinafter CCIA NOFO]; ENVTL. PROT. AGENCY, *Clean Communities Investment Accelerator*, https://www.epa.gov/greenhouse-gas-reduction-fund/clean-communities-investment-accelerator#nfo (last visited Oct. 4, 2023); Envtl. Prot. Agency, Office of the Greenhouse Gas Reduction Fund, EPA-R-HQ-NCIF-23, Request for Applications: National Clean Investment Fund (Aug. 11, 2023) (revised) [hereinafter NCIF NOFO]; ENVTL. PROT. AGENCY, *National Clean Investment Fund*, https://www.epa.gov/greenhouse-gas-reduction-fund/national-clean-investment-fund (last visited Oct. 4, 2023).

[19] CCIA NOFO, *supra* note 18; NCIF NOFO, *supra* note 18.

[20] *See, e.g.*, ENVTL. PROT. AGENCY, GREENHOUSE GAS REDUCTION FUND: IMPLEMENTATION FRAMEWORK SUPPORTING PRESENTATION (2023), *available at* https://www.epa.gov/system/files/documents/2023-05/Implementation%20Framework%20Presentation_508%20Compliant.pdf.

[21] *See id.*

[22] *See* DEP'T OF ENERGY, AMERICA'S STRATEGY TO SECURE THE SUPPLY CHAIN FOR A ROBUST CLEAN ENERGY TRANSITION 13 (2022), *available at* https://www.energy.gov/policy/articles/americas-strategy-secure-supply-chain-robust-clean-energy-transition.

[23] *See* Phred Dvorak, *China's Dominance Over U.S. Solar Market Grows Despite Efforts to Stem It*, WALL ST. J., April 26, 2023, https://www.wsj.com/articles/china-dominates-u-s-solar-market-as-lawmakers-tussle-over-tariffs-7c2d749d.

[24] CCIA NOFO, *supra* note 18, at 58; NCIA NOFO, *supra* note 18, at 56; SFA NOFO, *supra* note 16, at 64.

[25] CCIA NOFO, *supra* note 18, at 58-59; NCIA NOFO, *supra* note 18, at 56; SFA NOFO, *supra* note 16, at 64-65.

Letter to Administrator Regan
Page 4

repayments and other revenue received from financial assistance using the grant funds; (c) is funded by public or charitable contributions, and (d) invests in or finances projects alone or in conjunction with other investors.[26]

    a.  The NOFOs for the $14 billion CCIA and the $6 billion NCIF state that to be an eligible recipient, an applicant must be incorporated in the United States,[27] and all three NOFOs state the applicant cannot be controlled by one or several entities that are not eligible recipients.
        i.  Was the "incorporated in the United States" language regarding nonprofits intentionally omitted from the SFA NOFO? If so, why?
        ii.  How is the EPA ensuring and tracking that applicants meet these requirements? Is the EPA tracking who funds these U.S. entities or who has interests in these U.S. entities?
        iii.  Will there be a tracking of the grantees and the subrecipients who have received other grants, loans, or tax credits under the IRA and/or the IIJA?

    b.  As grantees will act as intermediaries distributing funding to subrecipients, please describe the EPA's plan for oversight once funds are released to recipients and subrecipients.

    c.  How will EPA prepare these grantees to assist subrecipients who have little or no experience with federal agencies or federal awards?

2.  What fiduciary duties will exist between the EPA, the grantees, and subrecipients?  Do the grantees owe fiduciary duties to the EPA? Similarly, do the entities receiving loans from grantees owe fiduciary duties to the EPA?

3.  Who will conduct the underwriting and risk analyses for any loans provided by grantees? What qualifications or experience will they have? What kind of reporting, if any, will they provide to the EPA?

4.  Please describe and list all policies, procedures, and guidance documents that EPA will provide to grantees and subrecipients regarding conflicts of interest policies and provide a copy of each.

5.  Which employees or contractors at EPA will be responsible for administering the GGRF? Please provide their names, job titles, and program office.

6.  Outside of the EPA's Office of the Inspector General's oversight, who at the EPA will be auditing the GGRF program internally, including ensuring it is being administered without waste, fraud and abuse, maintaining all appropriate ethics protections, and protecting taxpayer dollars? Will these EPA employees auditing the program be separate from the GGRF program?

---

[26] Pub. L. No. 117-169 § 60103; *see also* CCIA NOFO, *supra* note 18, at 58-59; NCIF NOFO, *supra* note 18, at 20; SFA NOFO, *supra* note 16, at 30.
[27] CCIA NOFO, *supra* note 18, at 22; NCIF NOFO, *supra* note 18, at 20.

