IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| California Infrastructure and Economic Development Bank; Efficiency Maine Trust; Illinois Finance Authority; Minnesota Climate Innovation Finance Authority,<br><br>    Plaintiffs,<br> v.<br><br>Citibank, N.A.; U.S. Environmental Protection Agency and Lee Zeldin and W.C. McIntosh, in their official capacities as Administrator and Acting Deputy Administrator of the U.S. Environmental Protection Agency,<br><br>    Defendants. | **CIVIL ACTION**<br>**1:25-cv-00820-TSC** |

**DEFENDANT CITIBANK, N.A.'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

i

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

**INTRODUCTION**

Citibank N.A. ("Citibank") respectfully submits this response to the subgrantee plaintiffs' motion for a preliminary injunction. ECF 17.[1] The subgrantee plaintiffs, including the California Infrastructure and Economic Development Bank, Efficiency Maine Trust, Illinois Finance Authority, and Minnesota Climate Innovation Finance Authority, are all "subgrantees of one of th[e] primary grantees" of the National Clean Investment Fund, "Coalition for Green Capital." *Id.* at 8. They fail to establish a likelihood of success as to Citibank for the same reason that Coalition for Green Capital (which is also a plaintiff in these cases) fails to establish a likelihood of success: Citibank has carefully complied with its contractual obligations to account holders, particularly as those obligations must be understood in light of Citibank's Financial Agency Agreement ("FAA") with the United States government.

Citibank incorporates its response to Coalition for Green Capital's motion for a preliminary injunction into this brief. CUF ECF 48. Citibank has only a limited role in connection to the National Clean Investment Fund. Citibank does not select grant recipients. Citibank does not determine whether funds should be disbursed. Citibank is only a financial agent of the United States, and it must "act at all times in the best interests of the United States," and "comply with all lawful instructions or directions received from Treasury." CUF ECF 15-1 §§ 5.A, 5.B. The subgrantees' account control agreements are also, like others in these cases, based upon the FAA, with the result that those agreements and the FAA "must be read together." *Matek Inc. v. Int'l Bus. Machines Corp.*, 2024 WL 663340, at *2-3 n.3 (D.D.C. Feb. 16, 2024). Citibank has fully

---

[1] "ECF" refers to the docket in *Cal. Infrastructure & Econ. Dev. Bank, et al.*, No. 1:25-cv-00820 (D.D.C."). "CUF ECF" refers to the docket in *Climate United Fund v. Citibank, N.A., et al.*, No. 1:25-cv-698 (D.D.C.); "PFC ECF" refers to the docket in *Power Forward Communities, Inc. v. Citibank, N.A., et al.*, No. 1:25-cv-762 (D.D.C.); and "CGC ECF" refers to the docket in *Coalition for Green Capital v. Citibank, N.A., et al.*, No. 1:25-cv-735 (D.D.C.).

complied with its obligations, especially as those obligations must be understood under the FAA. Critically, moreover, like the prime recipients' account control agreements, the subgrantees' account control agreements also provide that Citibank "***shall not incur any liability*** for not performing any act or fulfilling any obligation hereunder ***by reason of any occurrence beyond its control (including***, without limitation . . . ***any act of any governmental authority***." ECF 17-1, Ex. A § 6.b (emphasis added). Accordingly, the petition for extraordinary injunctive relief as to Citibank must fail as no likelihood of success on the subgrantees' breach of contract claim can be sustained.

## ARGUMENT

Preliminary injunctive relief is "an 'extraordinary and drastic remedy' that is 'never awarded as of right.'" *Feng Wang v. Pompeo*, 354 F. Supp. 3d 13, 19 (D.D.C. 2018) (Chutkan, J.). "A preliminary injunction 'should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Id.* at 20. "To warrant preliminary injunctive relief, the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Courts must also be "wary" when addressing requests for preliminary injunctive relief that (like demands to require Citibank to disburse funds here) would "disrupt[], rather than preserve[] the status quo." *Hanson v. District of Columbia*, 120 F.4th 223, 247 (D.C. Cir. 2024); *see also American Civil Liberties Union Found. v. WMATA*, 303 F. Supp. 3d 11, 17 (D.D.C. 2018) (Chutkan, J.) ("[T]he standard for obtaining an injunction is significantly heightened when a plaintiff requests affirmative injunctive relief.").

2

Citibank defers to the government as to most requirements for preliminary injunctive relief. Citibank also does not repeat all arguments that it made in its response to the prime recipient's preliminary injunction motion, *see* CUF ECF 48, but incorporates those arguments by reference here. For present purposes, what matters is that the subgrantee plaintiffs are situated similarly to other plaintiffs in these cases. Like other plaintiffs, the subgrantee plaintiffs err in reading their account control agreements in isolation and without regard to the instructions Citibank has received from the government and Citibank's obligations under the FAA.

