UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CLIMATE UNITED FUND**<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>**CITIBANK, N.A.**, *et al.*<br><br>　　　　　　　　　　Defendants. | Civil Action No. 25-cv-698-TSC |
| **COALITION FOR GREEN CAPITAL**<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>**CITIBANK, N.A.**, *et al.*<br><br>　　　　　　　　　　Defendants. | Civil Action No. 25-cv-735-TSC |
| **POWER FORWARD COMMUNITIES, INC.**<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>**CITIBANK, N.A.**, *et al.*<br><br>　　　　　　　　　　Defendants. | Civil Action No. 25-cv-762-TSC |

**PLAINTIFFS' RESPONSE TO EPA'S NOTICE OF AUTHORITY**

i

Climate United Fund, Coalition for Green Capital, and Power Forward Communities, Inc. respectfully submit this response to the Government's notice concerning the Supreme Court's order in *Dep't of Education v. California*, 2025 WL 1008354 (U.S. Apr. 4, 2025) ("*DOE*"). *See* Dkt. 63. That order has limited relevance because the two cases diverge in key respects.

I.      The *Megapulse* Analysis In This Case Is Different

As the Court is aware, the question whether Plaintiffs' claims against the EPA Defendants may proceed in this Court or in the Court of Federal Claims turns on the two factors in *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967–68 (D.C. Cir. 1982). The *DOE* analysis of these two factors is inapposite here, for the much the same reasons as *Catholic Bishops* is irrelevant.

*First*, with respect to remedies, in *DOE*, the Supreme Court stayed a temporary restraining order "requir[ing] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." 2025 WL 1008354 at *1. The nature of that remedy was clearly dispositive in *DOE* (as it was in *United States Conf. of Cath. Bishops v. U.S. Dep't of State*, 2025 WL 763738, at *5 (D.D.C. Mar. 11, 2025)). Plaintiffs in this case, however, do <u>not</u> seek an "order[] 'to enforce a contractual obligation to pay money,'" *id.*, because—as cannot be disputed—the Government *already* disbursed the money. *E.g.*, Dkt. 33-1 at 24–25 ("Plaintiffs are not asking the government to pay anything: the funds here were already disbursed, and the money is at Citibank in accounts affiliated with Plaintiffs' grants, on their balance sheets."); Dkt. 53 at 5 ("Plaintiffs' claims are not that EPA has breached the Grant Agreements, but rather that EPA has acted contrary to law in attempting to claw back those-already disbursed funds."); *id.* at 6 ("EPA has already disbursed all the funds to Plaintiffs. The question is whether EPA may claw these funds back consistent with federal regulations, statutes, and the Constitution."); *see also id.* at 8, 10, 20, 22.

As a result, unlike in *DOE*, Plaintiffs here seek a prohibitory rather than a mandatory injunction. Unlike in *DOE*, the order Plaintiffs request here would enjoin EPA from unlawfully

dismantling the NCIF program and interfering with funds held in accounts in the name of Plaintiffs and the Subgrantees. Although that order returning to the *status quo ante* would permit Plaintiffs and their Subgrantees to access funds at Citibank, this does not mean Plaintiffs are effectively seeking damages. *Am.'s Cmty. Bankers v. F.D.I.C.*, 200 F.3d 822, 829 (D.C. Cir. 2000) ("[M]oney damages represent compensatory relief, an award given to a plaintiff as a substitute for that which has been lost; specific relief in contrast represents an attempt to restore to the plaintiff that to which it was entitled from the beginning"). Unlike in *DOE*, "any monetary benefit that might flow to Plaintiffs 'would not come from this court's exercise of jurisdiction, but from the structure of statutory and regulatory requirements governing compensation' in this action." Dkt. 28 at 12 (quoting *Tootle v. Sec'y of Navy*, 446 F.3d 167, 174 (D.C. Cir. 2006)). Plaintiffs seek to regain access to their funds at Citibank based on an order prohibiting EPA's interference, rather than (as in *DOE*) an order mandating the Government to pay or indeed to do anything affirmative. That is consistent with *Bowen* v. *Massachusetts*, 487 U. S. 879, 910 (1988), which remains good law.

*Second*, although the *DOE* order did not focus or turn on the source of rights there at issue, it bears emphasizing that the underlying TRO decision in that case held only that DOE failed to provide a sufficient explanation for terminating grants, in violation of the APA's requirement of providing a reasoned explanation. *California v. U.S. Dep't of Educ.*, 2025 WL 760825, at *2–3 (D. Mass. Mar. 10, 2025). Contrary to the Government's contention here, the TRO in *DOE* expressly declined to address any other merits argument, including whether the DOE violated 2 C.F.R. § 200.340. *Compare id.* at *11 n.3 ("I need not, at this time, reach the argument in Count II that there exists a separate ground for a substantive violation of the APA, i.e., an action not in accordance with the law."), *with* Gov. Notice of Supp. Authority at 1 (arguing that Plaintiffs here and in *DOE* "rely[] upon the same termination regulation at issue here, 2 C.F.R. § 200.340").

2

To be sure, Plaintiffs here challenge the adequacy of the EPA's explanation too. But, again, the Supreme Court's order in *DOE* turned on the remedy sought rather than the nature of the claim and, as the Court is aware, Plaintiffs here challenge the government's campaign against the congressionally created NCIF program which resulted in the suspension of funds and termination of the program. The government's campaign attempts to dismantle the program, and in the process violates statute, the Inflation Reduction Act, federal regulations, 2 C.F.R. Pt 200, the Due Process Clause of the U.S. Constitution, and the separation of powers. This case therefore does not turn just (or even mostly) on the adequacy of EPA's explanation in the termination notices, and indeed the Government conceded at argument that the termination notices did not affect jurisdiction.

