**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CLIMATE UNITED FUND,**<br><br>　　　　　　　Plaintiff,<br>　v.<br><br>**CITIBANK, N.A.,** *et al.*<br><br>　　　　　　　Defendants. | Case No. 1:25-cv-00698 (TSC) |
| **COALITION FOR GREEN CAPITAL,**<br><br>　　　　　　　Plaintiff,<br>　v.<br><br>**CITIBANK, N.A.,** *et al.*<br><br>　　　　　　　Defendants. | Case No. 1:25-cv-00735 (TSC) |
| **POWER FORWARD COMMUNITIES, INC.,**<br><br>　　　　　　　Plaintiff,<br>　v.<br><br>**CITIBANK, N.A.,** *et al.*<br><br>　　　　　　　Defendants. | Case No. 1:25-cv-00762 (TSC) |
| **CALIFORNIA INFRASTRUCTURE AND ECONOMIC DEVELOPMENT BANK,** *et al.*<br><br>　　　　　　　Plaintiffs,<br>v.<br><br>**CITIBANK, N.A.,** *et al.*<br><br>　　　　　　　Defendants. | Case No. 1:25-cv-00820 (TSC) |

**FEDERAL DEFENDANTS' CONTINGENT
EMERGENCY MOTION FOR STAY PENDING APPEAL**

**TABLE OF CONTENTS**

BACKGROUND ............................................................................................................................ 3

LEGAL STANDARD .................................................................................................................... 4

ARGUMENT .................................................................................................................................. 5

    A. EPA's Appeal Presents Serious Legal Question ...................................................... 5

    B. Without A Stay The Government Faces Irreparable Injury ..................................... 8

    C. Equities Favor a Stay Pending Appeal .................................................................. 10

**TABLE OF AUTHORITIES**

**Cases**

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
    357 F.3d 62 (D.C. Cir. 2004) ................................................................................................ 6

*Bowen v. Massachusetts*,
    487 U. S. 879 (1988) ............................................................................................................. 7

*Brock v. Pierce Cnty.*,
    476 U.S. 253 (1986) ........................................................................................................... 10

*Citizens For Resp. And Ethics In Washington v. Off. of Admin.*,
    593 F. Supp. 2d 156 (D.D.C. 2009) .................................................................................. 5, 9

*Cuomo v. U.S. Nuclear Regulatory Comm'n*,
    772 F.2d 972 (D.C. Cir. 1985) .......................................................................................... 5, 9

*Great-West Life & Annuity Ins. Co.* v. *Knudson*,
    534 U. S. 204 (2002) .......................................................................................................... 4, 7

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ............................................................................................................. 7

*Heckler v. Turner*,
    468 U.S. 1305 (1984) ........................................................................................................... 9

*Judicial Watch v. Nat'l Energy Policy Dev. Group*,
    230 F.Supp.2d 12 (D.D.C.2002) .......................................................................................... 5

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ............................................................................................................. 6

*Mass. Fair Hous. Ctr et. al. v. Dept. of Hous. and Urban Dev., et. al.*,

    3:25-cv-30041 (D. Mass.)……………………………………………………….……4, 8

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) ............................................................................................... 6

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ............................................................................................. 10

\*U.S. Dept. of Ed. v. California*,
    S. Ct. No. 24A910 (April 4, 2025) ........................................................... 3, 4, 7, 8, 9

*Wash. Metro Area Tansit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C.Cir.1977) ................................................................................. 5

**Statutes**

5 U.S.C. § 701 ................................................................................................................ 7

5 U.S.C. § 702 ................................................................................................................ 6

42 U.S.C. § 7434 ............................................................................................................ 8

**Regulations**

2 C.F.R. § 200.340 ...................................................................................................... 3,7

## FEDERAL DEFENDANTS' CONTINGENT
## EMERGENCY MOTION FOR STAY PENDING APPEAL

Because the government would face immediate irreparable injury through the disbursement of approximately $625 million,[1] and potentially up to $14 billion, in taxpayer funds to external accounts that would be unrecoverable if this Court grants the injunctive relief Plaintiffs have requested, Federal Defendants file this contingent motion for an emergency stay of any such order pending their appeal of such an order to the Court of Appeals for the District of Columbia Circuit.[2] The Supreme Court has already recognized in these very circumstances that the government is likely to succeed on its appeal, yet Plaintiffs have represented their intent to thwart meaningful appellate review by immediately spending hundreds of millions in taxpayer funds that may not be recovered. A stay pending appeal would be necessary to preserve the status quo in this case.

