## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CLIMATE UNITED FUND**<br><br>       Plaintiff,<br><br> v.<br><br>**CITIBANK, N.A.**, *et al.*<br><br>       Defendants. | Civil Action No. 25-cv-698-TSC<br>(and consolidated cases) |
| **COALITION FOR GREEN CAPITAL**<br><br>       Plaintiff,<br><br> v.<br><br>**CITIBANK, N.A.**, *et al.*<br><br>       Defendants. | **RESPONSE TO CONTINGENT EMERGENCY MOTION FOR STAY PENDING APPEAL** |
| **POWER FORWARD COMMUNITIES, INC.**<br><br>       Plaintiff,<br><br> v.<br><br>**CITIBANK, N.A.**, *et al.*<br><br>       Defendants. | |
| **CALIFORNIA INFRASTRUCTURE & ECONOMIC DEVELOPMENT BANK**, *et al.*,<br><br>       Plaintiffs,<br><br> v.<br><br>**CITIBANK, N.A.**, *et al.*<br><br>       Defendants. | |

Climate United Fund, Coalition for Green Capital, and Power Forward Communities Inc. respectfully respond to the Government's contingent emergency motion for a stay pending appeal. Dkt. 75. "A stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). EPA has not shown that deviation from the ordinary process is warranted in this case.

## I.  The Government's Motion Is Not Ripe

The Government's motion should be denied on the basis that it is not ripe, without prejudice to refiling once the Court issues its order on Plaintiffs' preliminary injunction motion. FRAP 8 requires appellants to seek a stay from the District Court before requesting the same stay from the Court of Appeals. The Government may not circumvent that requirement by filing a supposed contingent stay application before the Court has even entered an order that may be appealed. *See Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 2025 WL 597959, at *19 n.14 (D.D.C. Feb. 25, 2025) ("The court also denies Defendants' request for an administrative stay pending appeal as premature. If Defendants, after reviewing this opinion and its accompanying order, believe that a stay pending appeal is warranted, they may make a request consistent with Federal Rule of Appellate Procedure 8." (cleaned up)).

## II.  EPA Is Not Entitled To A Stay

### A. EPA Has Failed To Make a Strong Showing That They Are Likely to Succeed On Appeal

For the reasons already stated in Plaintiffs' prior briefing, Plaintiffs are likely to succeed on the merits of their claims against all Defendants. *See* Dkt. 33-1 at 27-44, 56-59; Dkt. 53 at 11-22, 27-29. And, for the reasons stated in Plaintiffs' prior briefing on the preliminary injunction motion and supplemental briefing on jurisdiction, this Court has jurisdiction over all of Plaintiffs'

1

claims. *See* Dkt. 64; Dkt. 33-1 at 22-26; Dkt. 53 at 3-11. *See also* Memorandum Opinion and Order at 28-35, *Woonasquatucket River Watershed Council*, C.A. No. 1:25-cv-00097-MSM-PAS (D.R.I.) (entered April 15, 2025) ("a single three-page per curiam order [in *Department of Education*] granting a stay" cannot be construed as overruling *Bowen* and its progeny).

### B. EPA Will Not Be Irreparably Harmed Absent a Stay

Because EPA has not shown a likelihood of success on any appeal, or even serious questions as to whether it will prevail, a stay may not issue regardless of whether or not they have substantiated irreparable harm. *See Blankenship v. Boyle*, 447 F.2d 1280, 1280 (D.C. Cir. 1971).

EPA also has not shown irreparable harm. To obtain a stay pending appeal, the mere "possibility of irreparable injury" to the moving party is not sufficient. *Nken v. Holder*, 556 U.S. 418, 434-35 (2009). If the movant fails to make the threshold showing of irreparable injury, a stay may not issue. *KalshiEX LLC v. CFTC*, 119 F.4th 58, 64 (D.C. Cir. 2024).

EPA claims that Plaintiffs "may immediately attempt to move approximately $625 million and all $14 billion could be equally subject to loss." But EPA provides no reason to conclude that the $625 million in already-requested funds is going to be spent in a fraudulent or wasteful way. To the contrary, EPA disregards the multitude of safeguards EPA imposed on Appellees' accounts to provide transparency and allow for oversight. *See, e.g.*, Dkt. 33-1 at 12. Indeed, each and every expense for which Plaintiffs and their subgrantees sought to draw funds was legitimate and justified. *See, e.g.*, Declaration of Elizabeth Bafford in Opposition to Motion for Stay ¶ 3 & Exhibit A; Dkt. 33-2 (Decl. of Elizabeth Bafford) ¶ 34; Dkt. 33-32 (Decl. of John Moon) ¶ 12; Dkt. 33-27 (Decl. of Eli Hopson) ¶ 13; Dkt. 33-26 (Decl. of Jessica Buendia) ¶ 13.

