APPEAL,CONSOL,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:25–cv–00698–TSC</u>
### *Internal Use Only*

| | |
|---|---|
| CLIMATE UNITED FUND v. CITIBANK, N.A. et al | Date Filed: 03/08/2025 |
| Assigned to: Judge Tanya S. Chutkan | Jury Demand: None |
| Member cases: | Nature of Suit: 899 Administrative |

Member cases:
- 1:25–cv–00735–TSC
- 1:25–cv–00762–TSC
- 1:25–cv–00820–TSC
- 1:25–cv–00938–TSC
- 1:25–cv–00948–TSC

Related Cases: 1:25–cv–00948–TSC
- 1:25–cv–00735–TSC
- 1:25–cv–00820–TSC
- 1:25–cv–00938–TSC
- 1:25–cv–00762–TSC

Case in other court: USCA, 25–05122

Cause: 05:0706 Judicial Review of Agency Actions

Nature of Suit: 899 Administrative Procedure Act/Review or Appeal of Agency Decision

Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **CLIMATE UNITED FUND** | represented by | **Allison N. Douglis** |
| | | JENNER & BLOCK LLP |
| | | 1155 Avenue of the Americas |
| | | New York, NY 10036 |
| | | 212–303–2505 |
| | | Fax: 212–891–1699 |
| | | Email: adouglis@jenner.com |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **David B. Robbins** |
| | | JENNER & BLOCK LLP |
| | | 1099 New York Avenue, NW |
| | | Suite 900 |
| | | Washington, DC 20001 |
| | | 202–639–6040 |
| | | Email: drobbins@jenner.com |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Gabriel K. Gillett** |
| | | JENNER & BLOCK LLP |
| | | 353 North Clark Street |
| | | Chicago, IL 60654 |
| | | 312–840–7220 |
| | | Email: ggillett@jenner.com |

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathryn L. Wynbrandt**
JENNER & BLOCK LLP
1099 New York Ave., NW
Suite 900
Washington, DC 20001
202−637−6389
Email: kwynbrandt@jenner.com
*ATTORNEY TO BE NOTICED*

**Simon De Carvalho**
JENNER & BLOCK
353 N. Clark Street
Chicago, IL 60654
312−840−7204
Email: sdecarvalho@jenner.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tanner Lockhead**
JENNER & BLOCK LLP
1099 New York Ave., NW
Suite 900
Washington, DC 20001
202−639−3898
Email: tlockhead@jenner.com
*ATTORNEY TO BE NOTICED*

**Adam Granich Unikowsky**
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001−4412
(202) 639−6041
Email: AUnikowsky@jenner.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**POWER FORWARD COMMUNITIES, INC.**
*25−cv−00762−TSC*

represented by **Beth C. Neitzel**
Foley Hoag LLP
155 Seaport Blvd
Suite 1600
Boston, MA 02210
(202) 663−6502
Email: bneitzel@foleyhoag.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Gross**
FOLEY HOAG

1301 Avenue of the Americas
25th Floor
New York, NY 10019
212–812–0422
Email: jgross@foleyhoag.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jack C. Smith**
FOLEY HOAG, LLP
155 Seaport Boulevard
Boston, MA 02210
617–832–1119
Email: jcsmith@foleyhoag.com
*ATTORNEY TO BE NOTICED*

**Kevin Chen**
FOLEY HOAG, LLP
155 Seaport Boulevard
Boston, MA 02210
617–832–1115
Email: kchen@foleyhoag.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Noah C. Shaw**
FOLEY HOAG LLP
1301 Avenue of the Americas
25th Floor
New York, NY 10019
518–226–9602
Email: ncshaw@foleyhoag.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**COALITION FOR GREEN CAPITAL**          represented by    **Vincent Levy**
*1:25–cv–00735–TSC*                                        HOLWELL SHUSTER & GOLDBERG
                                                           LLP
                                                           425 Lexington Avenue
                                                           14th Floor
                                                           New York, NY 10017
                                                           646–837–5120
                                                           Email: vlevy@hsgllp.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Kevin D. Benish**
                                                           HOLWELL SHUSTER & GOLDBERG
                                                           LLP
                                                           425 Lexington Avenue

14th Floor
New York City, NY 10017
646–837–8349
Email: kbenish@hsgllp.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **AAG ILLINOIS FINANCE AUTHORITY** | represented by | **Jason Elliott James** |

OFFICE OF THE ATTORNEY
GENERAL/IL
69 W. Washington St
18th Floor
Chicago, IL 60602
312–814–0660
Email: jjames@atg.state.il.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Anne Schultz Richards**
CALIFORNIA ATTORNEY GENERAL'S
OFFICE
California Department of Justice
1300 I Street Suite 125
P.O. Box 944255
Sacramento, CA 93721
916–210–7739
Email: megan.richards@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **EFFICIENCY MAINE TRUST** *25–cv–820* | represented by | **Emma Akrawi** |

OFFICE OF THE ATTORNEY
GENERAL/ME
6 State House Station
Augusta, ME 04333–0006
207–626–8800
Email: emma.akrawi@maine.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan Anne Schultz Richards**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott William Boak**
OFFICE OF THE ATTORNEY
GENERAL/ME
6 State House Station
Augusta, ME 04333–0006

4

207−626−8566
Email: scott.boak@maine.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MINNESOTA CLIMATE
INNOVATION FINANCE
AUTHORITY**
*25−cv−820*

represented by **Megan Anne Schultz Richards**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Oliver Larson**
MINNESOTA ATTORNEY GENERAL'S
OFFICE
445 Minnesota St.
Suite 900
St. Paul, MN 55101
651−757−1265
Email: oliver.larson@ag.state.mn.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter Nathaniel Surdo**
OFFICE OF THE ATTORNEY
GENERAL/MINNESOTA
445 Minnesota Street
Suite 900
St. Paul, MN 55101
(651) 757−1061
Email: Peter.Surdo@ag.state.mn.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Catherine Rios−Keating**
MINNESOTA ATTORNEY GENERAL'S
OFFICE
445 Minnesota Street
Suite 600
St. Paul, MN 55101
651−300−7302
Email: catherine.rios−keating@ag.state.mn.us
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CALIFORNIA INFRASTRUCTURE
AND ECONOMIC DEVELOPMENT
BANK**
*25−cv−00820−TSC*

represented by **Megan Anne Schultz Richards**
CALIFORNIA ATTORNEY GENERAL'S
OFFICE
1300 I Street Suite 125
P.O. Box 944255
Sacramento, CA 93721
916−210−7739

Email: megan.richards@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Meghan Strong**
DEPARTMENT OF JUSTICE– CA
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
415–510–3877
Fax: 415–703–5480
Email: meghan.strong@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Theodore A.B. McCombs**
OFFICE OF THE ATTORNEY
GENERAL
600 West Broadway Ste. 1800
San Diego, CA 92101
619–738–9000
Email: theodore.mccombs@doj.ca.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JUSTICE CLIMATE FUND**                    represented by    **David Zimmer**
ZIMMER, CITRON & CLARKE LLP
130 Bishop Allen Dr.
Cambridge, MA 02139
617–676–9421
Email: david@zimmercitronclarke.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric F. Citron**
ZIMMER, CITRON & CLARKE LLP
130 Bishop Allen Drive
Cambridge, DC 02139
617–821–6006
Email: eric@zimmercitronclarke.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathleen Foley**
ZIMMER, CITRON & CLARKE LLP
1629 K Street NW
Suite 300
Washington, DC 20006
240–203–7746
Email: kathleen@zimmercitronclarke.com
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**CITIBANK, N.A.**                             represented by **Kenneth Winn Allen**
                                              KIRKLAND & ELLIS LLP
                                              1301 Pennsylvania Avenue, N.W.
                                              Washington, DC 20004
                                              (202) 389–5000
                                              Fax: (202) 389–5200
                                              Email: winn.allen@kirkland.com
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Saunders Lee McElroy**
                                              KIRKLAND & ELLIS LLP
                                              1301 Pennsylvania Ave, NW
                                              Washington, DC 20004
                                              202–389–3081
                                              Email: saunders.mcelroy@kirkland.com
                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES**                             represented by **Kevin Paul VanLandingham**
**ENVIRONMENTAL PROTECTION**                  U.S. DEPARTMENT OF JUSTICE
**AGENCY**                                    P.O. Box 875, Ben Franklin Station
                                              Washington, DC 20044–0875
                                              (202) 307–1134
                                              Email: kevin.p.vanlandingham@usdoj.gov
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Marcus S Sacks**
                                              DOJ–CIV
                                              Poc Agostinho, Jean
                                              1100 L St., N.W.
                                              8142
                                              Washington, DC 20530
                                              202–307–1104
                                              Email: marcus.s.sacks@usdoj.gov
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**LEE ZELDIN**                                represented by **Kevin Paul VanLandingham**
*in his official capacity as*                 (See above for address)
*ADMINISTRATOR, UNITED STATES*                *LEAD ATTORNEY*
*ENVIRONMENTAL PROTECTION*                    *ATTORNEY TO BE NOTICED*
*AGENCY*

**Marcus S Sacks**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**TAREK FARAG**                              represented by  **TAREK FARAG**
*TERMINATED: 04/15/2025*                                    411 N. Warwick Ave
                                                            Westmont, IL 60559
                                                            (630)709−3965
                                                            PRO SE

| Date Filed | # | Docket Text |
|---|---|---|
| 03/08/2025 | 1 | COMPLAINT against CITIBANK, N.A., UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN ( Filing fee $ 405 receipt number ADCDC−11528517) filed by CLIMATE UNITED FUND. (Attachments: # 1 Civil Cover Sheet, # 2 Summons − CITIBANK, N.A., # 3 Summons − UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, # 4 Summons − LEE ZELDIN, # 5 Summons − ATTORNEY GENERAL PAMELA BONDI, # 6 Summons − US ATTORNEY GENERAL EDWARD R. MARTIN, JR.)(Unikowsky, Adam) (Entered: 03/08/2025) |
| 03/10/2025 | 2 | MOTION for Temporary Restraining Order by CLIMATE UNITED FUND. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Elizabeth Bafford in Support, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Proposed Order)(Unikowsky, Adam) Modified docket text on 3/10/2025 (mg). (Entered: 03/10/2025) |
| 03/10/2025 | 3 | ENTERED IN ERROR.....LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by CLIMATE UNITED FUND (Unikowsky, Adam) Modified on 3/10/2025 (zsl). (Entered: 03/10/2025) |
| 03/10/2025 |  | Case Assigned to Judge Tanya S. Chutkan. (zsl) (Entered: 03/10/2025) |
| 03/10/2025 | 4 | SUMMONS (5) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zsl) (Entered: 03/10/2025) |
| 03/10/2025 |  | NOTICE OF NEW CASE ERROR regarding 3 LCvR 26.1 Certificate of Disclosure − Corporate Affiliations/Financial Interests. The following error(s) need correction: Blank/Incomplete/Missing form. Form filed as fillable PDF. Please file form in a non−fillable PDF format. (zsl) (Entered: 03/10/2025) |
| 03/10/2025 | 5 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by CLIMATE UNITED FUND (Unikowsky, Adam) (Entered: 03/10/2025) |
| 03/10/2025 |  | MINUTE ORDER: The parties are hereby ORDERED to appear for an in−person hearing on the 2 Motion for Temporary Restraining Order on March 12, 2025, at 4:00 PM in Courtroom 9 before Judge Tanya S. Chutkan. Upon consideration of the parties' proposed briefing schedule, it is further ORDERED that Defendants' Reply is due on March 12, 2025, at 12:00 PM. Plaintiff shall notify counsel for Defendants of the contents of this Minute Order. Signed by Judge Tanya S. Chutkan on 3/10/2025. (zcll) |

| | | |
|---|---|---|
| | | (Entered: 03/10/2025) |
| 03/10/2025 | | MINUTE ORDER: The court will provide access for the public to telephonically attend the hearing scheduled for March 12, 2025, at 4:00 PM. The hearing can be accessed by dialing the Toll–Free Number: 833–990–9400 (Meeting ID: 493633106). It is hereby ORDERED that the attendees using the public access telephone line shall adhere to the following: persons remotely accessing court proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting any court proceedings (including those held by telephone or videoconference). Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the presiding Judge. Signed by Judge Tanya S. Chutkan on 3/10/2025. (zcll) (Entered: 03/10/2025) |
| 03/10/2025 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Gabriel K. Gillett, Filing fee $ 100, receipt number ADCDC–11531560. Fee Status: Fee Paid. by CLIMATE UNITED FUND. (Attachments: # 1 Declaration in Support, # 2 Certificate of Good Standing, # 3 Proposed Order)(Unikowsky, Adam) (Entered: 03/10/2025) |
| 03/10/2025 | 7 | NOTICE of Appearance by Kenneth Winn Allen on behalf of CITIBANK, N.A. (Allen, Kenneth) (Entered: 03/10/2025) |
| 03/10/2025 | 8 | NOTICE of Appearance by Saunders Lee McElroy on behalf of CITIBANK, N.A. (McElroy, Saunders) (Entered: 03/10/2025) |
| 03/10/2025 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 7 NOTICE of Appearance by Kenneth Winn Allen on behalf of CITIBANK, N.A. (Allen, Kenneth).<br><br>Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney–renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 3/17/2025. (zhcn) Modified on 3/12/2025 (zhcn). (Entered: 03/11/2025) |
| 03/11/2025 | 9 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Allison N. Douglis, Filing fee $ 100, receipt number ADCDC–11534156. Fee Status: Fee Paid. by CLIMATE UNITED FUND. (Attachments: # 1 Declaration in Support, # 2 Certificate of Good Standing, # 3 Proposed Order)(Unikowsky, Adam) (Entered: 03/11/2025) |
| 03/11/2025 | 10 | NOTICE of Appearance by Marcus S Sacks on behalf of UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN (Sacks, Marcus) (Entered: 03/11/2025) |
| 03/11/2025 | 11 | NOTICE of Appearance by Kevin Paul VanLandingham on behalf of UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN (VanLandingham, Kevin) (Entered: 03/11/2025) |
| 03/11/2025 | 12 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by CITIBANK, N.A. (McElroy, Saunders) (Entered: 03/11/2025) |

