UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CLIMATE UNITED FUND**<br><br>                          Plaintiff,<br><br>     v.<br><br>**CITIBANK, N.A.**, *et al.*<br><br>                          Defendants. | Civil Action No. 25-cv-698-TSC<br>Civil Action No. 25-cv-735-TSC<br>Civil Action No. 25-cv-762-TSC<br>Civil Action No. 25-cv-820-TSC<br>Civil Action No. 25-cv-938-TSC<br>Civil Action No. 25-cv-948-TSC<br>(Consolidated Cases) |

### DECLARATION OF TIMOTHY J. MAYOPOULOS

I, Timothy J. Mayopoulos, declare as follows:

1. I am the President and Chief Executive Officer of Power Forward Communities, Inc. ("PFC"). I previously submitted declarations on March 14 (ECF No. 4-2 in Case No. 1:25-cv-00762), March 21 (ECF No. 33-31 in Case No. 1:25-cv-00698), and April 17 (ECF No. 92 in Case No. 1:25-cv-00698) explaining the irreparable harms that PFC had suffered or will imminently suffer because of Defendants' unlawful actions. I submit this declaration to update the Court on the irreparable harms discussed in my prior declarations and to notify the Court of new irreparable injuries PFC and its subgrantees face due to the ongoing lack of access to our NCIF funds. The statements made in this declaration are based on my personal knowledge, materials I have reviewed, and information made available to me pursuant to my duties at PFC.

**Reductions in Force**

2. My prior declarations explained that because of PFC's inability to access its NCIF funds, it has been forced to operate with a skeleton staff and that it would soon be "forced to lay off" the few employees it had already hired. *See, e.g.*, ECF No. 33-31 ¶¶ 24. 28. That unfortunate contingency has now come to pass. On May 6, 2025, PFC was forced to lay off one-

third of its existing employees due to the lack of funding to compensate those individuals. An additional employee voluntarily departed PFC because she perceived her job to be in jeopardy due to PFC's continued inability to access its NCIF funds. The result is that PFC has now lost 50% of its already streamlined work staff as a direct result of EPA's unlawful suspension and termination of PFC's NCIF funding and Citibank's unlawful refusal to comply with PFC's disbursement instructions.

3. Rewiring America, Inc. ("RA")—a PFC coalition member and the sole corporate member of PFC subgrantee Rewiring Community Investment Fund, Inc. ("RCIF")—was also forced to lay off employees due to its continued inability to access NCIF funds. On May 8, 2025, RA announced that it had made the difficult decision to layoff 36 employees (28% of its work force). According to RA's announcement, due to the continued lack of NCIF funds, RA was "forced to act financially as though the GGRF award does not exist" and "adjust expenses accordingly to become more resilient." All of these layoffs were made as a direct result of EPA's suspension and purported termination of the NCIF funds and Citibank's unlawful refusal to comply with RCIF's disbursement instructions.

**Projects Impacted by Unavailability of NCIF Funds**

4. My prior declarations explained that because of PFC's and its subgrantees' inability to access their funds, multiple "affordable housing financing projects … are at risk of failing." *See, e.g.*, ECF No. 33-31 ¶ 26. The risk to projects across the country is now even more urgent.

5. For instance, PFC subgrantee Enterprise Green Accelerator, Inc. ("EGA") previously committed to provide funding for a 106-unit renovation project in Virginia. As EGA's

President explained in his March 21 declaration (ECF No. 33-29 ¶ 21), for that project to be successful, it needed to secure its bond cap allocation from the state by June 2025.

6. Because of EGA's inability to access its NCIF funds and the lack of clarity as to when access will be restored, the Virginia Housing Development Authority removed this project from its June 2025 bond cycle. As a result, the project is not only delayed, but the overall cost of the project will increase if and when it ever resumes.

7. EGA also committed to provide $24 million in financial assistance for a 160-home subsidized rental apartment community in Detroit, Michigan. As EGA's President explained, that project is contingent on the U.S. Department of Housing and Urban Development's ("HUD") Commitment to Enter into a Housing Assistance Payment ("CHAP"). ECF No. 33-29 ¶ 21. HUD reserves the right to revoke that CHAP if financial milestones are not met by September 2025. *Id.*

8. To ensure compliance with those CHAP milestones and the overall viability of the project, EGA's borrower has formally requested that EGA provide a $4 million bridge loan to fund a portion of the deposit required to begin modular component development. The funding is essential to the project, and will leverage $4 million in private funds for the remaining portion of the deposit. EGA is currently the only potential source to leverage the private financing and allow the project to move forward. The project is targeting a June 2025 closing to ensure the continued availability of the CHAP, but it cannot achieve that target if EGA cannot comply with the bridge loan request.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge. Executed this 12th day of May, 2025.

                                                                  _____
                                                                  Timothy J. Mayopoulos