Letter to Administrator Regan
Page 5

7.  Do any of the GGRF programs have a limit on the maximum amount that a specific grantee can provide to one subrecipient under that particular program? If so, please provide the maximum amount for each program. If not, did the EPA consider instituting a maximum amount, and why did it ultimately decide not to do so?

Additionally, we also request that you provide a staff-level briefing on the status of the program the week of October 30, 2023.

Thank you for your cooperation with this matter. If you have any questions regarding this request, please contact Christen Harsha with the Majority Committee staff at (202) 225-3641.

Sincerely,


Cathy McMorris Rodgers
Chair
House Committee on Energy and Commerce

H. Morgan Griffth
Chairman
Subcommittee om Oversight and Investigations


Bill Johnson
Chairman
Subcommittee on Environment,
Manufacturing, and Critical Materials


CC:  The Honorable Frank Pallone, Ranking Member, Energy and Commerce Committee
The Honorable Kathy Castor, Ranking Member, Subcommittee on Oversight and Investigations
The Honorable Paul Tonko, Ranking Member, Subcommittee on Environment, Manufacturing, and Critical Materials

# Exhibit B

## (to the Bailey Declaration)

CATHY McMORRIS RODGERS, WASHINGTON
CHAIR

FRANK PALLONE, JR., NEW JERSEY
RANKING MEMBER

ONE HUNDRED EIGHTEENTH CONGRESS

# Congress of the United States
## House of Representatives
### COMMITTEE ON ENERGY AND COMMERCE
2125 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6115
Majority (202) 225-3641
Minority (202) 225-2927

December 6, 2024

The Honorable Michael S. Regan
Administrator
U.S. Environmental Protection Agency
Mail Code 1101A
1200 Pennsylvania Avenue, NW.
Washington, DC 20460

Dear Administrator Regan:

We write to you regarding our investigation into the Environmental Protection Agency's (EPA) Greenhouse Gas Reduction Fund (GGRF) program.

On April 4, 2024, the EPA announced it selected three entities to receive a total of $14 billion to establish national clean finance institutions under the GGRF's National Climate Investment Fund (NCIF) program.[1] Similarly, under the Clean Communities Investment Accelerator (CCIA) program, the EPA selected five recipients to receive a total of $6 billion to establish hubs to provide financial and technical assistance to community lenders in low-income and disadvantaged communities.[2] The EPA maintains that it employed a "robust, consistent, and ethical" scoring process to select recipients,[3] which included expert review panels and evaluation criteria.[4] According to the EPA, senior review teams then made final recommendations based on the final scores from each competition.[5]

---

[1] Press Release, Envtl. Prot. Agency, Biden-Harris Administration Announces $20 Billion in Grants to Mobilize Private Capital and Deliver Clean Energy and Climate Solutions Across America (Apr. 4, 2024), https://www.epa.gov/newsreleases/biden-harris-administration-announces-20-billion-grants-mobilize-private-capital-and.

[2] *Id.*

[3] ENVTL. PROT. AGENCY, *Review and Selection Process*, https://www.epa.gov/greenhouse-gas-reduction-fund/review-and-selection-process (last updated Aug. 16, 2024).

[4] *See Fighting the Misuse of Biden's Green Bank Giveaway: Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 118th (2024) (statement of Zealan Hoover, Senior Advisor to the Administrator, Environmental protection Agency); ENVTL. PROT. AGENCY, *Review and Selection Process for NCIF and CCIA*, https://www.epa.gov/greenhouse-gas-reduction-fund/review-and-selection-process-ncif-and-ccia (last visited April 22, 2024)

[5] ENVTL. PROT. AGENCY, *supra* note 4.

The Honorable Michael S. Regan
Page 2

Although the EPA has already obligated funding for these awards,[6] the EPA has faced challenges to its application of statutory recipient eligibility criteria, as well as its process for selecting funding recipients. For example, the Committee is aware of at least one formal dispute regarding the selection process.[7] One of the applicants for both the NCIF and CCIA filed a dispute with the EPA on April 9, 2024,[8] questioning the EPA's Office of the GGRF's application of eligibility requirements and administration of the process for evaluating and scoring applications.[9] Its scope includes questions of whether the EPA "intentionally or inadvertently provided the successful applicants with unfair competitive advantages and unsuccessful applicants with unfair competitive disadvantages through assignments of reviewers, unwarranted differentials in the size of review panels, and failure to conduct a reconciliation process to address substantial variances in scores."[10]