The subgrantee plaintiffs' account control agreements must be read together with the FAA. Just like other account control agreements, the subgrantees' agreements acknowledge Citibank's role as a financial agent of the United States: "the Bank has been designated and authorized to act as a financial agent of the United States pursuant to the authority of the U.S. Department of the Treasury under 12 U.S.C. §§ 90 and 265." ECF 17-1 at Ex. A. Just like other account control agreements, the subgrantees' agreements, too, provide that Citibank "shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, without limitation . . . any act of any governmental authority . . .)." *Id.* § 6.b. And just like other plaintiffs in this litigation, the subgrantee plaintiffs' ability to draw funds is governed by the FAA, which provides that "[e]ach Prime Recipient *and Subrecipient account holder* will have the ability to access and use funds in their respective accounts in accordance with, and subject to, the terms and conditions of each Prime Recipient's or Subrecipient's Grant Program grant agreement *and the conditions and restrictions detailed in this Exhibit A [to the FAA]*." CUF ECF 15-1 at Ex. A § I.A.1.iv (emphasis added).

New York law, which controls here, *see* ECF 17-2 at § 11, therefore requires that the subrecipients' agreements and the FAA be read together: they are "interrelated agreements" that

3

must be "read together . . . 'in harmony.'" *Ritch v. N.Y. Eye & Ear Infirmary*, 2023 WL 6393970, at *7 (S.D.N.Y. Sept. 29, 2023). "Under New York . . . law documents must be read together, even though they were executed on different dates and were not all between the same parties, if the documents formed part of a single transaction and were designed to effectuate the same purpose." *Matek*, 2024 WL 663340, at *3 n.3; *see also* CUF ECF 48 at 13-14.

Citibank has complied with its obligations as those obligations must be understood under the FAA. The FAA requires that Citibank "implement account controls . . . as instructed by EPA." CUF ECF 15-1 at Ex. A § I.B. The FAA also provides that Citibank must "comply with all lawful instructions or directions received from Treasury," *id.* § 5.B.iv, which may be issued "through bulletins, letters, or other communications," *id.* at § 3.D. Citibank complied with these obligations: Citibank implemented account controls in compliance with the Department of Treasury's instructions on March 4, 2025 as well as the Department of Treasury's and EPA's instructions on March 10, 2025. CUF ECF 48 at 3-7. Even where Citibank purportedly "froze [the subgrantee] Plaintiffs' accounts" in February 2025, that too was in compliance with Citibank's obligations: the subgrantees admit this freeze occurred "on [FBI and the U.S. Attorney's] recommendation," ECF 17 at 14, consistent with the FAA's provision that Citibank "owes a fiduciary duty of loyalty . . . to the United States," and must "act at all times in the best interests of the United States." CUF ECF 15-1 § 5.A.

The subgrantee plaintiffs' statement that "no provision found anywhere in the Account Control Agreements authorizes Citibank to follow such [government] directives over the explicit instructions of . . . Plaintiffs" is also wrong. ECF 17 at 22. To the contrary, the subgrantees' account control agreements provide that Citibank "shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control

4

(including, without limitation . . . any act of any governmental authority[)]." ECF 17-1, Ex. A § 6.b. Such language leaves no room for doubt that the subgrantees have little likelihood of success as to Citibank on their contract claims. *See, e.g.*, *Goodrich v. Bank of America, N.A.*, 2024 WL 341064, at *7 (D.D.C. Jan. 30, 2024) ("[T]he language here sufficiently forecloses claims for liability—whether of a fiduciary nature or otherwise—if the Bank followed Goodrich's instructions.").

Finally, in the event the Court determines that the government defendants have sovereign immunity against the subgrantee plaintiffs' claims on the ground that those claims sound in specific performance of contract, then Citibank will be entitled to "derivative sovereign immunity" as to those claims as well. *See* CUF ECF 48 at 17–18. And, in the event the Court holds that jurisdiction over the subgrantees' claims against the government exists only in the Court of Claims, then the Court should dismiss or stay the subgrantees' claims as to Citibank. The gravamen of the subgrantees' claims is against the government, the party at whose "direction" the subgrantee plaintiffs concede Citibank has acted, *see* ECF 17 at 17 n.4, and the party at whose direction Citibank is, indeed, obligated to act, *see* CUF ECF 48 at 19.

Dated: March 31, 2025                           Respectfully submitted,

                                                By:  */s/ K. Winn Allen*
                                                     K. Winn Allen, P.C.
                                                     Saunders McElroy
                                                     KIRKLAND & ELLIS LLP
                                                     1301 Pennsylvania Ave., N.W.
                                                     Washington, D.C. 20004
                                                     Tel: (202) 389-5078
                                                     winn.allen@kirkland.com
                                                     saunders.mcelroy@kirkland.com

                                                     **Counsel for Defendant Citibank, N.A.**

5

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing via e-mail to all counsel of record.

*/s/ K. Winn Allen*
K. Winn Allen