## II.     Plaintiffs Here Also Rely On This Court's Equitable Jurisdiction

In *DOE*, the Supreme Court relied on implied limitations in the APA disallowing claims sounding in contract. Plaintiffs' federal claims against EPA, however, proceed not just under the APA but also under this Court's equity jurisdiction to enjoin violations of federal law by federal officials, including violations of the Inflation Reduction Act and the U.S. Constitution. *See* Dkt. 33-1 at 25 (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015)). The D.C. Circuit has confirmed that "[n]othing in the subsequent enactment of the APA altered" this inherent equitable jurisdiction. *Dart v. United States*, 858 F.2d 217, 224 (D.C. Cir. 1988). That basis of jurisdiction was not at issue in *DOE*, and provides an independent basis for Plaintiffs to seek injunctive relief from the EPA Defendants for violations of federal law.

## III.    The Balance Of Equities Here Is Different

In *DOE*, the Supreme Court found that "the Government compellingly argues that respondents would not suffer irreparable harm" without a TRO. *DOE*, 2025 WL 1008354, at *1. As this Court found on the TRO and the Government never disputed, Plaintiffs here amply demonstrated that, at minimum, a return of their funds to Treasury would cause them irreparable

3

harm. Plaintiffs also showed they would suffer irreparable injury absent access to their funds. This includes, for Climate United and Power Forward, an existential threat and, for all Plaintiffs, irreparable harm to their reputation and ability to operate. There was no such showing in *DOE*.

As to harm to the Government, in *DOE* the Government asserted that "it is unlikely to recover the grant funds once they are disbursed." 2025 WL 1008354, at *1. By contrast, here, the funds were already disbursed to accounts at Citibank; EPA has full visibility into the flow of funds from Citibank and oversight over accounts affiliated with Plaintiffs' grants; there is no prospect of funds being withdrawn beyond what is set forth in approved budgets and workplans; and Plaintiffs must obtain prior written approval from EPA for many types of transfers. Compare *California v. U.S. Dep't of Educ.*, 2025 WL 878431, at *5 (1st Cir. Mar. 21, 2025) ("[T]he Department asserts that it faces irreparable harm because the TRO allows grant recipients to request up to the entirety of their award monies"), *with, e.g.*, Dkt. 33-2 (Bafford Declaration) ¶¶ 31–35 (describing EPA's oversight mechanisms and limitations on Plaintiffs' draws).

## IV.   Plaintiffs Here Also Have Claims Against Citibank, A Private Party

Finally, the Supreme Court's decision in *DOE* only focused on the proprietary of an order directing the Government to disburse funds, but here Plaintiffs also have contract claims against Citibank, *a private party*. There is no question that this Court has jurisdiction over those contract claims, the substance of those claims does not turn on the Tucker Act, and the equities are completely different than they were in *DOE*. The Court here has jurisdiction to consider whether Citibank breached a private contract by (a) relying on EPA's unlawful directions, and (b) failing to comply with all instructions issued by accountholders. As no Notice of Exclusive Control has issued, an injunction against Citibank directing it to comply with all instructions of accountholders may stand without regard to the propriety of EPA's conduct to date, and without regard to the scope of the Tucker Act or to whether Plaintiffs may press any claims against EPA here.

4

Dated: April 5, 2025

/s/ *Vincent Levy*
  Vincent Levy (NY 0487)
  Kevin D. Benish (NY0495)
  Patrick J. Woods*
  Daniel Fahrenthold (NY0603)
  HOLWELL SHUSTER & GOLDBERG LLP
  425 Lexington Avenue, 14th Floor
  New York, NY 10017
  Tel.: (646) 837-5151
  vlevy@hsgllp.com
  *Application for admission pending.

*Attorneys for Plaintiff Coalition for Green Capital*

/s/ *Beth C. Neitzel*
  Beth C. Neitzel (103611)
  Jack C. Smith (1725229)
  Kevin Y. Chen (admitted *pro hac vice*)
  FOLEY HOAG LLP
  155 Seaport Boulevard, Suite 1600
  Boston, MA 02210
  Tel. (617) 832-1000
  bneitzel@foleyhoag.com
  jcsmith@foleyhoag.com
  kchen@foleyhoag.com

Noah C. Shaw (admitted *pro hac vice*)
James M. Gross (admitted *pro hac vice*)
FOLEY HOAG LLP
1301 Ave. of the Americas, 25th Floor
New York, NY 10019
Tel.: (212) 812-0400
ncshaw@foleyhoag.com
jgross@foleyhoag.com

*Attorneys for Plaintiff Power Forward Communities*

Respectfully submitted:

/s/ *Adam G. Unikowsky*
  Adam G. Unikowsky (989053)
  Kathryn L. Wynbrandt* (1602446)
  David B. Robbins (493976)
  Tanner J. Lockhead* (90011928)
  JENNER & BLOCK LLP
  1099 New York Avenue, Suite 900
  Washington, D.C. 20001
  Tel.: (202) 639-6000
  Fax: (202) 639-6066
  aunikowsky@jenner.com
  *Application for admission pending.

Gabriel K. Gillett (admitted *pro hac vice*)
Simon A. de Carvalho (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
ggillett@jenner.com
sdecarvalho@jenner.com

Allison N. Douglis (admitted *pro hac vice*)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Tel.: (212) 891-1600
Fax: (212) 891-1699
adouglis@jenner.com

*Attorneys for Plaintiff Climate United Fund*

5