## BACKGROUND

Less than two weeks ago, the Supreme Court considered the very questions at issue in this case in *U.S. Department of Education v. California*, S. Ct. No. 24A910 (April 4, 2025). Like this case, the respondents in *Dept. of Ed.* contend that the government's termination of their grant agreements did not comply with statutes and regulations, including the same termination regulation at issue here, 2 C.F.R. § 200.340. The district court also entered the same basic relief requested here: an order enjoining the government from "terminating various education related

---

[1] This number reflects the amount of funding requested by grantees and subgrantees in both the NCIF and CCIA programs. The NCIF program alone constitutes $447 million of that total.
[2] Grantees are Coalition for Green Capital (CGC), Power Forward Communities, Inc. (PFC), and Climate United Fund. CGC subgrantees also filed suit, *California Infrastructure and Economic Development Bank, et al., v. Citibank, N.A., et al.*, Case No. 1:25-cv-00820 (TSC).

3

grants" and "to pay out past-due grant obligations and to continue paying obligations as they accrue." *Dept. of Ed.*, Order at 1.

The Supreme Court stayed injunctive relief, concluding that "the Government is likely to succeed in showing the District Court lacked jurisdiction to order payment of money under the APA." *Id.* at 1–2. The Supreme Court explained, "as we have recognized, the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here.'" *Id.* at 2 (quoting *Great-West Life & Annuity Ins. Co.* v. *Knudson*, 534 U. S. 204, 212 (2002)). The Supreme Court also recognized there, as here, that the government is unlikely to recover grant funds once they are disbursed. Courts have begun applying the Supreme Court's direction in grant termination cases filed improvidently in district court. *See Mass. Fair Hous. Ctr et. al. v. Dept. of Hous. and Urban Dev., et. al.*, 3:25-cv-30041 (D. Mass.) (April 14, 2025 Minute Order).

Although Plaintiffs attempted to distinguish their case from *Dept. of Ed.* based on the use of a financial agent in the EPA grants, EPA has demonstrated that the use of a financial agent to administer the funds in Treasury's shoes is not any distinction at all because Plaintiffs' rights to federal funds, like the rights at issue in *Dept. of Ed.*, are defined by their grant agreements.

Any preliminary injunction that alters the status quo and directs disbursement of funds from the accounts maintained by the federal financial agent, defendant Citibank, N.A. (Citibank), would cause immediate irreparable injury to the United States, specifically, the potentially permanent loss of up to $14 billion in taxpayer funds.

## LEGAL STANDARD

"The factors the Court considers in determining whether a stay pending appeal is warranted are: (1) the likelihood that the party seeking the stay will prevail on the merits of the

appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the Court grants the stay; and (4) the public interest in granting the stay. To justify the granting of a stay, a movant need not always establish a high probability of success on the merits." *Citizens For Resp. and Ethics in Washington v. Off. of Admin.*, 593 F. Supp. 2d 156, 159 (D.D.C. 2009) (quoting *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)).

The "court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, [ ] may grant a stay even though its own approach may be contrary to the movant's view of the merits." *Citizens*, 593 F. Supp. 2d at 160. "In particular, '[a]n order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public, and when denial of the order would inflict irreparable injury on the movant." *Id.* (quoting *Wash. Metro Area Transit Comm'n v Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977)). In such a situation, "[t]here is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success." *Id.* (quoting *Holiday Tours,* 559 F.2d at 844).

"Under this Circuit's precedent, the harms to each party are tested for 'substantiality, likelihood of occurrence, and adequacy of proof.'" *Id.* at 161 (quoting *Judicial Watch v. Nat'l Energy Policy Dev. Group*, 230 F. Supp. 2d 12, 15 (D.D.C. 2002)). "The Court must consider the significance of the change from the *status quo* which would arise in the absence of a stay, as well as likelihood of occurrence of the claimed injury, when determining whether [parties] have truly met their burden of demonstrating irreparable harm justifying imposition of a stay." *Id.* "A party moving for a stay is required to demonstrate that the injury claimed is 'both certain and great.'" *Id.* (quoting *Cuomo*, 772 F.2d at 976).

**ARGUMENT**

As demonstrated in the briefing on Plaintiffs' Motion for Preliminary Injunction, EPA is likely to succeed on an appeal it may be obliged to take, and the government will incur irreparable harm absent a stay. By contrast, extending a moderate delay in accessing grant funds will not substantially harm Grantees or Subgrantees. And Plaintiffs' harm under a stay, if any, does not outweigh the government's interest in reobligating the funds under a reformed grant program or duty to act in the public interest to protect the public fisc.