Moreover, EPA overlooks that even in its best-case scenario, it will be liable for a damages judgment anyway—that judgment will merely be issued by the Court of Federal Claims in a breach-of-contract action. Notably, EPA has never disputed that the grants were terminated

illegally. If Plaintiffs are forced to bring breach-of-contract claims in the Court of Federal Claims, Plaintiffs are virtually guaranteed to prevail. EPA is not harmed by purported loss of funds when it will have to pay Plaintiffs money judgments anyway.

It is particularly clear that EPA will not be harmed with respect to the funds that Plaintiffs attempted to draw from their accounts before EPA sent each Plaintiff a Notice of Termination. As reflected in an exhibit to Federal Defendants' temporary restraining order opposition, Citibank received approximately $450 million in pending transfer instructions from the prime GGRF recipients and subrecipients by March 6, 2025, *before* EPA issued its Notices of Termination on March 11, 2025. *See* Dkt. 16-2 at 169 (Citibank stating that, as of March 6, "the Bank has approximately $450 million in pending transfer instructions from the prime recipients and subrecipients."). But EPA has offered no justification for its actions withholding properly requested funds from Plaintiffs prior to EPA's purported termination of Plaintiffs' grants. EPA is not "irreparably harmed" if Plaintiffs receive funds when EPA has never even tried to justify its actions preventing Plaintiffs from obtaining those funds.

EPA also claims that without a stay, it would not be able to "complete the closeout process, reform the program, and reobligate the funds … until this cloud on the funding is removed." Mot. 9-10. But a temporary "cloud" on funding is not an irreparable harm: if EPA ultimately prevails in this case, the "cloud" will go away. Further, the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)); *see also Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (holding that plaintiff's interest in enjoining unlawful action superseded governmental interest in continuing that action).

### C. The Equities Weigh Against A Stay

In contrast to the minimal—and certainly not irreparable—harm Federal Defendants would experience if a stay were denied, the harm to Plaintiffs if a stay were granted would be catastrophic. Plaintiffs have amply corroborated the severe threat continued lack of access to NCIF funds poses to their operations, programs, and reputations.

This Court has already recognized that financial harm can "constitute irreparable harm … where the loss threatens the very existence of the movant's business." Dkt. 28 at 19 (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Climate United and PFC have substantiated in detail the existential risks they face without access to funding in the near future. *See, e.g.*, Dkt. 33-1 at 44-47, 51-52. Climate United is also submitting a supplemental declaration with this response describing the ongoing harm to Climate United and explaining how it will suffer acute harm if a stay pending appeal is granted.

Each Plaintiff has also corroborated significant and ongoing harm to its operations, its programs, and its reputation and goodwill. *See, e.g.*, Dkt. 33-1 at 44-54. These include the inability to finance projects that have already been launched; being forced to reduce staff or defer compensation; being unable to compensate essential contractors; and being told by current and prospective partners that they will not engage with a given Plaintiff while its access to funds is uncertain. All of these harms are also more than sufficient not just to justify a preliminary injunction, but to counterweight Federal Defendants' questionable assertions of irreparable harm. Moreover, Plaintiffs have continued to suffer irreparable harm each day that their grant funds are inaccessible. *See, e.g.*, Bafford Decl. ¶¶ 7-10, 16 (detailing additional irreparable harms suffered since March 21).

Put simply, the equities weigh against a stay because this is a quintessential scenario where, even if Plaintiffs were to win on their claims, without access to funds during the pendency of this

litigation, they would still lose due to the dramatic impact that sustained loss of funding would have on their operations. That is precisely the type of harm that any preliminary injunction entered by this Court would be intended to remedy.

### D. A Stay Is Contrary To The Public Interest

Finally, for all the reasons a preliminary injunction allowing Plaintiffs to access funds would further the public interest, a stay would be contrary to the public interest. *See* Dkt. 33-1 at 55-56; Dkt. 53 at 25. The repercussions of Plaintiffs' inability to access their funds reverberate well beyond Plaintiffs and their subgrantees. The public has an acute interest in the billions of dollars of investments that Congress authorized in the Inflation Reduction Act, which were awarded to Plaintiffs in line with that interest—for example, so they could advance projects related to solar power, electric vehicles, energy-efficient affordable housing, and low-emissions heating and cooling systems for families across the country.