| 03/11/2025 | 13 | NOTICE *OF GRANT TERMINATION* by UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN (Attachments: # 1 Exhibit 1)(Sacks, Marcus) (Entered: 03/11/2025) |
|---|---|---|
| 03/11/2025 | | MINUTE ORDER: GRANTING Motions for Leave to Appear Pro Hac Vice as to 6 Gabriel K. Gillett and 9 Allison N. Douglis. Gabriel K. Gillett and Allison N. Douglis are hereby admitted *pro hac vice* to represent Plaintiff Climate United Fund in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Tanya S. Chutkan on 3/11/2025. (lcer) (Entered: 03/11/2025) |
| 03/12/2025 | 14 | Memorandum in opposition to re 2 Motion for TRO, filed by CITIBANK, N.A.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Text of Proposed Order)(Allen, Kenneth) (Entered: 03/12/2025) |
| 03/12/2025 | 15 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CITIBANK, N.A. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order)(Allen, Kenneth) (Entered: 03/12/2025) |
| 03/12/2025 | 16 | Memorandum in opposition to re 2 Motion for TRO, filed by UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Attachments: # 1 Declaration Schindel, # 2 Exhibit Exs. to Schindel Decl.)(VanLandingham, Kevin) (Entered: 03/12/2025) |
| 03/12/2025 | 17 | RESPONSE re 13 Notice (Other) filed by CLIMATE UNITED FUND. (Unikowsky, Adam) (Entered: 03/12/2025) |
| 03/12/2025 | 18 | NOTICE of Appearance by Allison N. Douglis on behalf of CLIMATE UNITED FUND (Douglis, Allison) (Entered: 03/12/2025) |
| 03/12/2025 | 19 | NOTICE of Appearance by David B. Robbins on behalf of CLIMATE UNITED FUND (Robbins, David) (Entered: 03/12/2025) |
| 03/12/2025 | 20 | NOTICE of Appearance by Gabriel K. Gillett on behalf of CLIMATE UNITED FUND (Gillett, Gabriel) (Entered: 03/12/2025) |
| 03/12/2025 | | MINUTE ORDER: Upon consideration of Defendant Citibank's 15 Motion for Leave to File Under Seal, the court GRANTS the motion for the reasons asserted. Signed by Judge Tanya S. Chutkan on 3/12/2025. (lcer) (Entered: 03/12/2025) |
| 03/12/2025 | 21 | SEALED Exhibit re 14 Memorandum in opposition filed by CITIBANK, N.A.. (This document is SEALED and only available to authorized persons.)(zjm) Modified on 3/18/2025 to add docket link (zjm). (Entered: 03/13/2025) |
| 03/12/2025 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Motion Hearing held on 3/12/2025 re 2 MOTION for Temporary Restraining Order filed by CLIMATE UNITED FUND held and concluded. Minute Order forthcoming. Court Reporter Janice Dickman. (ztl) (Entered: 03/13/2025) |
| 03/14/2025 | 22 | TRANSCRIPT OF PROCEEDINGS before Judge Tanya S. Chutkan held on March 12, 2025; Page Numbers: 1–44. Date of Issuance: March 14, 2025. Court Reporter: Janice Dickman, Telephone number: 202–354–3267, Transcripts may be ordered by submitting the Transcript Order Form |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/4/2025. Redacted Transcript Deadline set for 4/14/2025. Release of Transcript Restriction set for 6/12/2025.(Dickman, Janice) (Entered: 03/14/2025) |
| 03/14/2025 | | MINUTE ORDER: Following the Motion Hearing held on 3/12/2025, it is hereby ORDERED that Plaintiff's request for Leave to Amend its Complaint is due by Monday, March 17, 2025, by 5:00PM EST. It is further ORDERED that by Monday, March 17, 2025, by 5:00PM EST, Federal Defendants shall file a declaration addressing the basis for the grant termination, *see* ECF No. 13 , including the proffer of evidence discussed at the hearing. Signed by Judge Tanya S. Chutkan on 3/14/2025. (lcer) (Entered: 03/14/2025) |
| 03/16/2025 | | MINUTE ORDER: The parties in No. 25–cv–698, No. 25–cv–735, and No. 25–cv–762, are hereby ORDERED to appear for an in–person motion hearing on the 2 Motion for Temporary Restraining Order on March 17, 2025, at 12:00 PM in Courtroom 9 before Judge Tanya S. Chutkan. The court will provide access for the public to telephonically attend the hearing. The hearing can be accessed by dialing the Toll–Free Number: 833–990–9400 (Meeting ID: 493633106). It is hereby ORDERED that the attendees using the public access telephone line shall adhere to the restrictions outlined in the March 10, 2025, Minute Order. Signed by Judge Tanya S. Chutkan on 3/16/2025. (lcer) (Entered: 03/16/2025) |
| 03/17/2025 | 23 | NOTICE of Proposed Order re 2 by CLIMATE UNITED FUND (Attachments: # 1 Proposed Order Granting Temporary Restraining Order)(Unikowsky, Adam) Modified on 3/19/2025 to add docket link (zjm). (Entered: 03/17/2025) |
| 03/17/2025 | 24 | AMENDED COMPLAINT against CITIBANK, N.A., UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN filed by CLIMATE UNITED FUND.(Unikowsky, Adam) (Entered: 03/17/2025) |
| 03/17/2025 | 25 | NOTICE *of Declaration* by UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN (Attachments: # 1 Declaration of Eric Amidon)(VanLandingham, Kevin) (Entered: 03/17/2025) |
| 03/17/2025 | 26 | NOTICE *to the Court* by CLIMATE UNITED FUND (Unikowsky, Adam) (Entered: 03/17/2025) |
| 03/17/2025 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Motion Hearing held on 3/17/2025 re 2 MOTION for Temporary Restraining Order filed by CLIMATE UNITED FUND. Pursuant to Federal Rule of Civil Procedure 42(a), the Court will consolidate the Civil Cases 25–698, 25–735, 25–762. Minute Order Forthcoming. Court Reporter Jeff Hook. (ztl) (Entered: 03/18/2025) |

| 03/18/2025 | 27 | TRANSCRIPT OF MOTION HEARING before Judge Tanya S. Chutkan held on March 17, 2025. Page Numbers: 1 – 45. Date of Issuance: March 18, 2025. Court Reporter: Jeff Hook. Telephone number: 202–354–3373. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/8/2025. Redacted Transcript Deadline set for 4/18/2025. Release of Transcript Restriction set for 6/16/2025.(Hook, Jeff) (Entered: 03/18/2025) |
| --- | --- | --- |
| 03/18/2025 | 28 | MEMORANDUM OPINION re: Plaintiff's 2 Motion for Temporary Restraining Order. Signed by Judge Tanya S. Chutkan on 3/18/2025. (lcer) (Main Document 28 replaced on 3/19/2025) (zsmc). (Entered: 03/18/2025) |
| 03/18/2025 | 29 | ORDER GRANTING in part and DENYING in part Plaintiff's 2 Motion for Temporary Restraining Order. See Order for details. Signed by Judge Tanya S. Chutkan on 3/18/2025. (lcer) (Entered: 03/18/2025) |
| 03/19/2025 | 30 | Joint STATUS REPORT by CLIMATE UNITED FUND. (Unikowsky, Adam) (Entered: 03/19/2025) |
| 03/19/2025 | | MINUTE ORDER: Upon consideration of the parties' 30 Joint Status Report, the court adopts and sets the following deadlines: Plaintiffs shall file their motions for a preliminary injunction by March 21, 2025. Defendants shall file an answer to the motions by March 26, 2025. Plaintiffs shall reply by March 28, 2025. For the reasons stated in the 30 Joint Status Report, Plaintiffs shall file a single consolidated opening brief with a 60–page limit and a single consolidated reply brief with a 30–page limit.<br><br>The court will hold a hearing on Plaintiffs' motions on Wednesday, April 2, 2025, at 12:00 PM in Courtroom 9 before Judge Tanya S. Chutkan. The court will provide access for the public to telephonically attend the hearing. Signed by Judge Tanya S. Chutkan on 3/19/2025. (lcer) (Entered: 03/19/2025) |
| 03/20/2025 | | MINUTE ORDER: The court will provide access for the public to telephonically attend the hearing scheduled for April 2, 2025. The hearing can be accessed by dialing the Toll–Free Number: 833–990–9400 (Meeting ID: 493633106). It is hereby ORDERED that the attendees using the public access telephone line shall adhere to the following: persons remotely accessing court proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting any court proceedings (including those held by telephone or videoconference). Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the presiding Judge. Signed by Judge Tanya S. Chutkan on 3/20/2025. |

| | | |
|---|---|---|
| | | (smc) (Entered: 03/20/2025) |
| 03/20/2025 | | MINUTE ORDER: As noticed in the March 17 hearing, *see* March 17, 2025 Min. Order, the court will consolidate cases 25−cv−698, 25−cv−735, and 25−cv−762 pursuant to Federal Rule of Civil Procedure 42(a). All filings and papers related to the consolidated cases shall be filed in the lead case: 25−cv−698. It is further ORDERED that the parties shall NOT "spread the text" when filing documents in the lead cases. Signed by Judge Tanya S. Chutkan on 3/20/2025. (lcer) Modified on 3/21/2025 (zsmc). (Entered: 03/20/2025) |
| 03/20/2025 | 31 | STATUS REPORT by CITIBANK, N.A.. (Allen, Kenneth) (Entered: 03/20/2025) |
| 03/20/2025 | | Cases Consolidated: The following cases have been consolidated with this case: 25−cv−00762−TSC and 25−cv−00735−TSC pursuant to 03/10/20025 Minute Order. From this date forward, all pleadings shall be filed ONLY in this case. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (zjm) (Entered: 03/20/2025) |
| 03/21/2025 | 32 | NOTICE of Appearance by James Gross on behalf of POWER FORWARD COMMUNITIES, INC. (Gross, James) (Entered: 03/21/2025) |
| 03/21/2025 | 33 | MOTION for Preliminary Injunction by CLIMATE UNITED FUND. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Elizabeth Bafford, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Declaration of Vincent Levy, # 15 Exhibit A, # 16 Exhibit B, # 17 Exhibit C, # 18 Exhibit D, # 19 Exhibit E, # 20 Exhibit F, # 21 Exhibit G, # 22 Exhibit H, # 23 Exhibit I, # 24 Exhibit J, # 25 Declaration of Stephen Brown, # 26 Declaration of Jessica Buendia, # 27 Declaration of Eli Hopson, # 28 Declaration of Richard Kauffman, # 29 Declaration of Shaun Donovan, # 30 Declaration of Ari Matusiak, # 31 Declaration of Timothy J. Mayopoulos, # 32 Declaration of John Moon, # 33 Text of Proposed Order)(Unikowsky, Adam) (Entered: 03/21/2025) |
| 03/24/2025 | 34 | NOTICE of Appearance by Kevin Chen on behalf of POWER FORWARD COMMUNITIES, INC. (Chen, Kevin) (Entered: 03/24/2025) |
| 03/24/2025 | 35 | NOTICE of Appearance by Beth C. Neitzel on behalf of POWER FORWARD COMMUNITIES, INC. (Neitzel, Beth) (Entered: 03/24/2025) |
| 03/24/2025 | 36 | NOTICE of Appearance by Jack C. Smith on behalf of POWER FORWARD COMMUNITIES, INC. (Smith, Jack) (Entered: 03/24/2025) |
| 03/24/2025 | 37 | NOTICE of Appearance by Vincent Levy on behalf of COALITION FOR GREEN CAPITAL (Levy, Vincent) (Entered: 03/24/2025) |
| 03/25/2025 | 38 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Noah C. Shaw, Filing fee $ 100, receipt number ADCDC−11565216. Fee Status: Fee Paid. by POWER FORWARD COMMUNITIES, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Neitzel, Beth) (Entered: 03/25/2025) |
| 03/25/2025 | | Cases Consolidated: The following cases have been consolidated with this case: 25−cv−00820−TSC. From this date forward, all pleadings shall be filed ONLY in this case. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (zjm) (Entered: 03/25/2025) |
| 03/26/2025 | | |

|  |  | NOTICE OF ERROR regarding 38 MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Noah C. Shaw, Filing fee $ 100, receipt number ADCDC–11565216. Fee Status: Fee Paid.. The following error(s) need correction: Pro Hac Vice motion must be accompanied by a Certificate of Good Standing issued within the last 30 days (LCvR 83.2(c)(2)). Please file certificate as an Errata (zjm) (Entered: 03/26/2025) |
|---|---|---|
| 03/26/2025 | 39 | ERRATA *Certificate of Good Standing* by POWER FORWARD COMMUNITIES, INC. re 38 Motion for Leave to Appear Pro Hac Vice,. (Attachments: # 1 Errata Certificate of Good Standing)(Neitzel, Beth) (Entered: 03/26/2025) |
| 03/26/2025 | 40 | NOTICE of Appearance by Jason Elliott James on behalf of ILLINOIS FINANCE AUTHORITY (James, Jason) (Entered: 03/26/2025) |
| 03/26/2025 | 41 | NOTICE of Appearance by Emma Akrawi on behalf of EFFICIENCY MAINE TRUST (Akrawi, Emma) (Entered: 03/26/2025) |
| 03/26/2025 | 42 | NOTICE of Appearance by Scott William Boak on behalf of EFFICIENCY MAINE TRUST (Boak, Scott) (Entered: 03/26/2025) |
| 03/26/2025 | 43 | NOTICE of Appearance by Catherine Rios–Keating on behalf of MINNESOTA CLIMATE INNOVATION FINANCE AUTHORITY (Rios–Keating, Catherine) (Entered: 03/26/2025) |
| 03/26/2025 | 44 | NOTICE of Appearance by Meghan Strong on behalf of CALIFORNIA INFRASTRUCTURE AND ECONOMIC DEVELOPMENT BANK Associated Cases: 1:25–cv–00698–TSC, 1:25–cv–00820–TSC(Strong, Meghan) (Entered: 03/26/2025) |
| 03/26/2025 | 45 | NOTICE of Appearance by Oliver Larson on behalf of MINNESOTA CLIMATE INNOVATION FINANCE AUTHORITY (Larson, Oliver) (Entered: 03/26/2025) |
| 03/26/2025 | 46 | AFFIDAVIT of Mailing re 1 COMPLAINT by MINNESOTA CLIMATE INNOVATION FINANCE AUTHORITY *RE SUMMONS AND COMPLAINT*. (Attachments: # 1 Certificate of Service)(Rios–Keating, Catherine) Modified on 3/27/2025 to correct event/add docket link (zjm). (Entered: 03/26/2025) |
| 03/26/2025 | 47 | NOTICE of Appearance by Megan Anne Schultz Richards on behalf of CALIFORNIA INFRASTRUCTURE AND ECONOMIC DEVELOPMENT BANK (Richards, Megan) (Entered: 03/26/2025) |
| 03/26/2025 | 48 | RESPONSE re 33 MOTION for Preliminary Injunction filed by CITIBANK, N.A.. (Attachments: # 1 Text of Proposed Order)(Allen, Kenneth) (Entered: 03/26/2025) |
| 03/26/2025 | 49 | Memorandum in opposition to re 33 Motion for Preliminary Injunction,,, filed by UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Attachments: # 1 Declaration Declaration of Dan Coogan, # 2 Exhibit Exhibits to Coogan Declaration, # 3 Declaration Declaration of Eric Amidon, # 4 Exhibit Exhibits to Amidon Declaration, # 5 Declaration Declaration of Gregg Treml, # 6 Declaration Declaration of Kevin Bailey, # 7 Exhibit Exhibits to Bailey Declaration)(Sacks, Marcus) (Entered: 03/26/2025) |
| 03/27/2025 | 50 | NOTICE of Appearance by Peter Nathaniel Surdo on behalf of MINNESOTA CLIMATE INNOVATION FINANCE AUTHORITY (Surdo, Peter) (Entered: 03/27/2025) |
| 03/27/2025 | 51 | NOTICE of Appearance by Kevin D. Benish on behalf of COALITION FOR GREEN CAPITAL (Benish, Kevin) (Entered: 03/27/2025) |