We understand that federal agencies may occasionally receive disputes regarding their awards decisions. However, the EPA's response to this formal dispute indicates serious questions may exist regarding the agency's determination of applicant eligibility, as well as the evaluation and scoring process. As part of the dispute process, an EPA Grants Competition Dispute Decision Official (GCDDO) issued a "Partial Delay Determination" on June 5, 2024.[11] In this document, the EPA official noted that "delays of the award process are an extraordinary action that GCDDO's are reluctant to take in disputes of non-selection decisions that take place after applications have been evaluated and scored."[12] The official concluded that the circumstances surrounding this dispute "support delaying the awards process to ensure that a dispute with potential merit can run its course without unduly prejudicing the disputant, selected applicants, or the EPA program office."[13] As such, the official decided to partially delay awarding $4.3 billion of the total NCIF and CCIA funding in that decision[14]

---

[6] ENVTL. PROT. AGENCY, *Greenhouse Gas Reduction Fund Award Obligation Update*, https://www.epa.gov/greenhouse-gas-reduction-fund/greenhouse-gas-reduction-fund-award-obligation-update (last updated Aug. 16, 2024).

[7] Letter from Kathleen Timmins, Grants Competition Dispute Decision Official, Envtl. Prot. Agency, to, Stephen Fotis, Esq., VanNess Feldman, *Re: Dispute of Competitive Assistance Award Denial for EPA-R-HQ-NCIF-23 (National Clean Investment Fund) and EPA-R-HQ-CCIA-23 (Clean Communities Investment Accelerator) by Ecority, Inc* 1 (Apr. 16, 2024), *available at* https://foiapublicaccessportal.epa.gov/app/ReadingRoom.aspx.

[8] *Id.*

[9] Letter from Laurice Jones, Grants Competition Dispute Decision Official, Envtl. Prot. Agency, to Stephen Fotis, Esq., VanNess Feldman, *Re: Dispute of Competitive Assistance Award Denial for EPA-R-HQ-NCIF-23 (National Clean Investment Fund) and EPA-R-HQ-CCIA-23 (Clean Communities Investment Accelerator) by Ecority, Inc. – Delay of Award Process ("Partial Delay Determination")* 2 (June 5, 2024) [hereinafter "Partial Delay Determination"], *available at* https://foiapublicaccessportal.epa.gov/app/ReadingRoom.aspx.; Letter from Laurice Jones, Grants Competition Dispute Decision Official, Envtl. Prot. Agency, to Stephen Fotis, Esq., VanNess Feldman, *Re: Dispute of Competitive Assistance Award Denial for EPA-R-HQ-NCIF-23 (National Clean Investment Fund) and EPA-R-HQ-CCIA-23 (Clean Communities Investment Accelerator) by Ecority, Inc. – Second Scheduling Order* 3-4 (May 29, 2024) [hereinafter "Second Scheduling Order"], *available at* https://foiapublicaccessportal.epa.gov/app/ReadingRoom.aspx.

[10] Second Scheduling Order, *supra* note 9, at 6.

[11] Partial Delay Determination, *supra* note 9.

[12] *Id.* at 2.

[13] *Id.* at 2-3.

[14] *Id.* at 4.

The Honorable Michael S. Regan
Page 3

Additionally, the award agreements that the EPA executed with the NCIF and CCIA recipients include stipulations regarding the dispute. These award agreements prohibit recipients from drawing down more than a certain percentage of the total award amount until: (1) the dispute is resolved; (2) the dispute is withdrawn, abandoned, or dismissed; or (3) December 31, 2024, whichever is sooner.[15] This limitation also suggests serious concerns about the evaluation and scoring process persisted at the time the EPA and the awardees executed the award agreements.

Potential problems with determining recipient eligibility, as well as with the fairness and uniformity of the selection process are particularly alarming, given the pace with which recipients were chosen and awards were made. As the Committee has highlighted, the EPA has never operated anything remotely similar to this program,[16] and thus has no experience administering this type of funding competition. Notably, individuals with strong ties to Democratic politics hold significant leadership roles within some of the organizations the EPA selected to receive funding.[17] Moreover, as the Biden-Harris administration will depart in a few months, there is a great risk EPA officials may inappropriately rush decisions regarding federal funding to finalize awards before the new administration assumes office. As such, we seek additional clarity on the EPA's process for addressing this dispute and assessing the underlying allegations.