### A. EPA's Appeal Presents Serious Legal Questions

EPA has presented serious legal questions that warrant a stay pending appeal. *First*, as has been briefed, this Court lacks jurisdiction to entertain Plaintiffs' claims. ECF No. 49 (EPA Opp. to PI) at 8–16. The Court's exercise of jurisdiction pursuant to the APA's waiver of the federal government's sovereign immunity would be in error because that waiver does not apply "if any other any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians* v. *Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). And the waiver is limited to claims "seeking relief other than monetary damages." 5 U.S.C. § 702.

Here, both Grantees and Subgrantees seek one thing—the payment of money they claim is being denied to them under their grant agreements. Such claims, though dressed as statutory and constitutional challenges, are "contract actions" that "the Tucker Act impliedly forbids" plaintiffs to bring against "the government in a federal district court." *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004). As a result, EPA is likely to prevail in an appeal challenging this Court's jurisdiction to grant Plaintiffs' injunctive relief.

To reiterate, the Supreme Court's recent order in *U.S. Departmen. of Education v. California*, No. 24A910 (Apr. 4, 2025) establishes the government's likelihood of success in this case. Like Plaintiffs here, the respondents in *Dept. of Ed.* contend that the government's termination of their grants, which relied upon the same termination regulation EPA relies on here (2 C.F.R. § 200.340), violated the APA. *See id.,* Opp. to App. at 22–23 (Mar. 28, 2025). The district court in *Dept. of Ed.* also entered the same basic relief provided in this Court's order: enjoining the government from "terminating various education related grants" and "to continue paying obligations as they accrue." *Id.* at 1.[3] The Supreme Court recognized in *Dept. of Ed.* that while "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds," *Dept. of Ed.* Order at 2 (quoting *Bowen* v. *Massachusetts*, 487 U. S. 879, 910 (1988)), the "APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered." *Id.* (quoting *Great-West Life & Annuity Ins. Co.* v. *Knudson*, 534 U. S. 204, 212 (2002)). Here, the result should be same. *See also* EPA Opp. to PI at 9-17.

*Second*, if this Court grants Plaintiffs their requested relief, the Court will have erroneously taken control of funding decisions that are committed to agency discretion by law. *See* 5 U.S.C. § 701(a)(2). Review under the APA is unavailable "if a statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). *See also*, EPA Opp. to PI at 16-17. In *Lincoln v. Vigil*, 508 U.S. 182 (1993), the Supreme Court recognized that an agency decision to change prior funding decisions presented a matter committed to agency discretion by law. *Id.* at

---

[3] The district court in *Dept. of Ed.* also compelled the government "to pay out past-due grant obligations." *Id.*

185-88. Here, Congress entrusted EPA "to make grants, on a competitive basis" for distinct purposes, 42 U.S.C. § 7434(a), and left the program's design and implementation to EPA's discretion. This Court would err if it intruded upon the agency's entitlement to the same prerogatives. *See id.* at 193 (APA "gives the court no leave to intrude" on agency decisions committed to agency discretion).

If an appeal is necessary, EPA is likely to succeed in showing that this Court lacks jurisdiction to order EPA to specifically perform any contractual obligation to provide funding to the Grantees or Subgrantees, for the same reasons recognized in *Dept. of Ed.* and because the agency's decisions, committed to agency discretion by law, are not subject to judicial review. At a minimum, there is substantial equity, and need for judicial protection" here, "whether or not [the government] has shown a mathematical probability of success." *Citizens*, 593 F. Supp. 2d at 160. District courts have already reached the same conclusion on the jurisdictional issues the Supreme Court reached in *Dept. of Ed. See U.S. Conf. of Catholic Bishops* v. *United States Department of State*, No. 25-cv-465, 2025 WL 763738 (D.D.C. Mar. 11, 2025); *see also Mass. Fair Hous. Ctr et. al. v. Dept. of Hous. and Urban Dev., et. al.*, 3:25-cv-30041 (D. Mass.) (April 14, 2015 Minute Order)[4] , A stay here would be warranted to allow for meaningful appellate review "even though [the Court's] own approach may be contrary to the movant's view of the merits." *Citizens*, 593 F. Supp. 2d at 160.

---

[4] Applying *Dept. of Ed.*, the district court dissolved a TRO for lack of jurisdiction because since plaintiffs, like the *Dept. of Ed* respondents, claim "the agency did not terminate the grant in accordance with statutory or regulatory authority—it follows that plaintiffs are likewise likely seeking to enforce a contractual obligation to pay money."