### III.    There Is No Basis To Stay Any Preliminary Injunction Against Citibank

The Court should also deny the stay because the Government's sole argument supporting its stay motion—namely, that there is supposedly no federal jurisdiction over claims against the Government—cannot justify staying a preliminary injunction against Citibank, a private party that holds the funds subject to independent contractual obligations that Citibank violated.

*First*, although Plaintiffs sought a preliminary injunction against Citibank as well as the Government, the Government has not—and may not—seek to stay any order entered against Citibank. Citibank is a separate defendant in this lawsuit, and is fully able to move for a stay should it believe one is warranted. Citibank has not done so. The Government's sole interest is a contingent security interest, and it has never sought to issue a Notice of Exclusive Control (nor could it). The Government should not be permitted to litigate the interests of a third party that can speak for itself. *Cf. Califano v. Yamasaki,* 442 U.S. 682, 700-01 (1979) ("[T]he usual rule [is] that

5

litigation is conducted by and on behalf of the individual named parties only.").

*Second*, even if the Government's stay motion could be deemed to seek a stay of any injunction against Citibank, there is no justification for doing so. Citibank is a private party subject to contractual obligations, and the Government's jurisdictional objections do not deprive the Court of jurisdiction over Citibank. To be sure, Citibank has claimed on the basis of derivative sovereign immunity that this case should be stayed in the event this Court concludes that the claims against the Government belong in the Court of Federal Claims. Citibank is not likely to prevail on that argument on appeal for the reasons stated in briefing, and because there is no precedent supporting this position.

*Third*, the Government's stay motion is deficient because, as explained in preliminary injunction briefing, Citibank executed account control agreements that require Citibank to abide by the instructions of accountholders (Plaintiffs and their subgrantees) regardless of the validity of EPA's purported termination of the NCIF grant program, and regardless of whether Plaintiffs can sue the Government in this Court. Plaintiffs' preliminary injunction motion seeks to require Citibank to comply with its contractual obligations under the account control agreements. Citibank is not likely to prevail in any appeal from a preliminary injunction entered against it, given the plain terms of the account control agreements, which contain integration clauses. Moreover, although Citibank has relied upon the FAA, the FAA simply points back to the ACAs. And Citibank has never sought to defend its conduct based on the four corners of those agreements. Moreover, neither Citibank nor the Government has ever cited any contractual basis in the ACAs permitting the Government to claw back funds. There is none.

*Fourth*, although Plaintiffs' briefing demonstrated irreparable injury and that the public interest is in their favor (*see also supra*), neither Citibank nor the Government has ever explained

why an injunction mandating that Citibank comply with its contractual obligations to accountholders would cause *Citibank* irreparable injury, or why an injunction against Citibank is against the public interest. Citibank's opposition to the preliminary injunction motion uses the word "irreparable" just once, in articulating the standard, and never even discusses the equities. Dkt. 48 at 12. It has therefore waived any argument that requiring it to abide by the contracts it signed is against the public interest or would cause it irreparable harm. For the same reasons, neither the Government nor Citibank can show that a stay of any injunction against Citibank pending appeal is needed to avoid irreparable injury to *Citibank*. *Nken*, 556 U.S. at 433-34; *Compare Winter v. NRDC*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

### IV. Alternatively, The Court Should Enter A Limited Stay Pending An Expedited Appeal

For the reasons above, no stay is warranted here. If, however, the Court stays any part of its preliminary injunction order, the stay should not apply to any of the following—which would impose no harm on Defendants but would inflict further irreparable injury on Plaintiffs.

*First*, during the pendency of any appeal, the Plaintiffs' NCIF funds (as well as those of their Subgrantees) should remain at Citibank. If EPA and Citibank are permitted to seize, or transfer funds out of, Plaintiffs' accounts, this Court may well be powerless to restore the *status quo ante* and grant Plaintiffs complete relief. This Court has already recognized this irreversible harm, noting that "[i]f Citibank transfers money out of these accounts, the funds will not be recoverable." Dkt. 28 at 19. "Any transfer, re-allocation, or re-obligation of these funds would," the Court held, thus "be an irreparable loss." *Id.* By contrast, maintaining these funds at Citibank

would cause no harm to Defendants.