| 03/28/2025 | 52 | MOTION for Temporary Restraining Order – – *Extending Existing Temporary Restraining Order,* by COALITION FOR GREEN CAPITAL. (Attachments: # 1 Text of Proposed Order)(Levy, Vincent) (Entered: 03/28/2025) |
| --- | --- | --- |
| 03/28/2025 | 53 | REPLY to opposition to motion re 33 Motion for Preliminary Injunction,,, *in Support* filed by CLIMATE UNITED FUND. (Unikowsky, Adam) (Entered: 03/28/2025) |
| 03/30/2025 | | MINUTE ORDER: GRANTING Motion for Leave to Appear Pro Hac Vice as to 38 Noah C. Shaw. Noah C. Shaw is hereby admitted *pro hac vice* to represent Plaintiff Power Forward Communities, Inc. in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Tanya S. Chutkan on 3/30/2025. (lcer) (Entered: 03/30/2025) |
| 03/31/2025 | 54 | Unopposed MOTION for Extension of Time to File Answer by CITIBANK, N.A.. (Allen, Kenneth) (Entered: 03/31/2025) |
| 03/31/2025 | 55 | RESPONSE re 33 MOTION for Preliminary Injunction by CITIBANK, N.A.. (Attachments: # 1 Text of Proposed Order)(Allen, Kenneth) Modified on 4/2/2025 to correct event/docket text (zjm). (Entered: 03/31/2025) |
| 03/31/2025 | 56 | Memorandum in opposition to re 33 Motion for Preliminary Injunction,,, *(Opposition to Subgrantee Plaintiffs' Motion for Preliminary Injunction)* filed by UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (VanLandingham, Kevin) (Entered: 03/31/2025) |
| 03/31/2025 | 57 | ORDER granting Plaintiffs' 52 Motion to Extend Temporary Restraining Order. Signed by Judge Tanya S. Chutkan on 3/31/2025. (lcer) (Entered: 03/31/2025) |
| 04/01/2025 | 58 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Simon A. de Carvalho, Filing fee $ 100, receipt number ADCDC–11581763. Fee Status: Fee Paid. by CLIMATE UNITED FUND. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Unikowsky, Adam) (Entered: 04/01/2025) |
| 04/01/2025 | 59 | NOTICE of Appearance by Noah C. Shaw on behalf of POWER FORWARD COMMUNITIES, INC. (Shaw, Noah) (Entered: 04/01/2025) |
| 04/02/2025 | | MINUTE ORDER: GRANTING Motion for Leave to Appear Pro Hac Vice as to 58 Simon A. de Carvalho. Simon A. de Carvalho is hereby admitted *pro hac vice* to represent Plaintiff Climate United Fund in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Tanya S. Chutkan on 4/2/2025. (lcer) (Entered: 04/02/2025) |
| 04/02/2025 | 60 | NOTICE *of Filing of Supplemental Record Evidence* by COALITION FOR GREEN CAPITAL re 33 Motion for Preliminary Injunction,,, (Attachments: # 1 Exhibit A––Correspondence dated March 28, 2025, # 2 Exhibit B––Correspondence dated March 31, 2025, # 3 Exhibit C––Correspondence dated April 1, 2025)(Levy, Vincent) (Entered: 04/02/2025) |
| 04/02/2025 | 61 | NOTICE of Appearance by Simon De Carvalho on behalf of CLIMATE UNITED FUND (De Carvalho, Simon) (Entered: 04/02/2025) |
| 04/02/2025 | | MINUTE ORDER: GRANTING Defendants' 54 Joint Unopposed Motion to Extend Time. Defendants' responses to Plaintiffs' complaints are due by May 23, 2025. Signed by Judge Tanya S. Chutkan on 4/2/2025. (lcer) Modified on 4/2/2025 to edit language |

| | | |
|---|---|---|
| | | (zcll). (Entered: 04/02/2025) |
| 04/02/2025 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Motion Hearing held on 4/2/2025 re 33 MOTION for Preliminary Injunction filed by CLIMATE UNITED FUND. The Court takes the arguments under advisement. Ruling forthcoming. (Court Reporter Bryan Wayne.) (zcll) (Entered: 04/02/2025) |
| 04/02/2025 | 62 | TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING before Judge Tanya S. Chutkan held on April 2, 2025; Page Numbers: 1–108. Date of Issuance: 4/2/2025. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/23/2025. Redacted Transcript Deadline set for 5/3/2025. Release of Transcript Restriction set for 7/1/2025.(Wayne, Bryan) (Entered: 04/02/2025) |
| 04/04/2025 | 63 | NOTICE OF SUPPLEMENTAL AUTHORITY by UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN (Attachments: # 1 Exhibit Order, Dept. of Ed v. Cal. (Sup. Ct.))(VanLandingham, Kevin) (Entered: 04/04/2025) |
| 04/05/2025 | 64 | RESPONSE re 63 NOTICE OF SUPPLEMENTAL AUTHORITY *regarding Dept of Education v. California (U.S. Apr. 4, 2025)* filed by COALITION FOR GREEN CAPITAL. (Levy, Vincent) (Entered: 04/05/2025) |
| 04/07/2025 | 65 | RESPONSE re 64 Response to Document filed by CITIBANK, N.A.. (Allen, Kenneth) (Entered: 04/07/2025) |
| 04/07/2025 | | MINUTE ORDER: Given EPA Defendants' 63 Notice of Supplemental Authority, Plaintiffs' 64 Response, and Defendant Citibank's 65 Response, as well as the recent developments discussed in the filings, it is hereby ORDERED that the parties shall confer and file a joint status report by 9:00PM EST tonight stating their positions on a brief extension of the temporary restraining order –– to April 15, 2025 –– for the court to consider the new filings. Signed by Tanya S. Chutkan on 4/7/2025. (lcer) (Entered: 04/07/2025) |
| 04/07/2025 | 66 | RESPONSE re 63 NOTICE OF SUPPLEMENTAL AUTHORITY filed by CALIFORNIA INFRASTRUCTURE AND ECONOMIC DEVELOPMENT BANK. (Strong, Meghan) (Entered: 04/07/2025) |
| 04/07/2025 | 67 | Joint STATUS REPORT by COALITION FOR GREEN CAPITAL. (Levy, Vincent) (Entered: 04/07/2025) |

| 04/08/2025 | 68 | NOTICE of Appearance by Tanner Lockhead on behalf of CLIMATE UNITED FUND (Lockhead, Tanner) (Entered: 04/08/2025) |
|---|---|---|
| 04/08/2025 | 69 | NOTICE of Appearance by Kathryn L. Wynbrandt on behalf of CLIMATE UNITED FUND (Wynbrandt, Kathryn) (Entered: 04/08/2025) |
| 04/08/2025 | 70 | ORDER extending 29 Temporary Restraining Order to April 15, 2025. See Order for details. Signed by Judge Tanya S. Chutkan on 4/8/2025. (lcer) (Entered: 04/08/2025) |
| 04/09/2025 | 71 | REPLY re 63 NOTICE OF SUPPLEMENTAL AUTHORITY . *(Reply to Plaintiffs' Responses to U.S. Notice of Supplemental Authority)* filed by UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Attachments: # 1 Exhibit A)(VanLandingham, Kevin) Modified on 4/11/2025 to correct docket link (zjm). (Entered: 04/09/2025) |
| 04/09/2025 | 72 | MOTION to Intervene by TAREK FARAG. (zjm) (Main Document 72 replaced on 4/15/2025) (zjm). (Entered: 04/11/2025) |
| 04/11/2025 | 73 | NOTICE of Appearance by Theodore A.B. McCombs on behalf of CALIFORNIA INFRASTRUCTURE AND ECONOMIC DEVELOPMENT BANK (McCombs, Theodore) (Entered: 04/11/2025) |
| 04/14/2025 | 74 | Memorandum in opposition to re 72 Motion to Intervene *STATE GREEN BANK PLAINTIFFS' OPPOSITION TO TAREK FARAG'S MOTION TO INTERVENE* filed by CALIFORNIA INFRASTRUCTURE AND ECONOMIC DEVELOPMENT BANK, EFFICIENCY MAINE TRUST, ILLINOIS FINANCE AUTHORITY, MINNESOTA CLIMATE INNOVATION FINANCE AUTHORITY. (Richards, Megan) (Entered: 04/14/2025) |
| 04/15/2025 | 75 | Emergency MOTION to Stay *Pending Appeal (Contingent)* by UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Attachments: # 1 Text of Proposed Order, # 2 Declaration, # 3 Exhibit)(Sacks, Marcus) (Entered: 04/15/2025) |
| 04/15/2025 |  | MINUTE ORDER: Given Federal Defendant's 75 Contingent Emergency Motion for Stay Pending Appeal, Plaintiffs are hereby ORDERED to file a joint response or their respective responses to Defendant's Motion no later than today, April 15, 2025, at 7:00PM EST. FURTHER, the court is considering extending the 29 Temporary Restraining Order by one day, until April 16, 2025, to consider the 75 Contingent Emergency Motion. If any party objects to the one–day extension, the party shall submit a report (or a joint status report with any other objecting party, to the extent possible) stating its objection by today, April 15, 2025, at 6:00PM EST. (lcer) (Entered: 04/15/2025) |
| 04/15/2025 |  | Cases Consolidated. The following cases have been consolidated with this case: 25–cv–00938–TSC and 25–cv–00948–TSC. From this date forward, all pleadings shall be filed ONLY in this case. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (zjm) (Entered: 04/15/2025) |
| 04/15/2025 | 76 | STATUS REPORT by UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Sacks, Marcus) (Entered: 04/15/2025) |
| 04/15/2025 | 77 | RESPONSE re 75 Emergency MOTION to Stay *Pending Appeal (Contingent)* filed by CALIFORNIA INFRASTRUCTURE AND ECONOMIC DEVELOPMENT BANK. (Strong, Meghan) (Entered: 04/15/2025) |

| 04/15/2025 | 78 | Memorandum in opposition to re 75 Motion to Stay filed by JUSTICE CLIMATE FUND. (Attachments: # 1 Exhibit A)(Citron, Eric) (Entered: 04/15/2025) |
|---|---|---|
| 04/15/2025 | 79 | RESPONSE re 75 Emergency MOTION to Stay *Pending Appeal (Contingent)* filed by COALITION FOR GREEN CAPITAL. (Attachments: # 1 Bafford Declaration, # 2 Exhibit A)(Levy, Vincent) (Entered: 04/15/2025) |
| 04/15/2025 | | MINUTE ORDER: DENYING 72 Motion to Intervene as a Defendant. Movant has not made a showing that he satisfies the requirements to intervene as of right under Fed. R. Civ. P. 24(a) because he (1) is not given an unconditional right to intervene by any federal statute, and (2) does not claim an interest relating to any property of transaction that is the subject of the action and is not so situated that disposing of the action may as a practical matter impair or impede his ability to protect that interest. The Court will not exercise its discretion to grant permissive intervention under Rule 24(b)(1) because movant does not have a claim or defense that shares with the main action a common question of law or fact. The Clerk of the Court shall send a copy of this Minute Order to *pro se* Movant. Signed by Judge Tanya S. Chutkan on 4/15/2025. (lcer) (Entered: 04/15/2025) |
| 04/15/2025 | 80 | ORDER GRANTING Plaintiffs' 33 Motion for Preliminary Injunction and DENYING EPA Defendant's 75 Contingent Emergency Motion for Stay Pending Appeal. See Order for details. Memorandum Opinion forthcoming. Signed by Judge Tanya S. Chutkan on 4/15/2025. (lcer) (Entered: 04/15/2025) |
| 04/15/2025 | 85 | Amended MOTION to Intervene by TAREK FARAG. (znmw) (Entered: 04/16/2025) |
| 04/16/2025 | 81 | NOTICE OF APPEAL TO DC CIRCUIT COURT by UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. Fee Status: No Fee Paid. Parties have been notified. (Sacks, Marcus) (Entered: 04/16/2025) |
| 04/16/2025 | 82 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 81 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 04/16/2025) |
| 04/16/2025 | 83 | NOTICE of Appearance by Kathleen Foley on behalf of JUSTICE CLIMATE FUND (Foley, Kathleen) (Entered: 04/16/2025) |
| 04/16/2025 | | USCA Case Number 25−5122 for 81 Notice of Appeal to DC Circuit Court filed by LEE ZELDIN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY. (znmw) (Entered: 04/16/2025) |
| 04/16/2025 | 84 | NOTICE of Appearance by David Zimmer on behalf of JUSTICE CLIMATE FUND (Zimmer, David) (Entered: 04/16/2025) |
| 04/16/2025 | 86 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 80 Order on Motion for Preliminary Injunction,, Order on Motion to Stay,, Set/Reset Deadlines, by CITIBANK, N.A.. Filing fee $ 605, receipt number ADCDC−11621988. Fee Status: Fee Paid. Parties have been notified. (Allen, Kenneth) (Entered: 04/16/2025) |
| 04/16/2025 | 87 | STATUS REPORT *EPA Defendants' Status Report* by UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Sacks, Marcus) (Entered: 04/16/2025) |
| 04/16/2025 | 88 | STATUS REPORT by CITIBANK, N.A.. (Allen, Kenneth) (Entered: 04/16/2025) |

| 04/16/2025 | 89 | MEMORANDUM OPINION re: Plaintiff's 33 Motion for Preliminary Injunction. Signed by Judge Tanya S. Chutkan on 4/16/2025. (lcer) (Entered: 04/16/2025) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Climate United Fund**, <br><br> Plaintiff, <br><br> v. <br><br> **Citibank, N.A., et al.**, <br><br> Defendants. | **Civil Action No. 25-cv-698 (TSC)** <br> **Civil Action No. 25-cv-735 (TSC)** <br> **Civil Action No. 25-cv-762 (TSC)** <br> **Civil Action No. 25-cv-820 (TSC)** <br> **Civil Action No. 25-cv-938 (TSC)** <br> **Civil Action No. 25-cv-948 (TSC)** <br> **(Consolidated Cases)** |

## DEFENDANT CITIBANK, N.A.'S NOTICE OF APPEAL

Pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Defendant, Citibank, N.A., hereby appeals to the United States Court of Appeals for the District Court of Columbia Circuit from the Preliminary Injunction (ECF 80) entered in these consolidated cases on April 15, 2025, as well as from all other interlocutory orders merged into the preliminary injunction.