By no later than December 20, 2024, we request that the EPA provide a briefing on the dispute and status of the GGRF awards that includes, but is not limited to, the following questions:

1. What is the status of the dispute, *Dispute of Competitive Assistance Award Denial for EPA-R-HQ-NCIF-23 (National Clean Investment Fund) and EPA-R-HQ-CCIA-23 (Clean Communities Investment Accelerator) by Ecority, Inc.*?

2. Were any additional formal disputes filed regarding any of the GGRF funding competitions?

3. How much of the obligated funding has been disbursed or outlaid?

Additionally, please provide the following documents and information by the same date:

---

[15] *See*, *e.g.*, Envtl. Prot. Agency, Grant No. 84094401, Grant Agreement with Appalachian Cmty. Capital Corp., Administrative Conditions 52 (Aug. 8, 2024) (on file with the Committee); Envtl. Prot. Agency, Grant No. 84094201, Coalition for Green Capital, Administrative Conditions 50 (Aug. 8, 2024) (on file with the Committee).

[16] *E.g.*, *Fighting the Misuse of Biden's Green Bank Giveaway*: *Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 118th Cong. (2024) (opening statement of Cathy McMorris Rodgers, Chair, H. Comm. on Energy and Commerce) (describing the GGRF as a new program); *Follow the Money: Oversight of President Biden's Massive Spending Spree: Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 118th Cong. (2024) [hereinafter E&C Spending Oversight Hearing] (statement of Sean O'Donnell, Inspector Gen., Envtl. Prot. Agency) (describing the GGRF as a new funding vehicle.)

[17] Letter from Cathy McMorris Rodgers, Chair, H. Comm. on Energy and Commerce, et al., to Michael Regan, Adm'r, Envtl. Prot. Agency (May 13, 2024).

The Honorable Michael S. Regan
Page 4

1.  All documents, memoranda, and communications submitted to or received by the EPA from parties to *Dispute of Competitive Assistance Award Denial for EPA-R-HQ-NCIF-23 (National Clean Investment Fund) and EPA-R-HQ-CCIA-23 (Clean Communities Investment Accelerator) by Ecority, Inc*., as part of or pursuant to the dispute process, as well as all documents and communications submitted to parties to that same matter by the EPA, as part of or pursuant to the dispute process.

2.  All policies and procedures governing the review, assessment, evaluation, and scoring of applications under the NCIF and CCIA funding competitions.

3.  All policies, procedures, and criteria used to identify and select individuals to review or evaluation applications under the NCIF and CCIA funding competitions.

4.  All instructions and training materials provided to individuals reviewing or evaluating applications under the NCIF and CCIA funding competitions.

5.  A list of all individuals participating in the review or evaluation of applications, including documents sufficient to identify each individual reviewer if an anonymous reviewer system was used.

6.  All raw score sheets, memoranda, or notes each reviewer or review panel submitted as part of the review or evaluation process.

7.  All raw score sheets, memoranda, or notes submitted to score the interviews EPA held with applicants.[18]

8.  All recommendations or memoranda provided by the NCIF and CCIA Senior Review Team to "advise and provide a final set of recommendations to the Selection Official."[19]

In light of the circumstances described above, the Committee requests that the EPA and any financial intermediaries, agencies, or escrow service providers involved with administering these programs, immediately stop all disbursements, outlays, or payments of funds to GGRF recipients to afford the Committee sufficient time to review and investigate these allegations.

Finally, this letter also serves as a formal request to preserve all existing and future records and materials in the EPA's possession relating to the topics addressed in this letter. You should construe this preservation notice as an instruction to take all reasonable steps to prevent the destruction or alteration, whether intentionally or negligently, of all documents, communications, and other information, including electronic information and metadata, that are or may be related to the NCIF and CCIA programs and related funding competition. This instruction includes all electronic messages sent using official and personal accounts or devices,

---

[18] ENVTL. PROT. AGENCY, *supra* note 4.
[19] *Id.*

The Honorable Michael S. Regan
Page 5

including records created using text messages, phone-based message applications, or encryption software.

      Should you have any questions about this request, please contact the Committee on Energy and Commerce Majority staff at (202) 225-3641. Thank you in advance for your cooperation with this matter.

                                    Sincerely,

Cathy McMorris Rodgers
Chair
Committee on Energy and Commerce

H. Morgan Griffith
Chair
Subcommittee on Oversight and
Investigations

Earl L. "Buddy" Carter
Chair
Subcommittee on Environment,
Manufacturing, and Critical Materials