**B. Without A Stay The Government Faces Irreparable Injury**

The government will suffer irreparable injury absent a stay pending EPA's appeal. If this Court allows disbursements from the Citibank accounts, Plaintiffs may immediately attempt to move approximately $625 million and all $14 billion could be equally subject to loss. *See Heckler v. Turner*, 468 U.S. 1305, 1307-1308 (1984) (Rehnquist, J., in chambers) (prospect of the government being forced to make $1.3 million in improper payments per month supported a stay of injunction). And that injury would be "both certain and great." *Citizens* 593 F. Supp. 2d at 161 (quoting *Cuomo*, 772 F.2d at 976). Plaintiffs have already requested approximately $625 million in external transfers from Citibank, *see* April 15, 2025 Declaration of Gregg Treml, EPA Acting Chief Financial Officer, (Treml Decl.) ¶¶ 6-23 and have sent letters purporting to instruct Citibank to "take whatever steps are necessary to ensure that, following the Court's decision, Citibank can *immediately* process all pending transactions. . ." *Id.* at Exhibit A (Climate United letter) and Exhibit B (CGC letter); *see also id.* at Exhibit C (PFC letter)("a single day's delay is unacceptable…"). Plaintiffs' grant awards total $14 billion, ECF No. 71 at 4, and there are few limits to what they can expend in short order under the injunction requested from this Court. The government's harm would be particularly acute in the absence of a bond equal in amount to Plaintiffs' ongoing withdrawals, *see* Fed. R. Civ. Proc. 65(c), and no grantee promised "to return withdrawn funds should its grant termination be reinstated," *Dept. of Ed.* at 2. Like the *Dept. of Ed.* respondents, Plaintiffs here "have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed." *Id.*

Moreover, EPA would be irreparably harmed by a continuation of the TRO's bar on effectuating grant termination. Treml Decl. ¶¶ 4-5. EPA cannot complete the closeout process, reform the program, and reobligate the funds as stated in its termination letters until this cloud on

the funding is removed. The government, and potential future grantees, cannot be made whole for this delay, unlike the Grantees and Subgrantees that may seek compensation in the Court of Federal Claims. And every day that goes by is another day EPA is deprived of substantial interest and income on the funds that could otherwise be rolled back into the reformed program.

### C. Equities Favor a Stay Pending Appeal

The balance of the final equitable factors for issuance of a stay, *i.e.*, "…the prospect that others will be harmed if the Court grants the stay; and [] the public interest in granting the stay," *Citizens*, 593 F. Supp. 2d at 159, tips decisively in government's favor, for one simple reason: This case is about money. If Plaintiffs are ultimately successful in their claims against EPA in the Court of Federal Claims, they may seek to recover loss resulting from EPA's alleged breach of the grant agreements. If Plaintiffs can be made whole by recovery on a claim for damages, they cannot be substantially harmed by a stay.

However, EPA, for the reasons explained above, cannot be made whole without a stay of these proceedings (or bond, which has not been issued) if later successful on appeal. The government also has a strong interest in safeguarding the public fisc. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). In fact, "the protection of the public fisc is a matter that is of interest to every citizen," *Brock v. Pierce Cnty.*, 476 U.S. 253, 262 (1986). Yet, a preliminary injunction order that bars the Executive Branch from exercising its authorities to ensure the GGRF is operated with the level of oversight and control it prefers threatens the agency's ability to ensure federal dollars remain protected. This separation of powers concern cannot be taken lightly, and caution is warranted before ordering immediate preliminary relief that impacts the ability of the Executive Branch to administer a program in a form no longer deems appropriate in the exercise of its constitutional functions.

\* \* \* \* \* \*

For these reasons, the Court should grant a stay of any order allowing disbursements from the Citibank accounts pending resolution of the issues to be presented to the D.C. Circuit.

Dated: April 15, 2025

Respectfully Submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

KIRK T. MANHARDT
Director

*/s/ Marc S. Sacks*
MARC S. SACKS (Ga. Bar No. 621931)
*Deputy Director*
KEVIN P. VANLANDINGHAM (NY Reg No. 4741799)
*Assistant Director*
U.S. Department of Justice
Civil Division
Corporate/Financial Section
P.O. Box 875
Ben Franklin Stations
Washington D.C. 20044-0875
 Tel: (202) 307-1134
Email: kevin.p.vanlandingham@usdoj.gov

*Attorneys for the United States Environmental Protection Agency*