*Second*, any stay this Court might enter should not apply to the disbursement requests by Plaintiffs or their subgrantees corresponding to Plaintiffs' operational expenses (as opposed to the loans they intend to offer). Those disbursement requests are a tiny fraction of the total amount of money at issue: in Climate United's case, it is approximately $25 million. *See* Bafford Decl. ¶ 18. Those disbursements are essential to allowing Plaintiffs to maintain their operations. As Ms. Bafford explains on behalf of Climate United, to fully cover operational expenses for the next six months—including payroll for employees, rent, insurance, payments to essential contractors, and other necessary expenses—Climate United would need access to at least $25 million in funding for itself and its coalition partner subgrantees. *Id.* This would save Climate United and its partners from being forced to wind down operations before this case can be litigated to final judgment. *Id.* Although this amount would not permit Climate United to continue any of its active projects and advance its mission—the very reason for Climate United's existence and for the NCIF funding—and thus would still force Climate United to suffer irreparable harm, it would at least allow Climate United to survive. *Id.*

At a bare minimum, a stay should be denied with respect to draw requests and disbursements related to Plaintiffs' or their Subgrantees' operational expenses that were pending or incurred as of March 11, 2025. In Climate United's case, for example, this amount is $6,347,303.87. *See* Bafford Decl. ¶ 19. Although that amount would not be sufficient to cover operating expenses for the duration of this litigation, it would at least allow Climate United to keep the lights on for approximately 2 months. *Id.* The public interest favors Plaintiffs on these funds because Plaintiffs are virtually certain to recover these funds anyway even if this case is sent to the Court of Federal Claims. *Id.* ¶ 20. Moreover, whereas the inability to access these funds

pending appeal would result in substantial and irreversible harm to Plaintiffs, any potential harm to the Government here is negligent or nonexistent.

*Third*, any stay this Court might enter should not apply to any disbursement or transfer instruction submitted by Plaintiffs or their Subgrantees prior to EPA's purported termination of the NCIF awards on March 11, 2025. Those pre-termination instructions correspond to roughly $450 million in NCIF funds owed to Plaintiffs and their Subgrantees—and nearly 75 percent of the $625 million in funds the Government claims it stands to lose if the Court refuses to stay its hypothetical order pending appeal. *See* Dkt. 16-2; *id.* Ex. B.; Dkt 75 at 1. But, as explained, there is no dispute that Plaintiffs would be entitled to such disbursements—requested *before* EPA issued the March 11 Notices of Termination—as part of the grant closeout process *even if* the Government's Tucker Act theory is correct (which it's not). Disbursement of these funds therefore does not harm the Government. An order staying their disbursement *would*, however, result in further irreparable injury to Plaintiffs. *See supra* Part II.B; Dkt. 33 at 44-54.

9

Dated: April 15, 2025

/s/ *Vincent Levy*
Vincent Levy (NY 0487)
Kevin D. Benish (NY0495)
Patrick J. Woods*
Daniel Fahrenthold (NY0603)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
Tel.: (646) 837-5151
vlevy@hsgllp.com
*Application for admission pending.

*Attorneys for Plaintiff Coalition for Green Capital*

/s/ *Beth C. Neitzel*
Beth C. Neitzel (103611)
Jack C. Smith (1725229)
Kevin Y. Chen (admitted *pro hac vice*)
FOLEY HOAG LLP
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
Tel. (617) 832-1000
bneitzel@foleyhoag.com
jcsmith@foleyhoag.com
kchen@foleyhoag.com

Noah C. Shaw (admitted *pro hac vice*)
James M. Gross (admitted *pro hac vice*)
FOLEY HOAG LLP
1301 Ave. of the Americas, 25th Floor
New York, NY 10019
Tel.: (212) 812-0400
ncshaw@foleyhoag.com
jgross@foleyhoag.com

*Attorneys for Plaintiff Power Forward Communities*

Respectfully submitted:

/s/ *Adam G. Unikowsky*
Adam G. Unikowsky (989053)
Kathryn L. Wynbrandt* (1602446)
David B. Robbins (493976)
Tanner J. Lockhead* (90011928)
JENNER & BLOCK LLP
1099 New York Avenue, Suite 900
Washington, D.C. 20001
Tel.: (202) 639-6000
Fax: (202) 639-6066
aunikowsky@jenner.com
*Application for admission pending.

Gabriel K. Gillett (admitted *pro hac vice*)
Simon A. de Carvalho (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
ggillett@jenner.com
sdecarvalho@jenner.com

Allison N. Douglis (admitted *pro hac vice*)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Tel.: (212) 891-1600
Fax: (212) 891-1699
adouglis@jenner.com

*Attorneys for Plaintiff Climate United Fund*