Dated:  April 16, 2025

Respectfully submitted,

By: _/s/ K. Winn Allen_

K. Winn Allen, P.C.
Saunders McElroy
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: 202.389.5078
winn.allen@kirkland.com
saunders.mcelroy@kirkland.com

***Counsel for Defendant Citibank, N.A.***

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 16th day of April 2025, I caused copies of the

foregoing to be served via the Court's CM/ECF system.


*/s/ K. Winn Allen*
K. Winn Allen, P.C.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **CLIMATE UNITED FUND**<br><br>Plaintiff,<br><br>v.<br><br>**CITIBANK, N.A.**, *et al.*<br><br>Defendants. | Civil Action No. 25-cv-698 (TSC)<br>Civil Action No. 25-cv-735 (TSC)<br>Civil Action No. 25-cv-762 (TSC)<br>Civil Action No. 25-cv-820 (TSC)<br>Civil Action No. 25-cv-938 (TSC)<br>Civil Action No. 25-cv-948 (TSC)<br>(Consolidated Cases) |

## **ORDER**

For the reasons set forth in the forthcoming Memorandum Opinion, Plaintiffs' Motion for Preliminary Injunction, ECF No. 33, is **GRANTED**.  It is further **ORDERED** that EPA Defendants' Contingent Motion for Stay Pending Appeal, ECF No. 75, is **DENIED** without prejudice.[1]  It is further

**ORDERED** that Defendants the U.S. Environmental Protection Agency ("EPA"), Administrator Lee Zeldin, in his official capacity as Administrator of EPA, Deputy Administrator W.C. McIntosh, in his official capacity as Acting Deputy Administrator of EPA, (collectively, "EPA Defendants"), and others in active concert or participation therewith, are **ENJOINED** from effectuating EPA's March 11, 2025 "Notice of Termination"; it is further

---

[1] EPA Defendants filed their motion prematurely, filing a "contingent" motion before the court ruled on the pending motions for preliminary injunction.  ECF No. 75.  If after reviewing the court's Order and forthcoming Memorandum Opinion, EPA Defendants believe that a stay pending appeal is warranted, they may make a request consistent with Federal Rule of Appellate Procedure 8.  In consideration of EPA Defendants' position and Defendant Citibank's silence on the issue, Defendant Citibank is **ORDERED** to refrain from releasing any funding disbursements until **Thursday, April 17, 2025, at 2:00PM EST**.

**ORDERED** that EPA Defendants, and others in active concert or participation therewith, are **ENJOINED** from unlawfully suspending or terminating Plaintiffs' grant awards, including by issuing a Notice of Exclusive Control, effectuating a Notice of Termination, or limiting access to funds in accounts established in connection with Plaintiffs' grants, including funds in accounts established by Plaintiffs' subgrantees, except as permitted by the applicable Account Control Agreement ("ACA"), the grant award, the relevant regulations, and applicable law, including any administrative procedures mandated by the Administrative Procedure Act ("APA"); it is further

**ORDERED** that EPA Defendants, and others in active concert or participation therewith, including officials at the U.S. Department of the Treasury, are **ENJOINED** from directly or indirectly impeding Defendant Citibank or from causing Defendant Citibank to deny, obstruct, delay, or otherwise limit access to funds in accounts established in connection with Plaintiffs' grants, including funds in accounts established by Plaintiffs' subgrantees, except as permitted by the applicable ACA, the grant award, the relevant regulations, and applicable law, including any administrative procedures mandated by the APA; it is further

**ORDERED** that Defendant Citibank is **ENJOINED** from transferring or otherwise moving funds out of accounts established in connection with Plaintiffs' grants, including funds in accounts established by Plaintiffs' subgrantees, except as permitted by the applicable ACA, the grant award, the relevant regulations, and applicable law, including any administrative procedures mandated by the APA; it is further

**ORDERED** that Defendant Citibank must disburse any funds properly incurred before the mid-February suspension of Plaintiffs' funds;

**ORDERED** that the bond requirement of Federal Rule of Civil Procedure 65(c) is waived and that this preliminary injunction is effective upon service; it is further

**ORDERED** that Defendants shall file a status report with the court, within 24 hours of entry of this Order, confirming their compliance with the preliminary injunction; it is further

**ORDERED** that this preliminary injunction remains in effect pending further orders from this Court.

Memorandum Opinion to follow.

Date: April 15, 2025

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge

3

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CLIMATE UNITED FUND**<br><br>Plaintiff,<br><br>v.<br><br>**CITIBANK, N.A.**, *et al.*<br><br>Defendants. | Civil Action No. 25-cv-698 (TSC)<br>Civil Action No. 25-cv-735 (TSC)<br>Civil Action No. 25-cv-762 (TSC)<br>Civil Action No. 25-cv-820 (TSC)<br>Civil Action No. 25-cv-938 (TSC)<br>Civil Action No. 25-cv-948 (TSC)<br>(Consolidated Cases) |

## <u>MEMORANDUM OPINION</u>

Government agencies wield immense authority in areas central to public life. With that power comes the responsibility to act fairly, transparently, and in accordance with the law. When agencies fail to operate within the bounds of the law—whether through breaching agreements, arbitrary decision-making, or ignoring regulations—they erode public trust, materially affect the rights and interests of individuals and organizations, and undermine confidence in the very institutions meant to serve the people. The integrity of government actions depends not only on the decisions made but on the consistent and lawful execution of those decisions.

Plaintiffs Climate United Fund ("Climate United" or "CU"), Coalition for Green Capital ("CGC"), and Power Forward Communities, Inc. ("PFC") are nonprofit financial institutions who, in April 2024, were awarded grant funding by the U.S. Environmental Protection Agency ("EPA") to finance clean technology projects nationwide. Under the National Clean Investment Fund ("NCIF"), Climate United was awarded $6.97 billion, CGC was awarded $5 billion, and PFC was awarded $2 billion. Plaintiffs California Infrastructure and Economic Development Bank ("California IBank"), Efficiency Maine Trust ("Efficiency Maine"), Illinois Finance Authority

1

("Illinois Climate Bank"), and Minnesota Climate Innovation Finance Authority ("MnCIFA") (collectively, "Subgrantee Plaintiffs") are state green banks—public or quasi-public entities that provide crucial financial services to pollution-reducing projects in their states—who are subrecipients under CGC's NCIF grant. Plaintiffs Justice Climate Fund ("JCF") and Inclusiv, Inc. ("Inclusiv") are nonprofit financial institutions who were also awarded EPA grant funding in April 2024, but under the Clean Communities Investment Accelerator fund ("CCIA"). JCF was awarded $940 million and Inclusiv was awarded $1.87 billion.

These grants require Plaintiffs' funds be held at Citibank, N.A. ("Citibank") in their individual bank accounts, according to the parties' respective agreements. Since mid-February 2025, Plaintiffs have attempted to draw on funds from their respective accounts to no avail. For weeks, despite repeated inquiries to Citibank and EPA, Plaintiffs received little to no communication from EPA or Citibank regarding their inability to access their funds. Overnight, billions of dollars appropriated by Congress were frozen. As a result, nationwide projects were halted, workplans were disrupted, and millions of dollars in approved transactions with committed partners could not be disbursed.

After weeks of no communication, Plaintiffs filed this case against Defendants, and then finally received a response the day before a TRO hearing in this case—in near identical notices, EPA terminated their grants, effectively dismantling the entirety of the NCIF and CCIA grant programs. Plaintiffs allege that Defendants' actions violate several statutes and regulations, the U.S. Constitution, and the Administrative Procedure Act ("APA"), and they seek to extend this court's TRO order into a preliminary injunction pending a final decision on the merits. For the reasons discussed below, Plaintiffs' motion for a preliminary injunction will be **GRANTED**.

# I.    BACKGROUND

## A. Statutory Background: The Inflation Reduction Act and EPA's Greenhouse Gas Reduction Fund

The court discussed some of the background of this case in its Memorandum Opinion granting a TRO, which it incorporates here. *See Climate United Fund v. Citibank, N.A.*, ___ F. Supp. 3d ___, No. 25-cv-698, -735, -762, 2025 WL 842360 (D.D.C. Mar. 18, 2025).

In 2022, Congress enacted the Inflation Reduction Act of 2022 ("IRA"). Pub. L. No. 117-169, 136 Stat. 1818. The IRA amended the Clean Air Act to authorize EPA to make competitive grants under the Greenhouse Gas Reduction Fund ("GGRF"), which appropriated approximately $27 billion to the EPA Administrator to make grants available to eligible recipients for various clean energy climate projects. *See* 42 U.S.C. § 7434(a)(1)–(3).

Upon enactment of the IRA, EPA launched a stakeholder engagement strategy to help shape implementation of the GGRF. Cong. Rsch. Serv., IF12387, EPA's Greenhouse Gas Reduction Fund, https://www.congress.gov/crs-product/IF12387 (updated May 21, 2024). Among other things, EPA held multiple listening sessions for members of the public and stakeholder groups, "published a Request for Information seeking public comment on core design aspects of the GGRF," and sought advice from the agency's Environmental Financial Advisory Board. *Id.*

Finally, in June and July 2023, EPA launched three grant programs under the GGRF: the National Clean Investment Fund ("NCIF"), Clean Communities Investment Accelerator ("CCIA"), and Solar for All. *Id.* Together, NCIF and CCIA were built to work in tandem to "not only deploy clean energy and combat the climate crisis but also improve health outcomes, lower energy costs, and create high-quality jobs for Americans." Pls.' Consolidated Mot. for Prelim. Inj. Mot. ("PI Mot."), Ex. 1 at 4, ECF No. 33-3.

3

**B. Plaintiffs Apply for and Win EPA Grants**

In October 2023, Plaintiffs applied for grant funding for GGRF programs, which included a robust set of application requirements and evaluation criteria. *Review and Selection Process*, EPA, https://www.epa.gov/greenhouse-gas-reduction-fund/review-and-selection-process (last updated Aug. 16, 2024). Applicants were required to submit information that encompassed "organizational and governing documents; resumes of board members and senior management; legal and compliance risk management policies and procedures; financial statements; workplans for the first year of program implementations, and budget narratives." *Id.* On April 4, 2024, EPA publicly announced that Plaintiffs had won grant funding. EPA Prelim. Inj. Opp'n ("EPA PI Opp'n"), Ex. A at 3, ECF 49-2. Under the NCIF, Climate United was awarded $6.97 billion, CGC was awarded $5 billion, and PFC was awarded $2 billion, and under the CCIA, JCF was awarded $940 million and Inclusiv was awarded $1.87 billion. *Id.* Subgrantee Plaintiffs are subrecipients under CGC's NCIF grant. *California IBank v. Citibank, et al.*, No. 25-cv-820, Prelim. Inj. Mot. at 9, ECF No. 17.

**C. Award Agreements and Relevant Regulations**

Plaintiffs' awards were memorialized in grant agreements between Plaintiffs and EPA.[1] PI Mot., Ex. 3, EPA Grant Agreement, Dec. Amend., ECF No. 33-5. Under the grant agreements, EPA may only terminate an award under three circumstances:

> (1) If a grant recipient engages in "substantial" noncompliance such that "effective performance" is "Materially Impaired." Performance is deemed "Materially

---

[1] "Given that the GGRF cases contain common questions of law and fact," including that EPA "issued the GGRF grants under 42 U.S.C. § 7434 at similar times utilizing similar grant agreements with common terms," Citibank is the designated financial agent for these awards, and "EPA sent termination notices regarding the GGRF grants agreements at similar times upon similar bases" to Plaintiffs, *see* Joint Mot. to Consolidate at 1, *Just. Climate Fund v. EPA*, No. 25-cv-938, ECF No. 13, for simplicity, the court refers to Climate United's exhibits when discussing common issues.

4

Impaired" if: (1) EPA issues a "written determination and finding . . . that the Recipient has failed to achieve sufficient progress in accordance with the Sufficient Progress clause;" and (2) EPA determines in its sole discretion that a "corrective action plan" would remedy the issue and EPA issues a "separate written determination and finding" that the Recipient "has not materially addressed its failure."

(2) If a Recipient engages in "material misrepresentation of eligibility status;" or

(3) For "Waste, Fraud, or Abuse," which is defined with reference to EPA General Terms and Conditions and 2 C.F.R. § 200.113. Termination on these grounds requires "credible evidence of the commission of a violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 of the United States Code or a violation of the civil False Claims Act 31 U.S.C. §§ 3729-3733."

*see* PI Mot. at 8–9, 12, 41, ECF No. 33-1.

The Uniform Grant Guidance, 2 C.F.R. § 200, applies to federal agencies that make federal awards to non-federal and other entities. These regulations lay out a host of requirements for federal grants, including the procedural steps an agency must take before it can suspend (*id.* § 200.339) or terminate a grant (*id.* § 200.340). *See also id.* §§ 200.341, 200.342, and 200.305.

For example, EPA must provide written notice of termination that includes "the reasons for termination, the effective date, and the portion of the Federal award to be terminated," and it must "clearly and unambiguously specify all termination provisions in the terms and conditions of the Federal award." *Id.* § 200.341(a)-(b). On April 22, 2024, the Office of Management and Budget ("OMB") finalized several revisions to these regulations, one of which included amending 2 C.F.R. § 200.340 to permit termination of federal grants when inconsistent with agency priorities *only* when that basis is stated in the grant's terms and conditions. Guidance for Federal Assistance, 89 Fed. Reg. 30,046, 30,089 (Apr. 22, 2024).

In July 2024, EPA decided to apply the revised version of 2 C.F.R. § 200.340, consistent with OMB guidance, to the grant agreements in this case. *See* 89 Fed. Reg. at 55,263. Under 2 C.F.R. § 200.340, EPA may terminate a federal award "if the recipient or subrecipient fails to

comply with the terms and conditions of the Federal award," or "pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." *Id.* § 200.340(a)(1), (4).

Also relevant here, under *id.* § 200.305(b)(6)(i)(ii), "[p]ayments for allowable costs" pursuant to the grant agreements must not be withheld at any time during the period of performance, unless required by federal statute, regulations, or if (i) the recipient or subrecipient has failed to comply with the terms and conditions of the federal award, or (ii) the recipient or subrecipient is delinquent in a debt to the U.S. as defined in OMB Circular A-129. *Id.* (formatting modified). Under these conditions, the federal agency "may, after providing reasonable notice, withhold payments to the recipient or subrecipient for financial obligations incurred after a specified date until the conditions are corrected or the debt is repaid to Federal Government." *Id.* (b)(6)(ii).

### D. The Account Control Agreements and Financial Agency Agreements

Under the grant agreements, Plaintiffs' funds must be held at Citibank under the respective Financial Agency Agreements ("FAA") between Citibank and the U.S. Treasury Department ("Treasury"), and respective Account Control Agreements ("ACA") between Citibank, EPA, and Plaintiffs. PI Mot. at 10–11.

Under the ACA, Citibank is "designated and authorized to act as a financial agent of the United States" under the authority of Treasury, and it administers and disburses the funds provided under the grant programs. *See* PI Mot., Ex. 8 at 3, Account Control Agreement, ECF No. 33-10. Citibank must "comply with all instructions, notifications, and entitlement orders the Bank receives directing the disposition of funds and financial assets" and must release Plaintiffs' funds at their request, unless EPA—the "Secured Party" to the agreement—issues a "Notice of Exclusive

Control stating that it is exercising its right to exclusive control over an Account." *See* Citibank Opp'n to TRO Mot., FAA ("FAA") Ex. 1 at 25, ECF No. 14-1 (SEALED). Under the FAA, Citibank acts as a financial agent of the United States and provides banking and financial services related to these grant programs. *Id.* at 1.

Pursuant to the agreements discussed above, Plaintiffs would periodically request disbursement of their funds through Citibank. But beginning in mid-February 2025, Citibank stopped disbursing any funds after receiving a letter from the FBI "recommending" that Citibank freeze assets related to Plaintiffs' grants. Citibank Opp'n to TRO Mot., Ex. 5 at 2–6, ECF No. 14-5. Plaintiffs followed up with emails, letters, and voicemails to Citibank, with no response. And as discussed in the court's TRO opinion, EPA did not respond to Plaintiffs' inquiries. Plaintiffs were therefore left with no information as to why they could not access their funds. 2025 WL 842360, at *1.

Finally, on March 4, 2025, EPA sent Plaintiffs identical information requests. *See, e.g.*, EPA PI Opp'n, Ex. D, Compliance and Oversight Review of EPA Greenhouse Gas Reduction Fund Letter from EPA to CU, ECF No. 49-2. The letters expressed concerns over the oversight mechanisms of the grant award program and stated that EPA "will work with [Treasury] and [Citibank] to establish and implement additional account controls consistent with prudent operational standards pursuant to the [FAA]." *Id.* They instructed Plaintiffs to submit requested responses and documents to a list of 25 requests by March 28, 2025. *See id.*

That same day, Treasury instructed Citibank not to disburse any GGRF funds through March 9, 2025, stating it had been informed of EPA's "concerns regarding potential fraud and/or conflicts of interest related to the Greenhouse Gas Reduction Fund," and that "EPA anticipates developing additional account controls." Citibank Opp'n to TRO Mot., Ex. 7, ECF No. 14-7. And

on March 10, 2025, EPA and Treasury directed Citibank to continue to refrain from processing payments. *Id.*, Ex. 2, ECF No. 14-2.

**E.  EPA Administrator and Funds Pause**

On January 29, 2025, the Senate confirmed Lee Zeldin as EPA Administrator.  Decl. of Eric Amidon ("Amidon Decl.") ¶ 3, ECF No. 49-3.  Almost immediately, and throughout February and March 2025, Administrator Zeldin began to publicly express his desire to take control of the funds disbursed under the IRA and to terminate the GGRF grants.  *See* PI Mot. at 1–3; 15–19.  On February 12, 2025, he publicly announced EPA's intention to do so, stating that the FAA with Citibank "needs to be instantly terminated," that Citibank "must immediately return the funding," and that EPA is "not going to rest" until it recovered the grant funds.  *Id.*, Ex. 7 at 4–5, ECF No. 33-9.

On February 13, 2025, Administrator Zeldin publicly announced that "roughly $20 billion" of tax dollars were found "parked at a financial institution," and in a video, called for the immediate cancellation of the FAA, stating that "the American public deserves a more transparent and accountable government."  PI Mot. at 35; Administrator Zeldin Announces that Billions of Dollars Worth of "Gold Bars" Have Been Located at Outside Financial Institution, EPA, https://www.epa.gov/newsreleases/administrator-zeldin-announces-billions-dollars-worth-gold-bars-have-been-located (Feb. 13, 2025).

On February 23, 2025, Administrator Zeldin discussed the GGRF funds on a television program, stating that the agency was working to "re-establish accountability and oversight" over the grant programs, and that the "entire scheme, in [his] opinion, is criminal."  PI Mot., Ex. 7 at 4–5;  @SundayMorningFutures, *X* (Feb. 23, 2025, 11:21 AM), https://x.com/SundayFutures/status/1893697750937505807.  On March 2, 2025, EPA issued a

8

letter to its Office of the Inspector General requesting an investigation into GGRF.  EPA PI Opp'n, Ex. C, ECF No. 49-2.

### F.  Grant Termination Letters

On March 8, 2025, Climate United filed suit and moved for a TRO.  *Climate United Fund v. Citibank, et al.*, No. 1:25-cv-698, ECF Nos. 1 & 2.  The court informed the parties that it was inclined to set a hearing for March 11, 2025, with opposition briefs due that same day.  EPA Defendants "asked for an extension as a professional courtesy," and Climate United agreed.  TRO Mot. Hr'g Tr. 10:06–12 (Mar. 12, 2025), ECF No. 22.  The court scheduled a hearing on the motion for March 12, 2025.  *See* Mar. 10, 2025 Min. Order.

The day before the scheduled TRO hearing, March 11, EPA Defendants sent Plaintiffs identical letters (aside from differences in the addressees and grant award numbers), informing them that EPA was terminating their "grant effective immediately."  *See* PI Mot., Ex. 11 at 1, Termination Letter, ECF No. 33-13.  EPA Defendants stated that the terminations were "based on substantial concerns regarding program integrity, the award process, programmatic fraud, waste, and abuse, and misalignment with the Agency's priorities, which collectively undermine the fundamental goals and statutory objectives of the award."  *Id.* at 1.  The letter instructed Plaintiffs to cease all further program expenditures immediately.

### G.  Procedural Posture

Plaintiffs individually filed suit on various dates throughout March 2025 against EPA Administrator Lee Zeldin, and EPA Acting Deputy Administrator William Charles McIntosh (collectively, "EPA Defendants"), seeking declaratory and injunctive relief.  *See Climate United Fund v. Citibank et al.*, No. 1:25-cv-698, *Coal. for Green Cap. v. Citibank et al.*, No. 1:25-cv-735, *Power Forward Communities, Inc. v. Citibank et al.*, No. 1:25-cv-762, *Cal. Infrastructure & Econ.*

*Dev. Bank, et al. v. Citibank, et al.*, No. 1:25-cv-820, *Justice Climate Fund v. EPA et al.*, No. 1:25-cv-938, and *Inclusiv, Inc. v. EPA et al.*, No. 1:25-cv-948.  Plaintiffs bring a variety of claims, including breach of contract, conversion, and replevin against Citibank, and claims under the U.S. Constitution and the APA, 5 U.S.C. § 706, against EPA Defendants, claiming its actions violated multiple regulations, statutes, and constitutional provisions.

The court heard argument on March 12 and March 15, 2025, and partially granted Plaintiffs' TRO on March 18, 2025.  On March 21, 2025, Plaintiffs Climate United, CGC, and PFC filed a consolidated motion for a preliminary injunction, which Subgrantee Plaintiffs joined with their own, separate briefing.  On March 31, 2025, the court granted Plaintiffs' motion to extend the TRO, given the preliminary injunction proceeding and for the reasons set forth in that Order.  *See* ECF No. 57.  On April 1, 2025, the court heard argument on the preliminary injunction motions, and on April 8, 2025, the court extended the TRO to April 15, 2025 to consider the parties' supplemental filings noticing the Supreme Court's Order staying the TRO in *U.S. Department of Education v. California*, No. 24A910 (Apr. 4, 2025).  *See* ECF Nos. 63–66; Order, ECF No. 70.  Finally, given the common questions of fact and law, these cases were consolidated.  *See* Mar. 20, 2025, Mar. 25, 2025, and Apr. 15, 2025 Min. Orders.[2]

## II.    LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A preliminary injunction is warranted where the moving party establishes that (1) it is likely to succeed on the merits, (2) irreparable harm is

---

[2] Prior to consolidation, Subgrantee Plaintiffs filed a separate Motion for Preliminary Injunction, *Cal. Infrastructure & Econ. Dev. Bank, et al. v. Citibank, et al.*, No. 1:25-cv-820, ECF No. 17, as did Inclusiv, *Inclusiv, Inc. v. EPA et al.*, No. 1:25-cv-948, ECF No. 6, and *Justice Climate Fund v. EPA et al.*, No. 1:25-cv-938, ECF No. 7.  Because this preliminary injunction covers all Plaintiffs, those motions were either dismissed as moot or granted.

likely in the absence of preliminary relief, (3) the balance of equities tips in the movant's favor, and (4) an injunction is in the public interest. *Id.* at 20; Fed. R. Civ. P. 65(b)(1). "The moving party bears the burden of persuasion and must demonstrate, 'by a clear showing,' that the requested relief is warranted." *Hosp. Staffing Solutions, LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), and "to balance the equities as the litigation moves forward," *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (per curiam). "The status quo is the last *uncontested* status which preceded the pending controversy." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733–34 (D.C. Cir. 2022) (quoting *District 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969)).

### III.    ANALYSIS

The court begins its analysis with two threshold issues: subject-matter jurisdiction and standing.

### A. Standing

#### a.  *Plaintiffs Have Article III Standing*

It is an "essential and unchanging part of the case-or-controversy requirement" that a plaintiff must establish Article III standing to sue in federal court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, a party must show that: (1) they have suffered an injury in fact, (2) the injury is fairly traceable to the challenged action of the defendant, and (3) it is likely that the injury will be redressed by a favorable decision. *Id.* at 560–61. A party seeking a preliminary injunction "must show a substantial likelihood of standing." *Green v. U.S.*

11

*Dep't of Just.*, 54 F.4th 738, 744 (D.C. Cir. 2022) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)) (internal quotation marks omitted).

First, as to injury in fact, a plaintiff must have suffered "an invasion of a legally protected interest," *Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 828–29 (D.C. Cir. 2006), that is "(1) concrete, (2) particularized, and (3) actual or imminent." *Vilsack*, 808 F.3d at 914 (citation omitted). The injury in fact test "requires that the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 563 (citation omitted).

Plaintiffs are each themselves "among the injured." *Id.* There is no question that Plaintiffs were awarded funds, which have been deposited in their individual accounts with Citibank. And there is no question that each Plaintiff—including subgrantees of the grant awards—has its own, individual account and a separate, individual agreement governing those accounts. *See* PI Hr'g Tr. 86:12–86:25 (Apr. 2, 2025), ECF No. 62 ("[T]he subgrantees have their own separate [Citibank] accounts . . . and there's a separate ACA that covers those accounts."). With no access to the funds in their accounts, Plaintiffs have suffered a concrete injury that is "direct, real, and palpable" and "personal, individual, distinct, and differentiated—not generalized." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007). Withdrawal of funding qualifies as an injury in fact. *See, e.g.*, *Gonzales*, 468 F.3d at 829 (discussing how "[a]n actual withdrawal of funding from the association's members would clearly qualify" as an injury in fact but association did not "suggest that any such withdrawal has occurred.").

Plaintiffs have been unable to access their funds since mid-February. They have submitted several declarations detailing the direct injuries they have suffered from this suspension. Without access to their funds, Climate United has had to "defer compensation for certain employees, terminate multiple vendors, cancel travel, and instruct non-essential lawyers, accountants, and

consultants to cease work." Decl. of Elizabeth Bafford ("Bafford Decl.") ¶ 62. PFC has been unable to pay outstanding invoices from contractors for work completed on PFC's behalf and, as a result, is incurring default risk with respect to these contracts. Decl. of Timothy J. Mayopoulos ("Mayopoulos Decl.") ¶ 19, ECF No. 33-31. And CGC has committed $135 million in funding to fourteen emerging green banks and community lenders across fourteen states. Decl. of Stephen Brown ("Brown Decl.") ¶¶ 4, 8, ECF No. 33-25. These are not "remote, speculative, conjectural, or hypothetical" injuries. *Pub. Citizen*, 489 F.3d at 1293.

Defendants' arguments regarding Plaintiffs' position miss the mark. Plaintiffs are not, as in *Hein v. Freedom,* mere taxpayers attempting to assert standing. *See Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 593 (2007). ("It has long been established, [] that the payment of taxes is generally not enough to establish standing to challenge an action taken by the Federal Government."). They have articulated specific direct harm that they have suffered as a result of Defendants' actions. Plaintiffs have therefore sufficiently demonstrated injury in fact.

Second, Plaintiffs' injuries are fairly traceable to the challenged action. EPA Defendants' actions in ordering Citibank to freeze grant funds clearly prevent Plaintiffs from accessing the funds in their accounts. These actions have resulted in halted projects, compromised organizational missions, and caused injury to each Plaintiff individually. These injuries flow from Defendants' actions and are not the "result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 462 U.S. 26, 41–2 (1976)). The causal connection between the injury and Defendants' conduct is clear.

Third, Plaintiffs must demonstrate redressability. It must be likely that a favorable decision by the court would redress the plaintiff's injury. *Id.* Plaintiffs seek relief from what they claim is the unlawful suspension and termination of their agreements and access to their funds. EPA

13

Defendants argue essentially that, since it is uncontested that EPA does have the authority to cancel grants, if EPA were to cancel Plaintiffs' grants lawfully, Plaintiffs would "cease to operate anyway." PI Hr'g Tr. 73:18–74:5.

But EPA's hypothetical possibility has no bearing on redressability, which does not "depend entirely on the occurrence of some other, future event, *Miami Bldg. & Constr. Trades Council, AFL/CIO v. Sec'y of Def.,* 493 F.3d 201, 206 (D.C. Cir. 2007), and a plaintiff need not "negate . . . speculative and hypothetical possibilities . . . in order to demonstrate the likely effectiveness of judicial relief." *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 78 (1978). Indeed, "a party seeking judicial relief need not show to a certainty that a favorable decision will redress [its] injury." *Nat'l Wildlife Fed'n v. Hodel,* 839 F.2d 694, 705 (D.C. Cir. 1988). Were the court to grant Plaintiffs' relief, they would have access to the funds in their accounts, dating back to, at a minimum, when their accounts were suspended in mid-February.

EPA Defendants also argue that any relief should not be extended to the subgrantees. But Plaintiffs have proffered evidence that their subgrantees' inability to access funds affects Plaintiffs' operations and ability to carry out their mission. *See, e.g.*, Decl. of Ari Matusiak ¶ 24, ECF No. 33-3 (If PFC loses its funding, [Subgrantee] Rewiring Community "will be forced to close its doors."); Decl. of John Moon ¶¶ 16-23; ECF No. 33-32; Decl. of Jessica Buendia ("Buendia Decl.") ¶ 12, ECF No. 33-26 (CGC's Subgrantee ICLEI "ultimately risks insolvency."); *see also* Decl. of Shaun Donovan ¶ 24, ECF No. 33-29.

The inability to access their grant funds affects both Plaintiffs *and* their subgrantees. *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017) (standing requires plaintiffs to "alleg[e] such a personal stake in the outcome of the controversy as to . . . justify [the] exercise of the court's remedial powers on [their] behalf.") (quoting *Simon v. E. Ky. Welfare Rts. Org.,* 426 U.S. 26, 38

(1976)) (internal quotation marks omitted).  And on their own, Subgrantee Plaintiffs have shown that they are at risk to suffer actual and imminent injury for the reasons already discussed.

### b.  *Subgrantee Plaintiffs Have Prudential Standing*

Finally, EPA argues that subgrantees lack prudential standing because they have no direct legal relationship with EPA and are not parties to the terminated grants.  In addition to the constitutional standing requirements, courts have recognized prudential limitations on standing not specifically set forth by the Constitution's text.  *LaRoque v. Holder*, 650 F.3d 777, 781 (D.C. Cir. 2011).  These limitations are meant to avoid "the adjudication of rights which those not before the Court may not wish to assert" and to ensure "that the most effective advocate of the rights at issue is present to champion them."  *Duke Power Co.,* 438 U.S. at 80; *LaRoque*, 650 F.3d at 781–82.  A party must show that "the interest it seeks to protect 'is arguably within the zone of interests to be protected or regulated by the statute . . . in question.'"  *Cement Kiln Recycling Coal. v. EPA,* 255 F.3d 855, 870 (D.C. Cir. 2001) (quoting *Ass'n of Data Processing Serv. Orgs. V. Camp*, 397 U.S. 150, 153 (1970)).  This "test is not meant to be especially demanding."  *Clarke v. Secs. Indus. Ass'n,* 479 U.S. 388, 399 (1987).

For the reasons set forth above, the subgrantees' interests are not "so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit."  *Motor & Equip. Mfrs. Ass'n v. Nichols,* 142 F.3d 449, 458 (D.C. Cir. 1998) (quoting *Clarke*, 479 U.S. at 399).  Subgrantee Plaintiffs assert their own legal rights and interests, and they too bring claims challenging Defendants' actions, which have upended their operations.[3]

---

[3] EPA Defendants claim that "the lack of prudential standing here is consistent with the Tucker Act's denial of standing to a subrecipient, or any other party not in privity with the government." EPA PI Opp'n to Subgrantee Pls.' PI Mot. at 8, ECF No. 56.  But EPA Defendants omit that there

15

B. **Subject-Matter Jurisdiction**

a. *This Court Has Jurisdiction Over These Claims*

The court comes to the same conclusion it already reached on jurisdiction—it has jurisdiction over Plaintiffs' claims because these claims are not "in essence" contract claims, such that jurisdiction lies in the Court of Federal Claims. *See Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967–68 (D.C. Cir. 1982)).

Federal district courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the Tucker Act, 28 U.S.C. § 1491, and absent other grounds for district court jurisdiction, the Court of Federal Claims has exclusive jurisdiction over breach of contract claims against the federal government over $10,000. *Id.*; *see Megapulse*, 672 F.2d at 967–68.

But the D.C. Circuit has "explicitly rejected the 'broad' notion 'that any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act' because to do so would 'deny a court jurisdiction to consider a claim that is validly based on grounds other than a contractual relationship with the government.'" *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022) (quoting *Megapulse*, 672 F.2d at 967–68). Thus, in determining whether a claim falls under the Tucker Act, the court

---

are exceptions to this rule. Even if this were a case properly before the Court of Federal Claims, subgrantees are not automatically barred from bringing their claims. While "[a]s a general rule, the Tucker Act does not provide the [Court of Federal Claims] with jurisdiction to hear a claim brought directly against the federal government by a subcontractor," (citing 28 U.S.C. § 1491(a)), "an exception exists however, which allows an intended third-party beneficiary of a government contract to enforce its rights directly against the federal government." *G4S Tech. LLC v. United States*, 114 Fed. Cl. 662, 669 (2014), *aff'd*, 779 F.3d 1337 (Fed. Cir. 2015); *see also First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1289 (Fed. Cir. 1999) (one such exception allows suit against the government by an intended third-party beneficiary despite the lack of privity); *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005).

must decide if the action "is *at its essence* a contract claim," which depends "both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Id.*, 38 F.4th at 1106 (quoting *Megapulse*, 672 F.2d at 967–68).

EPA Defendants maintain that Plaintiffs' claims are not properly before this court—they contend that "this is just a run-of-the-mill [] contract dispute," and "at most, Plaintiffs are entitled to claim damages . . . [from] the Court of Federal Claims." EPA PI Opp'n at 10. The court cannot agree.

First, Plaintiffs' source of rights. Plaintiffs bring claims under the APA, the U.S. Constitution, and various statutes and regulations. They sued after Citibank refused to release their grant funds from their bank accounts—at what is now known to have been the direction of the FBI, EPA, and Treasury. Plaintiffs challenge EPA's action in suspending and then terminating their grants, which EPA concedes had nothing to do with Plaintiffs' performance under the grant. PI Hr'g Tr. 34:3–7, 53:13–16 (EPA conceding that Plaintiffs have not breached any terms of their agreements); EPA PI Opp'n at 20 (EPA explaining that it did not terminate Plaintiffs' grants for noncompliance). Indeed, nothing in the record suggests that Plaintiffs violated any term or condition of their agreements. *See id.* Yet, overnight, on the eve of a hearing challenging the freezing of the funds in their accounts, their grants were all terminated in identical letters using the same boilerplate language that referenced not only the terms of the contract to justify termination, but also federal regulations. *See* PI Mot., Ex. 11, Termination Letter.

In evaluating Plaintiffs' claims, the court does not look solely to any contract, nor could it when it must address clear regulatory and statutory questions. Plaintiffs were awarded this grant under a statute authorized by Congress. While it is true that the parties have entered into grant agreements that operate as contracts, the claims here turn on, at least in part, examining the federal

17

regulations and federal statute governing Plaintiffs' grant awards.  EPA seems to agree but argues that the federal regulations are relevant to the grant agreements "because they're incorporated into the contract."  PI Hr'g Tr. 41:25–42:3.  It cannot be that the contract's authority trumps the agency's formal regulations and a federal statute.

EPA urges the court to treat the government as "any other contracting party" and argues that it should be free to breach contracts like any private party.  *See* EPA PI Opp'n at 13.  This ignores the fact that courts have long recognized that government actions, even those involving contractual relationships, are subject to review when they implicate statutory, constitutional, or procedural violations.  The government is not just another contracting party.  And as the Supreme Court has noted, "[u]nlike normal contractual undertakings, federal grant programs originate in and remain governed by statutory provisions expressing the judgment of Congress concerning desirable public policy."  *Bennett v. Ky. Dept. of Educ.*, 470 U.S. 656, 669 (1985).  EPA's suspension and termination of Plaintiffs' grants interferes with Congress' mandate under the IRA concerning desirable public policy.

Ultimately, Plaintiffs' "claims arise under a federal grant program and turn on the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties."  *Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1449 (D.C. Cir. 1985) (citation omitted).  The record is clear: Plaintiffs do not challenge a mere contract between the parties—they challenge agency action governed by statutes and regulations.

Second, Plaintiffs' relief sought.  "[E]xclusive jurisdiction in Claims Court under the Tucker Act does not lie 'merely because [a plaintiff] hints at some interest in a monetary reward from the federal government or because success on the merits may obligate the United States to

18

pay the complainant.'" *Crowley*, 38 F.4th at 1108 (quoting *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995)).  Indeed, "a claim is not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff." *Kidwell*, 56 F.3d at 284 (internal quotations omitted); *see Vietnam Veterans v. Sec'y of the Navy*, 843 F.2d 528, 534 (D.C. Cir. 1988).

Here, Plaintiffs seek equitable relief vindicating their rights to access their grant funds and to enjoin EPA's unlawful suspension and termination of their grants.  Plaintiffs do not ask for specific performance, nor do they ask the court to interpret the terms of any contract.  Any monetary benefit that might flow to Plaintiffs "would not come from [this] court's exercise of jurisdiction, but from the structure of statutory and regulatory requirements governing compensation" in this action.  *Tootle v. Sec'y of Navy*, 446 F.3d 167, 175 (D.C. Cir. 2006) (citation omitted).  The relief they seek "is not a claim for money damages, although it is a claim that would require the payment of money by the federal government." *Bowen v. Massachusetts*, 487 U.S. 879, 894 (1988).

Moreover, "[o]ur cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief[.]" *Id.* at 893–96 ("The term 'money damages,' . . . normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'").  Thus, "Courts frequently describe equitable actions for monetary relief under a contract" as specific relief, not money damages.  *See id.* at 895.

19

Plaintiffs seek access to funds they are presently entitled to, "rather than money in compensation for the losses, whatever they may be, that [Plaintiffs] will suffer or ha[ve] suffered by virtue of the withholding of those funds." *Id.* They do not seek money damages for past harms or "compensation for the[ir] losses due to the failure to pay them, which, as in any contract case, could be far greater than the amount withheld pursuant to the agency policy[.]" *AIDS Vaccine Advoc. Coal. V. U.S. Dep't of State*, No. 25-cv-400, -402, 2025 WL 485324, at *6 (D.D.C. Feb. 13, 2025) (citation omitted). They seek "prospective, nonmonetary relief to clarify future obligations." *Me. Cmty. Health v. United States*, 590 U.S. 296, 327 (2020).

In addition, the Court of Federal Claims cannot provide the equitable relief Plaintiffs seek. Plaintiffs seek vacatur of the termination letters, an injunction compelling the government to meet its statutory obligations moving forward, and a determination of whether EPA acted in accordance with the law such that the grants were indeed lawfully terminated.[4] Were this court to find that EPA acted unlawfully, Plaintiffs could avail themselves "of statutory and regulatory provisions and procedures that may, or may not, entitle [them] to a monetary recovery." *Tootle*, 446 F.3d at 175 (collecting authorities).

Defendants rely heavily on the Supreme Court's recent order in *U.S. Department of Education v. California*, 604 U.S.____, 145 S.Ct. 966 (2025) in which it ordered a stay of the district court's TRO Order. *See California v. U.S. Dep't of Educ.*, No. CV 25-10548-MJJ, 2025

---

[4] For example, without a determination on the lawfulness of EPA's actions, EPA's termination of the grants on the current bases could affect the grantees and subgrantees' ability to apply for and receive federal grant funds, as these organizations would have to make disclosures when applying for future federal grant opportunities. *See* Decl. of Michael Stoddard ("Stoddard Decl.") ¶ 35, *Cal. Infrastructure & Econ. Dev. Bank, et al. v. Citibank, et al.*, No. 1:25-cv-820, ECF No. 17-2. Termination could also affect an organization's credit rating. *See* Decl. of Scott Wu ("Wu Decl.") ¶ 33, *Cal. Infrastructure & Econ. Dev. Bank, et al. v. Citibank, et al.*, No. 1:25-cv-820, ECF No. 17-5.

WL 760825, at *1 (D. Mass. Mar. 10, 2025); EPA Notice of Suppl. Authority, ECF No. 63; EPA Reply to Pls.' Resp.'s, ECF No. 71.  The Supreme Court noted that the APA's waiver of sovereign immunity does not apply to claims seeking money damages or to orders "to enforce a contractual obligation to pay money."  *Dep't. of Educ.*, 145 S.Ct. at 968.  But the Court also noted that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds."  *Id.* (quoting *Bowen*, 487 U.S. at 910).

That is the situation here.  Plaintiffs seek to regain access to their already disbursed funds at Citibank, rather than an order mandating the government to pay any type of money damages or money for past harms.  In noting the distinction between money damages and relief other than damages, *Bowen* refused to characterize "expenses that [the government] should have paid all along" as money damages.  487 U.S. at 894.  Indeed, *Bowen* characterized equitable actions for specific relief as orders providing for "reinstatement for an employee with backpay, or for the recovery of specific property or monies."  *Id.* at 893–94 (citation and internal quotation marks omitted).  This is part of the equitable relief Plaintiffs seek—reinstatement of their grants and the recovery of specific money.  They also challenge EPA's thinly veiled attempts to dismantle the entirety of a congressionally created program and seek other declaratory relief that, as discussed, the Federal Court of Claims cannot grant.  Finally, and importantly, the parties' relationship here— given the individual ACAs with Citibank and the lack of agreements between subgrantees and EPA—also differ from the ones implicated in *Department of Education v. California.*  These factors materially alter the jurisdictional analysis.[5]

---

[5] Other district courts have recently addressed this question and "similarly held that *California* did not divest them of jurisdiction."  *Woonasquatucket River Watershed Council, et al., v. U.S. Dep't of Agric.*, No. 25-cv-97-MSM-PAS, ECF No. 45 at 33–35 (D.R.I. Apr. 15, 2025); *Maine v. United States Dep't of Agric.*, No. 1:25-cv-131-JAW, 2025 WL 1088946, at *19 (D. Me. Apr. 11, 2025); *New York v. Trump*, No. 25-cv-39-JJM-PAS, ECF No. 182 at 5–9 (D.R.I. Apr. 14, 2025).

21

It also bears mentioning that the injury analysis in this case is different.  In *U.S. Dep't. of Educ.,* the Supreme Court noted that respondents in that case represented "that they have the financial wherewithal to keep their programs running."  *Dep't. of Educ.*, 145 S.Ct. at 969.  The coalitions in this case were created, under their current structure, to implement Congress's mandate.  Though they have decades of combined experience, they came together to implement Congress's specific call under the IRA.  Accordingly, the grantees do not have other committed sources of funding, meaning that the loss of access to their funds will have devastating effects.  *See supra* § III(A) and *infra* § III(D).

It is undisputed that EPA can, and agencies do, terminate grants, but they must do so lawfully and in accordance with relevant regulations, the U.S. Constitution, and applicable law. The APA does not exist to review the actions of "other contracting parties"—it exists to review government action.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 371 (2024) ("Congress in 1946 enacted the APA 'as a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices.') (quotation omitted).

EPA's position would impermissibly narrow the court's ability to review agency action. For example, the government might creatively contract their way out of judicial reviewability of its actions, shielding itself by virtue of its "contractual relationship" with a party.  That cannot be, and is not, what Congress envisioned for judicial review under the APA.  Nor is it the law.  As the *Megapulse* court said:

> It is one thing to rely on the generally recognized rule that a plaintiff cannot maintain a contract action in either the district court or the Court of Claims seeking specific performance of a contract. It is quite another to claim, as the Government does in this case, that an agency action may not be enjoined, even if in clear violation of a specific statute, simply because that same action might also amount to a breach of contract. Government's counsel admitted at oral argument that by the logical inference of its position the government could avoid injunctions against

activities violative of a statutory duty simply by contracting not to engage in those activities.

*Megapulse*, 672 F.2d at 971.

To be sure, the court understands the delicate balance here. Of course, "it is important on the one hand to preserve the Tucker Act's limited and conditioned waiver of sovereign immunity in contract actions." *Id.* at 968. On the other hand, the court is also mindful that it "must not do so in terms so broad as to deny a court jurisdiction to consider a claim that is validly based on grounds other than a contractual relationship with the government." *Id.* As in *Bowen*, "[t]his restrictive—and unprecedented—interpretation of [the APA] should be rejected because the remedy available . . . in the Claims Court is plainly not the kind of 'special and adequate review procedure' that will oust a district court of its normal jurisdiction under the APA." *See Bowen*, 487 U.S. at 904–05. The "bar of sovereign immunity in property disputes arising from contractual relationships does not necessarily apply" where, as here, "government defendants are charged with having acted beyond the scope of their statutory authority." *Megapulse*, 672 F.2d at 969.

**b.  *Committed to Agency Discretion***

EPA Defendants also argue that Plaintiffs improperly challenge funding decisions committed to agency discretion by law which are not subject to APA review. EPA PI Opp'n at 16–17. The court does not agree.

The APA establishes a cause of action for parties adversely affected by agency actions. *Heckler v. Chaney,* 470 U.S. 821, 828 (1985), and generally, there is a "basic presumption of judicial review" in APA cases. *Abbott Labs v. Gardner*, 387 U.S. 136, 140 (1967). But that presumption falls away if the challenged agency decision is "committed to agency discretion by law." *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011); 5 U.S.C. § 701(a). An action is committed to agency discretion where "a court would have no meaningful standard against

23

which to judge the agency's exercise of discretion." *Chaney*, 470 U.S. at 830. To determine whether a matter has been committed to agency discretion, the court "consider[s] both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Sierra Club*, 648 F.3d at 855 (citation omitted).

Here, Plaintiffs challenge EPA's decision to suspend and then terminate their funding, and the court must look to the relevant statute to determine whether EPA's actions are committed to agency discretion.

EPA Defendants rely on *Lincoln v. Vigil*, 508 U.S. 182 (1993) to defend their position. There, the Supreme Court held that "allocation of funds from a lump-sum appropriation is [an] administrative decision traditionally regarded as committed to agency discretion." *Id.* at 192–93. But the Supreme Court also clarified that "of course, an agency is not free simply to disregard statutory responsibilities: Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.*

In *Lincoln*, the relevant statute gave the agency discretion on how to allocate the "lump sum" appropriation. The statute read, in part: "The Bureau of Indian Affairs, under the supervision of the Secretary of the Interior, shall direct, supervise, and expend such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians throughout the United States for the following purposes . . . ." 25 U.S.C. § 13. The agency received a lump sum appropriation to use for general services such as "relief of distress and conservation of health" and "general support and civilization, including education." *Lincoln*, 508 U.S. at 185. This reflected "a congressional recognition that an agency must be allowed "flexibility to shift funds within a

24

particular appropriation account so that the agency can make necessary adjustments for unforeseen developments and changing requirements." *Id.* at 192–93.

In this case, the relevant statute, 42 U.S.C. § 7434, is clear: Congress appropriated money for specific grant programs by a specific deadline and set specific, substantive priorities, thereby limiting how the appropriated funds could be allocated. *See, e.g.*, *Sierra Club*, 648 F.3d at 856 ("Congress can limit an agency's discretion "either by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue.").

42 U.S.C. § 7434 provides, in part:

**(a) Appropriations**
    **(2) General assistance**
    In addition to amounts otherwise available, there is appropriated to the Administrator for fiscal year 2022, out of any money in the Treasury not otherwise appropriated, $11,970,000,000, to remain available until September 30, 2024, to make grants, on a competitive basis and beginning not later than 180 calendar days after August 16, 2022, to eligible recipients for the purposes of providing financial assistance and technical assistance in accordance with subsection (b).

    **(3) Low-income and disadvantaged communities**
    In addition to amounts otherwise available, there is appropriated to the Administrator for fiscal year 2022, out of any money in the Treasury not otherwise appropriated, $8,000,000,000, to remain available until September 30, 2024, to make grants, on a competitive basis and beginning not later than 180 calendar days after August 16, 2022, to eligible recipients for the purposes of providing financial assistance and technical assistance in low-income and disadvantaged communities in accordance with subsection (b).

42 U.S.C. § 7434(a)(2)–(3).

Not only have these appropriated funds already been disbursed, but a review of the statute, its specific deadlines, how it specifically defines "eligible recipients" and "qualified projects," reveals that "Congress limited the [Administrator's] authority to disburse funds." *Milk Train, Inc.*

*v. Veneman*, 310 F.3d 747, 752 (D.C. Cir. 2002). "This limitation affords a 'statutory reference point' by which the court is able to review" the Administrator's decision. *Id.* (citation omitted). EPA's statutory obligation to carry out the GGRF programs is mandatory. For these reasons, the court finds that Plaintiffs' challenge does present a cognizable APA claim.

## C. Plaintiffs Are Likely to Succeed on the Merits of Their Claims

### a. *Plaintiffs Are Likely to Succeed on the Merits of Their APA Claims*

Plaintiffs are likely to succeed on the merits of their APA claims because EPA acted arbitrarily and capriciously when it failed to explain its reasoning and acted contrary to its regulations in suspending and terminating Plaintiffs' grants.[6]

The APA, 5 U.S.C. § 706, plays a crucial role in maintaining accountability within federal agencies. Under the APA, a court will set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, [] otherwise not in accordance with law," contrary to statute, or unsupported by substantial evidence. 5 U.S.C. § 706(2). In an arbitrary and capricious challenge, the central question is whether the agency's decision was "the product of reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 52 (1983); *see also Nat'l Tel. Coop. Ass'n v. FCC*, 563 F.3d 536, 540 (D.C. Cir. 2009) ("The APA's arbitrary-and-capricious standard requires that agency rules be reasonable and reasonably explained."). Judicial review of agency action is "highly deferential . . . the court presumes the validity of agency action and must affirm unless the [agency] failed to consider relevant factors or made a clear error in

---

[6] Although the parties brief multiple issues, the court need only find that Plaintiffs are likely to succeed on one of their claims for this factor to weigh in their favor, and therefore the court does not address all their arguments. *See Media Matters for Am. v. Paxton*, 732 F. Supp. 3d 1, 27 (D.D.C.), *appeal dismissed*, No. 24-7059, 2025 WL 492257 (D.C. Cir. Feb. 13, 2025).

judgment." *Nat'l Lifeline Ass'n v. FCC*, 983 F.3d 498, 507 (D.C. Cir. 2020) (cleaned up) (quoting *Cellco P'ship v. FCC*, 357 F.3d 88, 93–94 (D.C. Cir. 2004)).

A "fundamental" requirement of administrative law is that an agency "set forth [] reasons" for its decision; failure to do so constitutes arbitrary and capricious agency action. *Tourus Recs., Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n,* 476 U.S. 610, 626 (1986) (internal quotations marks omitted) (collecting authorities).

An agency action is arbitrary or capricious if the agency relied on factors which Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before it, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43. In addition, "agency action may be set aside as arbitrary and capricious if the agency fails to 'comply with its own regulations.'" *Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (quoting *Envtl., LLC v. FCC*, 661 F.3d 80, 85 (D.C. Cir. 2011)).

Plaintiffs were in the process of implementing programs for which they had been awarded funds appropriated by Congress as part of the GGRF program when the government, without notice or justification, ordered Citibank to freeze Plaintiffs' funds. Plaintiffs could not access funds to which they were lawfully entitled and which had been deposited in their accounts, and they received no explanation from EPA, despite repeated inquiries. The court finds that EPA failed to set forth the reasons for its decision because it did not say *anything* about its decision, for weeks.

27

On March 4, 2025, EPA finally sent Plaintiffs identical information requests, giving them until March 28, 2025, to provide certain information so that EPA could evaluate the GGRF program's oversight controls. But, on March 11, 2025, before Plaintiffs could even respond, EPA terminated Plaintiffs' grants, on the eve of the TRO hearing in this case. It is unclear to the court what "relevant data" EPA considered within such a short period that called for the sudden termination of these grants, compelling the court to "guess at the theory underlying the agency's action." *SEC v. Chenery Corp.*, 332 U.S. 194, 196–197 (1947).

Though repeatedly pressed on the issue, EPA offers no rational explanation for why it suspended the grants and then immediately terminated the entire NCIF and CCIA grant programs overnight. Nor has EPA offered any rational explanation for why it needed to cancel the grants to safeguard taxpayer resources, especially when it had begun examining the grant programs to add oversight mechanisms, or why it needed to cancel *every single grant* to review *some* aspects of the GGRF program with which it was concerned.

In the letters terminating the grant programs, EPA provided no individualized reasoning as to anything Plaintiffs themselves did—instead referencing generalized and unsubstantiated reasons for termination—"substantial concerns regarding program integrity, the award process, programmatic fraud, waste, and abuse, and misalignment with the Agency's priorities." PI Mot., Ex. 11, Termination Letter at 1.

But the Terms and Conditions governing the grant award expressly limit EPA to three possible grounds for termination, one of which is "adequate evidence of Waste, Fraud, or Abuse." PI Mot., Ex. 2, EPA Grant Agreement at 41. And as this court has already pointed out, EPA Defendants have never proffered this "adequate evidence." *See* 2025 WL 842360, at *8 ("Moreover, as to all Plaintiffs, EPA Defendants did not and have not identified a violation of any

applicable regulation or any of the grant's terms—only that there are concerns about potential conflicts of interest and their grant agreements.").[7]  Now, in a shift in position, they contend that the termination was based on the agency's changed priorities.

EPA attempts—unsuccessfully—to take refuge in the regulations by turning to C.F.R. § 200.340(a)(4) as its basis for its termination.  C.F.R. § 200.340(a)(4) states that a "[f]ederal award may be terminated in part or its entirety . . . by the Federal agency or pass-through entity ***pursuant to the terms and conditions of the Federal award***, including, ***to the extent authorized by law***, if an award no longer effectuates the program goals or agency priorities."  2 C.F.R. § 200.340(a)(4) (emphasis added).  EPA Defendants' actions defy the plain language of the regulations that govern its decision-making in grant funding—it can only terminate a federal award on this basis pursuant to the terms and conditions of the federal award.  The regulation establishes a boundary to ensure that when dealing with federal awards, no agency exceeds the legal authority granted to them.

As the court has already noted, agencies can decide to re-evaluate their programs, and they may decide to end agreements or federal awards.  But those decisions must be made lawfully and in accordance with established procedures and relevant rules and regulations.  The record does not

---

[7] EPA Defendants contend that the subsequent amendment modifications might not be binding as a matter of contract law by questioning the timing of the amendments, *see* EPA PI Opp'n at 12–13; PI Hearing Tr. 40:15–40:19 (EPA COUNSEL: "So there was indeed a change between the original grant agreement in August and the December grant agreement. In fact, there were multiple changes that restricted or limited EPA's ability to terminate the grant agreement. That was done of course after the election.").  But they offer only conjecture, and nothing to support this in fact or law.  Whereas the grant agreement expressly states that the "EPA Award Official or Grants Management Officer and the Recipient must agree to any modifications to the terms and conditions of this Award Agreement," indicating the agency's agreement to the modifications.  PI Mot., Ex. 2, EPA Grant Agreement at 55.

indicate that EPA's decisions were lawfully made, and therefore the court finds that Plaintiffs have shown a substantial likelihood of success on the merits on their APA claims.

### b. *Plaintiff Are Likely to Succeed on Their Constitutional Claims*

Plaintiffs also bring constitutional claims—among them, violation of the separation of powers. At this point, the record does indicate that EPA seeks to dismantle these grant programs in their entirety as a policy matter. But "Congress sets the policy, not the [Administrator]," and "policy disagreements" with Congress's decision to fund these clean energy projects "is not a lawful ground for the Administrator to decline to continue the congressionally mandated" GGRF program. *See In re Aiken Cnty.*, 725 F.3d 255, 260 (D.C. Cir. 2013). "Congress speaks through the laws it enacts" and here, EPA has terminated programs established through lawfully enacted congressional appropriations without any basis in statutory authority. *Id.* EPA cannot shut down these programs completely and it cannot "decline to spend previously appropriated funds." *Id.*

Indeed, agencies are "not free simply to disregard statutory responsibilities." *Lincoln*, 508 U.S. at 193. When Congress established the GGRF program, it laid out specific directives—not mere suggestions—as to what EPA could do with the money, and it provided specific deadlines and specific requirements for eligible recipients.

EPA contends that it conducted an individualized assessment of the grants and decided to terminate them on an individual basis, and it maintains that EPA intends to re-obligate the funds. But the record is clear: EPA suspended all eight grants comprising the entire NCIF and CCIA programs, and the agency's public statements contradict its representations here regarding the

future of the program.  EPA lacks the authority to effectively unilaterally dismantle a program that Congress established, and Plaintiffs have shown a likelihood of success on these claims.[8]

### c.  *Claims Against Citibank*

Under the FAA, Citibank is expected to perform its obligations and fiduciary duties "with care, competence, and diligence" and to "construe the terms of th[e] FAA and any related instructions from Treasury in a reasonable manner to serve the purposes and interests of the United States."  FAA § 5B.(i).  The FAA permits Citibank to freeze assets only "in accordance with the [ACAs]" Ex. A, § I.B.4, and only in response to "lawful instructions or directions" from Treasury, *id.* § 5.A.

Citibank performed its obligations under the FAA in accordance with its responsibilities as a financial agent of the United States, but the instructions it received were not lawful, as the record shows there was no legal basis for the government to order that the funds be frozen.  Consequently, the court will enjoin Citibank from transferring or otherwise moving funds out of accounts established in connection with Plaintiffs' grants, including funds in accounts established by

---

[8] Although EPA claims it will re-obligate the funds, under its own grant agreements it must re-obligate the funds to specific eligible recipients—the very recipients from whom it seeks to pull funding:

> If EPA partially or fully terminates the Assistance Agreement, EPA must (1) *de-obligate uncommitted funds and re-obligate them to another Eligible Recipient selected under Funding Opportunity Number 66.957 (NCIF)* to effectuate the objectives of Section 134 of the Clean Air Act, 42 USC § 7434 within 90 days of the de-obligation and (2) amend the Recipient's Assistance Agreement to reflect the reduced amount, based on the de-obligation. In accordance with 2 CFR 200.341, EPA will provide the Recipient notice of termination. If an Eligible Recipient has assumed a legal obligation properly incurred for an allowable activity entered into by a suspended or terminated Recipient, EPA will re-obligate funds to the Eligible Recipient to satisfy the legal obligation and accept an amended workplan and budget to that effect.

*See, e.g.*, PI Mot., Ex. 3, EPA Grant Agreement, Dec. Amend. at 41.

31

Plaintiffs' subgrantees, except as permitted by the applicable ACA, the grant award, the relevant regulations, and applicable law. The court also orders Citibank to disburse any funds properly incurred under Plaintiffs' awards, in accordance with the relevant agreements.

### D. Irreparable Harm

As the court found at the TRO stage, Plaintiffs have made a sufficient showing of irreparable harm, which must be both "certain and great," "actual and not theoretical," and so "imminen[t] that there is a clear and present need for equitable relief." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (quotation omitted). The "possibility" of irreparable harm is not enough. *See Winter*, 555 U.S. at 22. The moving party must demonstrate "a clear and present need for extraordinary equitable relief to prevent irreparable harm." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (citation and internal quotation marks omitted). While ordinary economic injuries are usually insufficient to require injunctive relief, financial harm can "constitute irreparable harm . . . where the loss threatens the very existence of the movant's business." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Plaintiffs have shown that without release of their grant funds, imminent harm is unavoidable. The very purpose of Plaintiffs' existence and their business operations, including the financing for their projects, depends on their grant money. The GGRF program was created, in part, to mobilize and leverage private financing. The NCIF is structured to "multiply the impact of public funds" by mobilizing private capital as grantees financed these projects, "ensuring that every dollar of public funds generates several times more private-sector investment into emissions- and air pollution-reducing projects." PI Mot., Ex. 1. And the purpose of CCIA is to "provide funding and technical assistance to specific industry networks of public, quasi-public, not-for-profit, and nonprofit community lenders, supporting the goal that every community in the country

32

has access to the capital they need to deploy clean technology projects in their homes, small businesses, schools, and community institutions."  Inclusiv PI Mot., Decl. of Neda Arabshahi ("Arabshahi Decl.") ¶ 14, ECF No. 6-2.

Obviously, when an organization is created to fulfill the objectives of a grant and its existence relies on grant money, harm is certain once the grant funds are withdrawn.  And in cases involving government expenditures, "once the relevant funds have been obligated, a court cannot reach them in order to award relief." *City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1426–27 (D.C. Cir. 1994).  Any transfer, re-allocation, or re-obligation of these funds would be an irreparable loss—one that threatens the very existence of Plaintiffs' businesses.

Plaintiffs have proffered some of the following examples of the harmful effects of the funding suspension:

**Climate United**

- To date, the Climate United coalition has committed $392 million to qualified projects.  Bafford Decl. ¶¶ 24–26. It has:
  - Committed a $31.8 million pre-construction loan to finance 18 solar projects benefiting rural communities in Arkansas.  This is the largest commercial solar deployment in Arkansas history and is projected to save over $120 million in energy costs and create hundreds of jobs.
  - Launched a program to establish affordable leasing options for battery electric heavy-duty trucks to small fleets and independent contractors, which will support an affordable leasing program at the ports of Long Beach and Los Angeles before expanding nationwide.
  - Committed $63 million in pre-construction financing for the design and development of solar power plants in partnership with Tribal governments and communities in Eastern Oregon and Idaho, bringing access to affordable energy to rural communities and Indigenous people, creating 1,200 jobs, and spurring local economic development.
- It cannot access funds to pay the 37 employees on its payroll, whose salaries and benefits are covered in part or whole by the NCIF Award. *Id.* ¶¶ 37, 39.
- It has had to defer compensation for certain employees, terminate multiple vendors, cancel travel, and instruct non-essential lawyers, accountants, and consultants to cease work. *Id.* ¶ 62.
- It is at imminent risk of being unable to pay critical third-party contractors who perform necessary services such as managing accounts payable, auditing

33

financial statements, maintaining IT security and infrastructure, advising on compliance, supporting communications, and providing legal services. *Id.* ¶ 67.

- It does not have funds to pay payroll or health, vision, and dental benefits, life insurance, and short- and long-term disability insurance for its employees. In order to preserve its available cash, Climate United has already had to defer compensation for certain employees, terminate multiple vendors, cancel travel, and instruct non-essential lawyers, accountants, and consultants to cease work.

- Without a stable source of funding, Climate United will no longer be able to pay its employees and will face having to cut hours and furlough staff.

- Furloughing or laying off staff will eliminate positions that perform critical functions for Climate United, including monitoring the loans that Climate United has already disbursed to funding recipients and the $392 million that it has committed to date. *Id.* ¶ 44.

- It imminently risks not being able to pay rent or insurance for certain offices *Id.* ¶ 45.

- Continued inability to access the funds would prevent Climate United from meeting its commitments under the loans and awards it has approved and plans to approve, potentially forcing it into breach of its existing agreements. *Id.* ¶¶ 46–48, 50.

**PFC**

- PFC has committed at least $539,000,000 to provide affordable housing support and has other projects that will be detrimentally impacted absent funding. TRO Mot. Hr'g Tr. 24:01–25:04.

- It has been unable to pay outstanding invoices from contractors for work completed on PFC's behalf and, as a result, is incurring default risk with respect to these contracts. Mayopoulos Decl. ¶ 19.

- Outstanding invoices include those for contracts for legal and management consultant services that are necessary for PFC to administer the grant in compliance with the terms of the Award Agreement and contracts for essential financial management and IT services. *Id.*

- If PFC is not able to make payment on these outstanding invoices, which it cannot do without access to its funds, PFC is at imminent risk of losing these services due to default. *Id.*

- PFC's key contractor has advised it that it has until March 17, 2025, to make payment or it may cease providing services. *Id.*

- PFC is unable to pay contractors to complete, or in some cases to begin, critical work for PFC, including the completion of a financial reporting audit and work improve PFC's website, which provides public information. *Id.* ¶ 19.

- PFC's inability to access its funds threatens its ability to pay staff members. PFC owes funds under the secondment and services agreements and is at risk of default under those agreements. *Id.* ¶ 20.

34

**CGC**

- As of January 2025, CGC has committed $135 million in funding to 14 emerging green banks and community lenders across 14 states. Brown Decl. ¶ 4.
- Loss of grant funding will harm a pipeline of 232 multifamily housing properties that would use loans from our subgrantees to increase energy efficiency and electrify core building systems to reduce building operating costs and keep rents affordable for low-income families. *Id.*

**Inclusiv**

- To date, Inclusiv has committed $651 million in subawards to 108 credit unions across the country to be part of just its first cohort of subrecipients. These credit unions are based in 27 states and Puerto Rico and provide direct banking services to more than 4.9 million Americans. They will leverage their CCIA subawards with their own institutional deposit capital to provide nearly $1.8 billion in new lending capital to homeowners and small businesses. These investments will make clean energy affordable, create jobs, and promote greater financial security within the communities the credit unions serve. The energy savings will allow Americans to reinvest their dollars elsewhere in the U.S. economy. Arabshahi Decl. ¶ 25.

**JCF**

- JCF will run out of money to fund its operations in less than 45 days—and possibly much sooner, depending on the expenses it incurs in this litigation. JCF PI Mot., Decl. of Amir Kirkwood ¶ 30, ECF No. 7.
- Without a committed source of funding, JCF will not be able to meet the subaward commitments it has already made to community lenders for projects that they have in turn already approved. *Id.* ¶ 37.

Plaintiffs also have demonstrated irreparable harm in damage to their business reputation.

*See Patriot, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 963 F. Supp. 1, 5 (D.D.C. 1997) (finding

plaintiffs' business reputation would be damaged by HUD's characterization of them as "enticing"

senior citizens into meetings, and "pressuring" them to obtain reverse mortgages "under the guise

of sound estate planning."). EPA's termination of the grants will impact Plaintiffs' ability to apply

for and receive federal and/or state grant funds, *see supra* n.4, and damage their reputations.

Reputational harm, particularly in this case, cannot be overstated, especially given the

structure of the NCIF and CCIA programs and Plaintiffs' positions as lenders in the financial

markets. The reputation of these organizations as "reliable and trustworthy partner[s] and investor[s]" is critical to their operations, PI Mot. at 49, and without imminent restoration of their funds, it will be "more difficult, if not impossible," for these organizations to find partners willing to enter into financing arrangements and to find qualified employees willing to work" with them, Bafford Decl. ¶ 73.

A few examples illustrate this point:

- Subgrantee Plaintiffs face increasing risk of losing qualified projects, with the corresponding harms to their reputations as lenders in the financial markets. PI Mot. at 23.
- Plaintiff IFA will be limited in its ability to apply for or receive federal and state grant funds, as they would be obligated to make disclosures during the application process. Decl. of Christopher Meister ¶ 21, *Cal. Infrastructure & Econ. Dev. Bank, et al. v. Citibank, et al.*, No. 1:25-cv-820, ECF No. 17-1.
- Delay or loss of funding risks market confidence in Plaintiff MnCIFA, reducing partner willingness to contract. Decl. of Kari Growth Swan ¶ 36, *Cal. Infrastructure & Econ. Dev. Bank, et al. v. Citibank, et al.*, No. 1:25-cv-820, ECF No. 17-4.
- Public misperception about program termination has caused customer hesitancy, cancellations, layoffs. Stoddard Decl. ¶ 32.
- EPA's allegations and its baseless Notice of Termination will therefore have a significant but unquantifiable impact on CGC's reputation, goodwill, and business prospects in its field. Buendia Decl. ¶ 25.
- EPA and Citi's actions have damaged CGC's reputation (and its subgrantees reputation). "They have damaged its reputation, caused it to lose opportunities for funding and investment, and frustrated its operations and the achievement of its and Congress's objectives." Decl. of Eli Hopson ¶ 24, ECF No. 33-27.

Preserving the status quo here is particularly important, because, as explained above, removal of the funds from Plaintiffs' accounts would likely mean those funds would be beyond the reach of any court.

### E. Balance of Equities and Public Interest

The final two factors—balancing the equities and the public interest—support granting the preliminary injunction. The court's reasoning on this point is the same as in its TRO Memorandum and Order.

When assessing the equities and public interest factors, courts "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Ramirez v. U.S. Immigr. & Customs Enft.*, 310 F. Supp. 3d 7, 32 (D.D.C. 2018). If the movant seeks to enjoin the government, the final two factors merge "because the government's interest *is* the public interest." *Pursuing Am.'s Greatness v. Fed. Election Comm.*, 831 F.3d 500, 511–512 (D.C. Cir. 2016).

On Defendants' side of the balance, the court accords relevant weight to the government's protection of the public fisc. EPA PI Opp'n at 29–30. But the relief Plaintiffs seek allows them access to funds already in their accounts—funds that have been appropriated by Congress and obligated prior to this suit—and Plaintiffs can only use them for specific, approved purposes, under the already-discussed oversight mechanisms. *See* EPA Reply to Pls.' Resp.'s at 2, ECF No. 71 ("Plaintiffs then agreed that they could only use funds for specified allowable activities in specified regions.); *id.* ("To be allowable, the expense must be necessary "for the performance of the Federal award" and, significantly, '[c]onform to any limitations or exclusions set forth . . . in the Federal award") (citing 2 C.F.R. § 200.403(a), (b)); *id.* at 2–3 ("In requesting the disbursement, the grantee must comply with the Grant Agreement's requirement that it certify to the EPA that '[t]he amount of this expenditure is necessary to execute against the EPA-approved workplan.'") (citation omitted). There are sufficient protections in place to prevent the type of reckless spending EPA envisions once access to Plaintiffs' accounts is restored.

The court's order in no way limits EPA from making funding decisions in accordance with the law and, contrary to EPA's position, it does not "force EPA into a multiple year, $20 billon spending obligation." EPA PI Opp'n at 30. It merely restores the status quo to before the unlawful suspension and termination, and the government "cannot suffer harm from an injunction that

37

merely ends an unlawful practice." *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 115 (D.D.C. 2020) (quoting *R.I.L-R v. Johnson,* 80 F. Supp. 3d 164, 191 (D.D.C. 2015)).  Without a showing of actual or imminent harm, EPA's interests remain adequately protected.  On the other side, however, as discussed, Plaintiffs face immediate, irreparable harm.

The public interest also favors an injunction.  "There is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters*, 838 F.3d at 12 (citing *Pursuing Am.'s Greatness*, 831 F.3d at 511–512).  In contrast, "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Id.* (citation omitted).  Here, an injunction ensures that EPA abides by its own regulations and halts any unlawful action in dismantling the NCIF and CCIA programs.  Preserving fairness and accountability in governance serves the public interest.  Therefore, the final two factors warrant injunctive relief.

### F. The Court Will Not Require a Bond

Under Federal Rule of Civil Procedure 65(c), the court may issue a TRO or preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  But Rule 65(c) gives this court broad discretion to determine the appropriate amount of an injunction bond.  *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999).  This includes "the discretion to require no bond at all."  *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020) (quoting *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 107 (D.D.C. 2012)); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. 25-cv-239, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025) ("A bond 'is not necessary where requiring [one] would have the effect of denying the plaintiffs their right to judicial review of

administrative action.'") (citation omitted).  Plaintiffs' funding is currently frozen because of Defendants' actions.  They cannot access the very thing that has kept them running.  Requiring a bond in this context makes little sense.

### IV.    CONCLUSION

For these reasons, it is hereby ORDERED that Plaintiffs' Motion for a Preliminary Injunction is GRANTED.  An Order will accompany this Memorandum Opinion.


Date: April 16, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

39